1   John D. Klinedinst, Bar No. 86254
    Robert L. Clarkson, Bar No. 102183
2   Robert J. Hatem, Bar No. 185654
    Mark J. Goldsmith, Bar No. 244339
3   KLINEDINST PC
    777 S. Figueroa St., 47th Floor
4   Los Angeles, California  90017
    (213) 607-2115/FAX (213) 607-2116
5   jklinedinst@klinedinstlaw.com
    rclarkson@klinedinstlaw.com
6   rhatem@klinedinstlaw.com
    mgoldsmith@klinedinstlaw.com
7
    Stephen E. Embry, Pro Hac Vice
8   Christopher S. Burnside, Pro Hac Vice
    FROST BROWN TODD LLC
9   400 W. Market Street, 32nd Floor
    Louisville, KY 40202
10  (502) 568-0253/FAX (502) 581-1087
    sembry@fbtlaw.com
11  cburnside@fbtlaw.com
12  Attorneys for Defendant
    U.S. GREENFIBER, LLC
13

14              **UNITED STATES DISTRICT COURT**

15            **CENTRAL DISTRICT OF CALIFORNIA**

16

17  DANIELLE KINGSBURY, et al.,        Case No.   CV08-00151 AHM (JTLx)

18              Plaintiffs,            **DEFENDANT U.S. GREENFIBER'S
                                       MEMORANDUM OF POINTS AND
19          v.                         AUTHORITIES IN SUPPORT OF
                                       MOTION IN LIMINE TO EXCLUDE
20  U.S. GREENFIBER, LLC, et al.,      OPINIONS AND TESTIMONY OF
                Defendants.            BENJAMIN BEKHORE**
21

22                                     **Hearing Date:  January 12, 2009
                                       Time:            10:00 a.m.
23                                     Place:           Courtroom 14**

24

25                                     Judge:      A. Howard Matz
                                       Magistrate: Jennifer T. Lum
26

27

28

Defendant U.S. Greenfiber's Memorandum of Points and Authorities in Support of Motion in Limine to
Exclude Opinions and Testimony of Benjamin Bekhore
CV08-00151 AHM (JTLx)

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

1

## TABLE OF CONTENTS

2

Page

3    I.    INTRODUCTION ................................................................................. 1

4    II.   THE STANDARD FOR EXPERT EVIDENCE AT THE CLASS
           CERTIFICATION STAGE. ................................................................. 1
5
     III.  SUMMARY OF BEKHORE'S OPINIONS. ....................................... 2
6
     IV.   BEKHORE IS NOT QUALIFIED TO OFFER EXPERT
7          TESTIMONY ON COCOON INSULATION. .................................... 3

8    V.    BEKHORE'S OPINIONS, WHICH HE DEVELOPED SOLELY
           FOR THIS LAWSUIT, ARE UNRELIABLE AND AMOUNT TO
9          MERE ADVOCACY. .......................................................................... 5

10         A.    Bekhore did not apply the same analysis and methodology to
                 his opinions in this case that he applies in his professional
11               practice outside of litigation. .................................................. 5

12         B.    Bekhore is an advocate -- not an expert -- for Plaintiffs. ....... 9

13   VI.   CONCLUSION ................................................................................... 13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Dukes v. Wal-Mart,*
   509 F 3rd 1168, 1179 (9th Cir. 2007)...................................................2

*Ellis v. Costco,* 240 F.R.D. 627, 635, 647-8 (M.D. Ca. 2007) ...................................2

*Kearl v. Pulte Home Corporation,*
   San Bernardino Superior Court, No. CIVVS802612..............................9, 10

*Matalas v. Pulte Homes,*
   San Bernadino Superior Court, No. VCVVS043784...............................9, 10, 11

*McPhail v. First Community and Financial Planning, Inc.,* 247 F.R.D. 598, 604
   (S.D. Ca. 2007).................................................................2

*Nat'l. Fedn. of the Blind v. Target Corp.,*
   2007 U.S. Dist. LEXIS 73547, *62 (N.D. Calif. Sept. 28, 2007) ........................2

**Other Authorities**

SB 800...............................................................................10

**Rules**

Fed. R. Evid. 702 .................................................................5, 9

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

1   **I.**    **INTRODUCTION**

2         Plaintiffs designated Benjamin Bekhore as an expert witness in support of

3   their Motion for Class Certification.  Plaintiffs served Bekhore's report on

4   September 15, 2008 and counsel for Greenfiber deposed him on November 6,

5   2008.  (Bekhore Report, Embry Declaration, Ex A (hereafter Em. Ex. A).  Bekhore

6   is not qualified to give expert testimony on any relevant issue, and his opinions are

7   neither reliable nor useful to the Court in determining whether class certification is

8   appropriate.

9         Bekhore claims that Cocoon insulation is defective because it promotes

10   mold growth in homes where it is installed.  He is not qualified, by education or

11   experience, to offer this opinion as an expert.  He is not an expert on mold or

12   insulation systems.  Other than this lawsuit, he has had no experience with Cocoon

13   insulation in any context, ever.  He has never seen Cocoon insulation installed.  He

14   has never seen mold allegedly caused by Cocoon insulation in any home.  He

15   reached his opinion that Cocoon insulation is defective exclusively for purposes of

16   this litigation.

17         Moreover, his methodology is not merely unreliable, it is non-existent.   He

18   accepted the contentions of Plaintiffs' counsel as "facts" and adopted them as his

19   "expert" opinion.  He conducted none of the research, analysis and testing that he

20   claims to conduct in his professional work outside of litigation.  His role as an

21   advocate rather than an expert is glaringly apparent in his willingness to take

22   inconsistent positions depending on which defendant Plaintiffs are targeting at any

23   given time.  Bekhore's opinions and testimony should be excluded from any class

24   certification proceedings in this case.

25   **II.**    **THE STANDARD FOR EXPERT EVIDENCE AT THE CLASS**

26         **CERTIFICATION STAGE.**

27         As a general rule, "robust gatekeeping" and an exhaustive *Daubert* analysis

28   of expert evidence is not required at the class certification stage.  However, the

Defendant U.S. Greenfiber's Memorandum of Points and Authorities in Support of Motion in Limine to
Exclude Opinions and Testimony of Benjamin Bekhore
CV08-00151 AHM (JTLx)

1    somewhat relaxed standard does not apply to the *qualifications* of the proffered

2    witness; he or she must have relevant expertise on the topic at issue. *Nat'l. Fedn.*

3    *of the Blind v. Target Corp.*, 2007 U.S. Dist. LEXIS 73547, *62 (N.D. Calif. Sept.

4    28, 2007).    Courts must also determine whether the expert evidence is properly

5    analyzed, and scientifically reliable, and useful in determining whether the class

6    certification requirements have been met. *Dukes v. Wal-Mart*, 509 F 3rd  1168,

7    1179 (9th Cir. 2007); *Ellis v. Costco*, 240 F.R.D. 627, 635, 647-8 (M.D. Ca. 2007).

8    "Where an 'expert report' amounts to 'written advocacy ... akin to a supplemental

9    brief,' a motion to strike is appropriate because this evidence is not useful in

10   evaluating whether class certification requirements have been met." *McPhail v.*

11   *First Community and Financial Planning, Inc.*, 247 F.R.D. 598, 604 (S.D. Ca.

12   2007).    Bekhore's deposition testimony established that he is not qualified to offer

13   expert opinions about Cocoon insulation, and his purported opinions merely parrot

14   the Plaintiffs' allegations.

15   ## III.    SUMMARY OF BEKHORE'S OPINIONS.

16        Bekhore claims that cellulose insulation is an inherently defective product

17   that "fails" in every single application, regardless of how it is installed, and even

18   where no mold has ever been detected in a home ten years after installation.  He

19   bases his opinion on two assumptions:  (1) Cocoon insulation introduces a level of

20   moisture into a building that, he claims, will eventually and inevitably promote

21   mold growth; and (2) according to Plaintiffs' counsel, several hundred California

22   homes built by Pulte Construction developed mold due to the use of Cocoon

23   insulation.  As discussed below, he relies on assumptions that are not proven or

24   provable and he dismisses any evidence that does not support his position.[1]

25

26   ---

     [1] Plaintiffs did not cite or refer to Bekhore's Report or testimony – not even once – in their
     memorandum in support of class certification.  Whether that is an acknowledgement of the

27   deficiencies in his opinions or some to-be-disclosed strategy is unknown to defendants.  But as
     Greenfiber pointed out in its opposition to Plaintiffs' motion to certify,  Bekhore essentially

28   conceded that there is no commonality when he testified that, in order to determine why any
     given home with Cocoon insulation developed mold while another did not, he would have to "cut

Defendant U.S. Greenfiber's Memorandum of Points and Authorities in Support of Motion in Limine to
Exclude Opinions and Testimony of Benjamin Bekhore
CV08-00151 AHM (JTLx)

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

## IV.   BEKHORE IS NOT QUALIFIED TO OFFER EXPERT TESTIMONY ON COCOON INSULATION.

Bekhore is a construction manager/consultant in California.  He describes a construction manager as one who "from start to finish, basically pulls together budgets for a project...Then from the budget, and from an analysis with the owners, try to find a good schedule that works for many, many factors, and then build out the suite, talking to the various subcontractors to do the work until the end of the project." (Bekhore Depo. at 10, Em. Ex. E).  In California, construction managers are not licensed or otherwise regulated.  (Bekhore Depo. at 23-25, Em. Ex. E).  Bekhore obtained a degree in architectural engineering in 1977, but has never been licensed or employed as an architect or engineer. (Bekhore Depo. at 21-23, Em. Ex. E).   In 1995, he obtained a California general contractor's license, but has never worked as a general contractor.[2]  He has never been licensed as a specialty contractor in any field.  (Bekhore Depo. at 20, Em. Ex. E).[3]  He has never been licensed to perform mold remediation and he is not an expert on mold and moisture-related construction issues.  (Bekhore Depo. at 52-53, 200, Em. Ex. E). He has never written or published anything about mold in the construction context, and in fact does not even own any books on the subject.  (Bekhore Depo. at 50-51, Em. Ex. E).  He has merely read some articles that mold professionals have given him from time to time.  (Bekhore Depo. at 50-51, Em. Ex. E).

///

///

open a few walls" and analyze it on a house by house basis. (Bekhore Depo at 206, Em. Ex. E).
[2] Bekhore testified that, on occasion while working as a construction manager, he has had to take over and function as a general contractor if the contractor had to be removed from the project, but he has not otherwise worked as a contractor.  (Bekhore Depo at 19-20, Em. Ex. E).  His main reason for obtaining a general contractor's license was to boost his credibility with general contractors when working with them in his role as a manager: "I've always found it helpful with contractors when they know that I know the language, and I'm licensed with them, they deal a little bit better with me." (Bekhore Depo at 19-20, Em. Ex. E).
[3] In California, licensed subcontractor specialties include the areas of insulation installation and heating and ventilating work; Bekhore has never been licensed in either of those specialties. (Bekhore Depo at 47, Em. Ex. E).

- 3 -

1    Before Plaintiffs' counsel retained him in this case, he had no experience

2    whatsoever with cellulose insulation. (Bekhore Depo. at 63, Em. Ex. E). He was

3    aware of its existence, but had never seen it installed and had never worked with it

4    in any project or construction context. (Bekhore Depo. at 63-65, Em. Ex. E). He

5    is not a building scientist or a material scientist, and is neither licensed nor

6    qualified to design a wall or an insulation system. (Bekhore Depo. at 48, Em. Ex.

7    E).

8    Identifying the areas in which Bekhore lacks expertise is relatively

9    straightforward. Identifying areas in which he might legitimately claim expertise

10   is more difficult. He testified that he considers himself an expert on "products and

11   the use of products." (Bekhore Depo. at 200, Em. Ex. E). Thus, he does not

12   develop products or actually install or implement products in the construction

13   process; his role, as he sees it, is to work with experts in various fields to identify

14   potential products and materials and have them tested by third parties to determine

15   if they will suit the needs of a particular project. (Bekhore Depo. at 32-33, 35-37,

16   Em. Ex. E).

17   Bekhore's description of the widely varied nature of his consulting practice

18   depicts a jack-of-all-trades of the construction industry. Because he does not

19   specialize in any particular aspect of construction, he finds no reason to pursue

20   continuing education or other structured training in any particular area. (Bekhore

21   Depo. at 26, Em. Ex. E). He does not regularly subscribe to or read any particular

22   publications; his professional reading is driven by the needs of each specific

23   project. He explained, "I read what I have to read for a particular project and in

24   research. That's when I get involved with articles and what is going on in the

25   particular field." (Bekhore Depo. at 26, Em. Ex. E).

26   A sampling of his wide-ranging consulting projects have included a

27   compound for celebrity animal trainers Siegfried and Roy (for which he researched

28   the psychological profile of lions and tigers); the construction of twelve sound

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

- 4 -

Defendant U.S. Greenfiber's Memorandum of Points and Authorities in Support of Motion in Limine to
Exclude Opinions and Testimony of Benjamin Bekhore
CV08-00151 AHM (JTLx)

1    studios in a high rise building (for which he researched acoustics and sound

2    blankets); a 100,000 sq. ft. home for Aaron Spelling (for which he had to "learn the

3    structural system of the Golden Gate Bridge"); a $50,000,000 horse ranch (for

4    which he had to "investigate horses … and how sensitive they are"); and an

5    underground vault intended to house $30 million in currency (for which he had to

6    research microbial growth that will eat paper).  (Bekhore Depo at 27-28, 30-31, 43,

7    57, Em. Ex. E).

8        For each project, Bekhore relied heavily on specialists and experts in

9    particular fields, including architects, acousticians, soil engineers, structural

10   engineers, HVAC engineers, and environmental engineers.  (*Id.*) Such experts were

11   indispensable not only to assist Bekhore in his research, but to perform the actual

12   design, construction and/or remediation functions.  He conceded, for example that

13   he would be "totally useless" in actually designing the wall structure and insulation

14   system for the underground vault; that work was performed by architects and

15   engineers.  (Bekhore Depo at 44-45, Em. Ex. E).

16  **V.    BEKHORE'S OPINIONS, WHICH HE DEVELOPED SOLELY FOR**

17        **THIS LAWSUIT, ARE UNRELIABLE AND AMOUNT TO MERE**

18        **ADVOCACY.**

19        **A.    Bekhore did not apply the same analysis and methodology to his**

20            **opinions in this case that he applies in his professional practice**

21            **outside of litigation.**

22        One measure of the reliability of an expert's opinion is whether he is being

23   as careful in arriving at the opinion he offers in court as he would be in his regular

24   professional work outside his paid litigation consulting.[4]  According to Bekhore's

25   billing statement, he spent a total of 41 hours working on this case from the time he

26   was first retained through the completion of his expert report.  (Bekhore Kingsbury

27   Invoice, Em. Ex. B).  Of that total, 32 hours were spent in meetings with Plaintiffs'

28

---

[4] *Advisory Committee Notes*, FED. R. EVID. 702 (Citations and internal quotations omitted).

Defendant U.S. Greenfiber's Memorandum of Points and Authorities in Support of Motion in Limine to
Exclude Opinions and Testimony of Benjamin Bekhore
CV08-00151 AHM (JTLx)

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

1  counsel and/or reviewing information that Plaintiffs' counsel provided him. (*Id.*)

2  On the day before he submitted his expert report, he spent the remaining nine hours

3  "research[ing] Cocoon Wall Spray Insulation and draft[ing] report to Schimmel &

4  Parks on the concerns and the product defects." (*Id.*)  In other words, Bekhore

5  developed his "opinions" and prepared his "expert report" about a product he knew

6  nothing about and had never seen, after receiving a crash course on the product and

7  its "defects" from Plaintiffs' counsel.

8          By contrast, Bekhore testified that he engages in "full-on extensive

9  research" when working on a project outside the realm of litigation. (Bekhore

10  Depo at 51, Em. Ex. E).[5]  For example, he described the in-depth nature of one

11  such project as follows:

12      A.    There was a project that I just completed where …a

13              home was sitting for seven years in its framing stage…so

14              it was open to the atmosphere.  I had to test for microbial

15              growth because the owner had just gone through

16              extensive chemotherapy.

17              *I brought in at least four environmental engineers* to

18              *review the subject.*  They in turn gave me articles to read

19              from various people who talk about mold.  *And*

20              *ultimately after the full research, and full-on extensive*

21              *research,* I used a new system with dry ice to pull away

22              the mold from the structure.  (Emphasis added.)

23  ///

24  ///

25  ///

26

27

28

---

[5] Bekhore explained that he did not personally remediate the mold in that project.  Rather, he consulted on the project and the actual remediation was performed by a licensed contractor. (Bekhore Depo at 51-53, Em. Ex. E).

Defendant U.S. Greenfiber's Memorandum of Points and Authorities in Support of Motion in Limine to
Exclude Opinions and Testimony of Benjamin Bekhore
CV08-00151 AHM (JTLx)

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

1  (Bekhore Depo at 51, Em. Ex. E).[6]  Bekhore went to similar lengths when he

2  consulted with a music production company about constructing sound studios in a

3  high rise building:

4      A.    So I had to research, quite involved by the way, how to

5               make walls and rooms independent of movement

6               within a high rise building.  And then have them next

7               to each other so that very, very loud music can be

8               played right next to each other and not travel through

9               the rest of the building.

10      Q.    And what was the methodology that you utilized…?

11      A.    Research on articles, calling people that are experts in the

12               field, calling architects, calling structural engineers.  You

13               have to investigate the lightweight versus the structural

14               system of the building.  You have to know about

15               acoustics.  You have to know about vibration.  You have

16               to know about air infiltration.  You have to know about

17               sound blankets.* * *

18               *You read, and then you have to test.  You have to do a lot of*

19               *your own testing on the various pieces of information and see*

20               *whether they survive, whether they are good for your project,*

21               *whether there are good results on them versus poor results.*

22      (Emphasis added.)

23  (Bekhore Depo at 31-33, Em. Ex. E).

24      When forming his opinions for this case, however, Bekhore stopped after the

25  "reading" stage and dispensed with "testing" and with any analysis of good versus

26  poor results.  He not only failed to test Cocoon insulation, he has never even *seen*

27
28      [6] Bekhore said that he may have seen a small video clip about the installation process on the manufacturer's website but he "never gave it much attention."  (Bekhore Depo at 65, Em. Ex. E).

Defendant U.S. Greenfiber's Memorandum of Points and Authorities in Support of Motion in Limine to
Exclude Opinions and Testimony of Benjamin Bekhore
CV08-00151 AHM (JTLx)

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

1   Cocoon being installed,[7] and has never seen mold in any home containing Cocoon

2   insulation. (Bekhore Depo at 64-65, 192-193, Em. Ex. E).[8]

3          As for assessing the "good results…versus poor results" of Cocoon

4   insulation, he merely accepted as true the Plaintiffs' allegations that 500 homes

5   containing Cocoon have developed mold as a result of the product, and dismissed

6   as irrelevant any evidence that there are thousands of mold-free homes containing

7   Cocoon.

8          Q.    Have you made any effort to determine the number of

9                residential living units that have been built in the United

10               States using spray cellulose insulation in the last 10

11               years? * * *

12         A.    No.  And it was of no interest to me.

13         Q.    So it doesn't make any difference to you whether or not

14               it's a million or one hundred thousand, it really wouldn't

15               make a difference to you?

16         A.    No, it wouldn't make a difference.

17  (Bekhore Depo at 85-86, Em. Ex. E).  In Bekhore's tautology, he has already

18  concluded that the product is defective in every single application.  The fact that

19  mold has been detected in only a very small percentage of all homes with Cocoon

20  insulation cannot be reconciled with Plaintiffs' position, so he has no choice but to

21  declare that fact irrelevant.  Thus his anti-analytical approach to assessing good vs.

22  bad evidence is to label it "good" (and infallible) if it supports his pre-ordained

23  conclusion, and label it "bad" (and irrelevant) if it does not.

24  ///

25

26  _____

[7] Bekhore said that he may have seen a small video clip about the installation process on the
manufacturer's website but he "never gave it much attention."  (Bekhore Depo at 65, Em. Ex. E).

27  [8] Bekhore's "inspection" of the homes of the seven named Plaintiffs took place after Pulte had
remediated any mold that may have existed. (Bekhore Depo at 192-193, Em. Ex. E).  Other than

28  the homes of the named Plaintiffs, Bekhore has never inspected any other home containing
sprayed cellulose insulation. (Bekhore Depo at 126, Em. Ex. E).

Defendant U.S. Greenfiber's Memorandum of Points and Authorities in Support of Motion in Limine to
Exclude Opinions and Testimony of Benjamin Bekhore
CV08-00151 AHM (JTLx)

**B.    Bekhore is an advocate -- not an expert -- for Plaintiffs.**

1    Another yardstick of an expert's reliability is whether he proposes to testify
2   about matters growing naturally and directly out of research he has conducted
3   independent of the litigation, or whether he has developed his opinions expressly
4   for purposes of testifying.[9]  Bekhore made scant effort to conceal the fact that he
5   had assumed his conclusion (i.e. that Cocoon insulation was the cause of mold
6   found in homes built by Pulte) from the outset.
7        He was questioned in his deposition about other potential sources of mold
8   found in Pulte homes.  He conceded that untreated, unkilned wood (aka "green
9   wood") could reach a moisture content greater than 19%, which is the level he
10   claims will permit or promote mold growth.  (Bekhore Depo at 141-142, Em. Ex.
11   E).  He was then asked whether "green wood is something that needs to be at least
12   looked at if you're looking for a cause of mold…."  Bekhore replied:

A.    I'm getting a little confused, because I was not asked to
look at wood, *I was asked to look at a specific product
that caused the specific type of microbial growth.*  And
wood has not been an issue.  And drywall has not been
an issue.  So I'm a little lost.  (Emphasis added.)

(Bekhore Depo at 142, Em. Ex. E).  In other words, Bekhore had already been told
which product to blame for the mold, so he was at a loss when asked about the
possible causal role of any other product.

There is further evidence that Bekhore's "findings" are being orchestrated
by Plaintiffs' counsel:  his positions obligingly shift when Plaintiffs' claims
change.  This lawsuit is one of three separate actions that Plaintiffs' counsel have
filed seeking damages for alleged defects in residential homes built by Pulte
Construction Company.  The other two cases, *Matalas*[10] and *Kearl*[11], assert claims

---

[9] *Advisory Committee Notes*, FED. R. EVID. 702 (Citations and internal quotations omitted).
[10] *Matalas v. Pulte Homes,* San Bernardino Superior Court, No. VCVVS043784.

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

1  for construction defects against Pulte, who is the sole defendant in both of those

2  cases.[12]

3      Bekhore has been working concurrently with Plaintiffs' counsel on this case

4  and *Matalas*. (Bekhore *Kingsbury* Invoice and Bekhore *Matalas* Invoice, Em. Ex.

5  B and C). On November 14, 2007, Bekhore conducted a site inspection of seven

6  homes with alleged construction defects, including the Matalas home and the

7  homes of the proposed class representatives in this case. At the time of the

8  inspection, Pulte had already completed numerous repairs in each of those homes

9  pursuant to SB 800, including remediation of mold. Bekhore prepared a

10 "Preliminary Plaintiffs' Partial Defect List" regarding his inspection of the Matalas

11 home in preparation for a mediation scheduled for January 9, 2008 in the *Matalas*

12 suit. Nowhere in the *Matalas* Defect List does Bekhore state or suggest that the

13 Cocoon insulation "failed" or was inherently defective in any way. Rather, his

14 objective at that time was clearly to highlight the contractors' alleged failure to

15 properly install, cover, ventilate and dry out the insulation system during

16 construction. (Bekhore *Matalas* Defect List, Em. Ex. D).

17     Bekhore's Defect List does, however, describe various homeowners'

18 eyewitness accounts of the circumstances surrounding the installation of the

19 drywall and Cocoon insulation in their homes. Specifically, Bekhore makes three

20 separate references to homeowners' statements that construction took place during

21 the historic heavy rains of 2004-2005, that no plastic or other protection from the

22 rain was in place for the newly-installed insulation or drywall, that the Cocoon

---

[11] *Kearl v. Pulte Home Corporation*, San Bernardino Superior Court, No. CIVVS802612.
[12] *Matalas*, filed on October 25, 2006, was the first of the three cases. It is a purported class action for alleged construction defects against Pulte. It is currently stayed because plaintiffs failed to comply with the pre-litigation Builder's Right to Repair Process mandated by SB 800. The instant case, filed on November 15, 2007, was the second case filed. The third case, *Kearl*, was filed on May 7, 2008. *Kearl*, which is not a purported class action, was filed by the same seven plaintiff homeowners who are the named plaintiffs and purported class representatives in this action. *Kearl* is also stayed pursuant to the exclusive concurrent jurisdiction doctrine. Additional details and exhibits documenting the status of these cases were submitted in defendant Pulte Home Corporation's opposition to Plaintiffs' motion for class certification at pages 4-5.

- 10 -

Defendant U.S. Greenfiber's Memorandum of Points and Authorities in Support of Motion in Limine to
Exclude Opinions and Testimony of Benjamin Bekhore
CV08-00151 AHM (JTLx)

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

1  insulation was enclosed immediately after installation while it was still "dripping

2  wet," and that no heaters or other type of drying method was used. (*Matalas*

3  Defect List, Em. Ex. D at 2, 4, 7). Apparently Bekhore found this information

4  significant enough to highlight it in a separate "NOTE" at the end of the Defect

5  List:

6          The construction took place during the heavy rains of

7          2005.  The houses were not covered and rain water

8          saturated the drywall, walls and ceilings and puddled on

9          the concrete floors.  The wet spray-applied cellulose

10         insulation was placed into the homes without allowing

11         sufficient drying time prior to the closing of the walls.

12         The insulation was covered with drywall immediately

13         upon its application.  Heaters nor any other drying

14         method were employed to dry the houses while

15         construction continued through to completion.

16

17  (*Matalas* Defect List, Em. Ex. D at 7).

18         But when Bekhore was deposed in *this* case on November 6, 2008, he had a

19  markedly different objective than he had in *Matalas*.  His goal here was to

20  convince this Court that Cocoon insulation is an inherently bad product whose

21  mere existence in homes presents a defect common to all affected homeowners.

22  And because his litigation objective had changed, Bekhore's view of the relative

23  importance of the homeowners' eyewitness reports also changed dramatically:

24         Q.    [D]id any of [the homeowners] report to you that

25               they observed the insulation being covered

26               immediately after it was installed?

27         A.    They may have been there.  I don't know.

28  ///

- 11 -

Defendant U.S. Greenfiber's Memorandum of Points and Authorities in Support of Motion in Limine to
Exclude Opinions and Testimony of Benjamin Bekhore
CV08-00151 AHM (JTLx)

Q.   You don't have any recollection.  Wouldn't that have been important?

A.   Oh, no, you can't assume that the owner knows what they are seeing.  That would be a false reading.

Q.   Well, I mean if they said that, wouldn't that be reason enough to ask the follow up question of, well, is this a problem or isn't it?

A.   No. They have absolutely no knowledge on this kind of material.  Their answer would be worthless to me.

(Bekhore Depo at 162-163, Em. Ex. E).[13]

Bekhore's testimony simply does not pass the straight-face test, much less the evidentiary standard for reliability and reasonable scientific objectivity.  This Court should reject Bekhore's attempt to pass argument and advocacy off as expert opinion.

///
///
///
///
///
///
///
///
///
///
///

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

---

[13] Greenfiber's counsel pushed a bit further and asked Bekhore if he would not at least want to investigate reports about what homeowners observed during the construction process.  With no hint of irony, Bekhore replied:  "Well, people who are not in construction will say almost anything."  (Bekhore Depo at 163, Em. Ex. E).

## VI.    **CONCLUSION**

Bekhore offers this Court nothing more than a recap of Plaintiffs' allegations masquerading as "expert opinion." He has no relevant expertise, he makes a mockery of his own pretense of conducting "extensive" research, and he blatantly dismisses any evidence that has the audacity to conflict with his edicts. Bekhore's opinions and testimony should be excluded from all further class certification proceedings in this matter.

FROST BROWN TODD LLC


DATED: December 19, 2008    By:    /s/Stephen E. Embry
                                           STEPHEN E. EMBRY, *PRO HAC VICE*
                                           CHRISTOPHER S. BURNSIDE, *PRO HAC VICE*

Attorneys For Defendant
**U.S. GREENFIBER, LLC**


KLINEDINST PC


DATED: December 19, 2008    By:    /s/John D. Klinedinst
                                           JOHN D. KLINEDINST
                                           ROBERT L. CLARKSON
                                           ROBERT J. HATEM
                                           MARK J. GOLDSMITH

Attorneys for Defendant
**U.S. GREENFIBER, LLC**

KLINEDINST PC
777 S. FIGUEROA ST., 47TH FLOOR
LOS ANGELES, CALIFORNIA 90017

- 13 -

Defendant U.S. Greenfiber's Memorandum of Points and Authorities in Support of Motion in Limine to
Exclude Opinions and Testimony of Benjamin Bekhore
CV08-00151 AHM (JTLx)