Alan I. Schimmel, Esq. SBN 101328
*aischimmel@spattorneys.com*
Michael W. Parks, Esq. SBN 154531
*mwparks@spattorneys.com*
SCHIMMEL & PARKS
*A Professional Law Corporation*
11601 Wilshire Blvd., Suite 2100
Los Angeles, California 90025
Telephone: (310) 479-9797
Facsimile: (310) 479-4407

Attorneys for PLAINTIFFS AND
PROPOSED CLASS

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE KINGSBURY, EMILIO SEGURA, PILIEN SEGURA, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> U.S. GREENFIBER, LLC, a North Carolina business entity; PULTE HOME CORPORATION, a Michigan corporation; QUALITY INTERIORS, INC., a California Corporation; and DOES 1 through 1000, inclusive, <br><br> Defendants. | CASE NO. CV08-151-AHM (JTLx) <br><br> **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION** <br><br> Date:     July 6, 2009 <br> Time:     10:00 a.m. <br> Courtroom   No. 14 <br>           312 North Spring Street <br>           Los Angeles, California <br><br> Action Filed: 11/15/07 |

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

# **TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i-ii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii-v

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    ADEQUACY OF CLASS DEFINITION AND SHOWING OF NUMEROSITY . . . . . 3

IV.     COMMONALITY FOR CLASS OF CALIFORNIA HOMEOWNERS IS
        ESTABLISHED UNDER FED. R.CIV.P. RULES 23(a)(2) AND 23(b)(3) BASED ON
        CALIFORNIA RIGHT TO REPAIR LAW AND FACTS REGARDING
        INCORPORATION OF COCOON INSULATION IN PULTE HOMES . . . . . . . . . . 4

        A.      Common Issues Of Law And Fact Predominate Under RoRA . . . . . . . . . . . . . . . 4

                1.      Class Members Are Entitled To Common Protection Under
                        RoRA As Claimants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

                2.      Pulte Is Subject To Liability Under RoRA As A Builder . . . . . . . . . . . . . . 6

                3.      US Greenfiber Is Subject To Liability Under RoRA As A
                        Product Manufacturer/Material Supplier . . . . . . . . . . . . . . . . . . . . . . . . . 7

                4.      Quality Interiors Is Subject To Liability Under RoRA As A
                        Product Installer/Supplier . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

                5.      RoRA Liability Standards Apply To The Cocoon Insulation
                        Incorporated Into Pulte Wall Assemblies . . . . . . . . . . . . . . . . . . . . . . . . 11

                6.      Evidence Of Pulte's Judicial Admission And Notice That
                        Cocoon Insulation Is Defective Establishes Strict Liability
                        For Benefit Of Class . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

                7.      This Class Action Is Not Subject To Any "Prelitigation"
                        Procedures . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

                8.      RoRA Allows For Common Remedies For Benefit Of Class . . . . . . . . . . 18

                9.      Cocoon Insulation Defect Is Actionable Under UCL . . . . . . . . . . . . . . . 20

1          10.     Defendants' Questions And Issues About Extent Of

2                  Resulting Mold And Moisture Damage Do Not Defeat Class

3                  Certification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

4     V.     PLAINTIFF'S CLAIMS ARE TYPICAL TO THE CLAIMS OF THE

5            CLASS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

6   VI.    ADEQUACY OF REPRESENTATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   22

7   VII.   MANAGEABILITY OF THIS ACTION FOR ADJUDICATION AND TRIAL . . . . .   23

8   VIII.  APPOINTMENT OF CLASS COUNSEL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

9   XI.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   25

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

1          **TABLE OF AUTHORITIES**

2    **FEDERAL CASES**

3    *Amchem Prods v. Windsor,*
         521 U.S. 591, 614 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
4
     *American Title Ins. Co. v. Lacelaw Corp.,*
5        861 F.2d 224, 226 (9th Cir. 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

6    *Brink v. First Credit Res.,*
         185 F.R.D. 567, 571 (D. Ariz. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
7
     *Cameron v. E.M. Adams & Co.,*
8        547 F.2d 473, 478 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

9    *Clemens v. DaimlerChrysler Corp.,*
         534 F.3d 1017, 1025-1026 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . .  20
10
     *County of Los Angeles v. Jordan,*
11       459 U.S. 810 (1982) 669 F.2d at 1321. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

12   *Eisen v. Carlisle & Jacquelin,*
         417 U.S. 156, 177 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11
13
     *Hanlon v. Chrysler Corp.,*
14       150 F.3d 1011, 1019 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4, 21

15   *In re Northern Dist. of Cal., Dalkon Shield, Etc.,*
         693 F.2d 847, 856 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23
16
     *In re Rhone-Poulenc Rorer, Inc.,*
17       51 F.3d 1293, 1300-02 (7th Cir.), cert. denied, 133 L. Ed. 2d 122, 116 S. Ct. 184 (1995 . .  24

18   *In re School Asbestos Litig.,*
         789 F.2d 996 (3rd Cir.), cert. denied, 479 U.S. 852, 107 S. Ct. 182, 93 L. Ed. 2d 117 and cert.
19   denied, 479 U.S. 915, 107 S. Ct. 318, 93 L. Ed. 2d 291 (1986) . . . . . . . . . . . . . . . . . . . . . . . . .  15

20   *Jefferson v. Ingersoll Int'l, Inc.,*
         195 F.3d 894, 898 (7th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
21
     *Jordan v. County of Los Angeles,*
22       699 F.2d 1311, 1319 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22

23   *Lerwill v. Inflight Motion Pictures, Inc.,*
         582 F.2d 507, 512 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
24
     *Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.,*
25       244 F.3d 1152, 1163 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  4

26   *Mejdrech v. Met-Coil Systems Corp.,*
         319 F.3d 910, 912 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24
27
     *O'Connor v. Boeing North America, Inc.,*
28       184 F.R.D. 311, 319 (C.D.Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

*Probe v. State Teachers' Ret. Sys.,*
  780 F.2d 776, 780 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Rissetto v. Plumbers & Steamfitters Local 343,*
  94 F.3d 597, 605 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Robinson v. Metro-North Commuter RR,*
  267 F.3d 147, 167 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18

*Smilow v. Southwestern Bell Mobile Sys., Inc.,*
  323 F.3d 32, 39 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Southland Sod Farms v. Stover Seed Co.,*
  108 F.3d 1134, 1145 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Valentino v. Carter-Wallace, Inc.,*
  97 F.3d 1227, 1230 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*Wagner v. Professional Engineers in California Government,*
  354 F.3d 1036, 1044 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16


**STATE CASES**

*Aas v. Superior Court,*
  24 Cal.4th 627, 101 Cal. Rptr. 2d 718, 12 P.3d 1125 (2000) . . . . . . . . . . . . . . . . . .  4, 5

*Avner v. Longridge Estates*
  272 Cal.App.2d 607 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Barquis v. Merchants Collections Ass'n,*
  7 Cal.3d 94, 113 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  20

*Del Mar Beach Club Owners Assn. v. Imperial Contracting Co.*
  123 Cal.App.3d 898 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*GEM Developers v. Hallcraft Homes of San Diego, Inc.*
  213 Cal.App.3d 419 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Greystone v. Midtec,* Inc.,
  168 Cal. App. 4th 1194 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4–7, 10

*Jimenez v. Superior Court,*
  29 Cal.4th 473, 476 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 17

*Kraus v. Trinity Management Services, Inc.,*
  23 Cal. 4th 116, 136, 96 Cal. Rptr. 2d 485, 999 P.2d 718 (2000) . . . . . . . . . . . . . . . .  21

*Krieger v. Eichler Homes,*
  269 Cal.App.2d 224, 227 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Kriegler v. Eichler Homes, Inc.*
  269 Cal.App.2d 224. (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*State Farm Fire & Cas. Co. v. Superior Court,*
    45 Cal.App.4th 1093, 1105 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21


**<u>STATE STATUTES</u>**

*Cal. Civil Code § 895* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Cal. Civil Code § 895(f)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cal. Civil Code § 896* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

*Cal. Civil Code § 905* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cal. Civil Code § 911* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cal. Civil Code § 942* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cal. Civil Code § 944* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Cal. Civil Code §896(a)(10)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cal. Civil Code §896(a)(11)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Cal. Civil Code §896g)(15)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cal. Civil Code §896g)(3)(A)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Cal. Civil Code §897* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Cal. Civil Code §930(b)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Cal. Civil Code §931* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Cal. Civil Code §936* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cal. Civil Code §941(e)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Cal. Civil Code §942* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 18

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1   I.    **INTRODUCTION**

2           This motion for class certification is filed in support of a clear and ascertainable class of

3   Pulte homeowners protected under California's unique residential home construction law, *Civil Code*

4   *§§ 895 et seq*. (The California Right to Repair Act--"RoRA"). RoRA substantively changes the law in

5   a dramatic manner. In the area of residential building construction for single family homes built and

6   sold on or after January 1, 2003, California has eliminated all of the traditional notions of causation

7   and resulting property damage that have been required as elements of a strict liability claim against

8   homebuilders or product manufacturers. Homeowners no longer have to contend with proving

9   causation and resulting property damage, to prevail on a strict liability claim--they have an absolute

10  right of repair for a building component defect merely if the defect exists.

11          Under RoRA, the defect, the Cocoon insulation in the wall cavities, is all that is needed to

12  trigger liability under RoRA for the defendants to repair and remove the defective insulation. The

13  recent California Court of Appeal decision in *Greystone v. Midtec* confirmed that RoRA eliminates the

14  individual issues and burdens cited by the Court in its March 30th order regarding causation or actual

15  resulting mold and moisture damage for the class of Pulte homeowners. Pulte, US Greenfiber and

16  Quality are liable to remedy and repair the defect even if mold ends up never developing.

17          The California Legislature specifically changed the law. It imposed strict liability for a

18  defective building product in a residence even if there is no resulting property damage and no proof

19  the defect caused property damage. RoRA abrogates the "economic loss" rule and all of the

20  defendants' arguments noted in the Court's March 30, 2009 order regarding individual issues of

21  causation and mold loss. Although there is ample evidence of widespread product failure with the

22  Cocoon insulation, Pulte is required to repair the product defect *in every home* without any showing

23  that the product actually failed or caused damage to other building components. This is a reversal of

24  the California Supreme Court decision in *Aas* and a sea change in product liability law in this limited

25  context of residential home construction: The defects in *Aas* that were found not to be actionable

26  because of a lack of resulting property damage, inadequate shear walls and insufficient fire walls,

27  would now be actionable defects under RoRA.

28          This case presents other distinguishing facts besides the common application of RoRA that

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1   support class certification.  The builder, Pulte, made an all-important judicial admission that Cocoon

2   insulation in the bathroom and kitchen wall assemblies is defective.  Although class certification

3   does not consider the merits of the claims, Plaintiff presents voluminous evidence to back up Pulte's

4   judicial admission that Cocoon insulation is defective.  Pulte sued US Greenfiber for product liability

5   over the Cocoon insulation.  It waived any purported "prelitigation notice" procedures and it is

6   estopped to deny any lack of notice of the defect since it is the entity that built the homes with the

7   defect in the first place.  Also, Mr. Segura and the unnamed homeowners do not need to comply

8   with RoRA "prelitigation" procedures because, *inter alia.*, this is a class action solely to address the

9   incorporation of the defective Cocoon insulation into their homes.  *Cal. Civ. Code §931.*

10      Plaintiff has amended the class definition to address the Court's concern at the March 30,

11   2009 hearing about an overbroad class.  The class is ascertainable and well-defined under RoRA:

12   Emilio Segura and all class members are the owners of Pulte homes in California that were built and

13   sold on or after January 1, 2003, that contain Cocoon Wet Blown Cellulose Insulation.  The class

14   consists of at least 9,709 homeowners and it is ascertainable and numerous.   Mr. Segura agrees to

15   dismiss his state law claim against Pulte and serve solely as the class representative for this class

16   action claim arising under RoRA against US Greenfiber, Pulte and Quality.

17      Based on Pulte's judicial admission alone, class certification for the Pulte homeowners is

18   appropriate under RoRA.  Class certification is superior because of RoRA and because all class

19   members will benefit from a single liability adjudication and remedy process for this defective

20   building component, about which Pulte already has admitted knowledge and notice.  For a class of

21   California homeowners with limited financial resources in this difficult time, a class action promotes

22   uniformity, efficiency, notice and fairness to all for this Pulte-admitted building component defect.

23   **II.    FACTUAL AND PROCEDURAL BACKGROUND**

24      This action is brought as a class action basis on behalf of California consumers who are the

25   owners of homes built by defendant Pulte that contain Cocoon Insulation manufactured by

26   Defendant, U.S. GREENFIBER, LLC  ("USGF").  (*Kingsbury* First Amended Complaint, Parks Decl.

27   Ex. "A" ["Compl."], ¶ 1.)  Plaintiffs filed their complaint in state court and this action was removed

28   by USGF under CAFA.  The Court previously received significant volumes of briefing related to the

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1  Cocoon insulation and the product failures associated with this product. This motion

2  predominantly focuses on RoRA and the issues explored at the March 30, 2009 hearing.

3  ### III.    ADEQUACY OF CLASS DEFINITION AND SHOWING OF NUMEROSITY

4          Plaintiff's amended complaint defines an adequate class of: All persons who currently own

5  residential homes built by Pulte Homes in the state of California and sold as new on or after January

6  1, 2003, that incorporate Cocoon insulation manufactured by Defendant U.S. Greenfiber. (Parks

7  Decl., Ex. "A", ¶35.) Plaintiff's complaint also includes a subclass of approximately 2,000 homes

8  installed with the Cocoon Insulation by Quality Interiors, Inc. (Parks Decl., Ex. "A", ¶36.)

9          "A class will be found to exist if the description of the class is definite enough so that it is

10  administratively feasible for the court to ascertain whether an individual is a member." *O'Connor v.*

11  *Boeing North America, Inc.*, 184 F.R.D. 311, 319 (C.D.Cal. 1998). The class members are all entitled to

12  the protections of RoRA and currently own homes built and sold by Pulte on or after January 1,

13  2003 that incorporate Cocoon insulation.[1] Pulte's business records confirm the administrative

14  feasibility to identify each home, its address, and the location of Cocoon insulation to ascertain the

15  individuals who are members of the class.[2] This class consists of the owners of 9,709 homes in

16  California.[3] The Quality Interiors subclass consists of approximately 2,000 in California.[4] Plaintiff

17  amended the complaint to state an adequate class definition under Fed.R.Civ.P Rule 23(a)(1).

18  ///

19

20

---

21  [1]In response to the Court's inquiry at the March 30th hearing (Tr., p.16:4:7), the minimum
22  construction standards that apply to a builder under RoRA extend for the benefit of subsequent
     purchasers of the homes. *Cal. Civil Code § 905.* Original owners and subsequent owners are
     commonly situated against Pulte under RoRA.

23  [2]Pulte used standard recordkeeping practices and files for each home it built in California.
24  (Parks Decl. Ex. I, p. 46:12-47:16.) It was standard operating procedure for Pulte to have an
     e-schedule for each house to show the building logic and organization from start to finish. (Parks
25  Decl. Ex. I, p. 49:2-12, 50:7-9.) Pulte has standardized records to identify the location of Cocoon
     insulation in wall cavities in the homes it built. (Parks Decl. Ex. I, p. 153:20-155:19, 171:5-24.)

26  [3]Pulte admitted to 9,709 RoRA homeowner class members with Cocoon insulation in wall
27  cavities in its prior class certification opposition brief. (Pulte Opp., p. 2:4-5.)

28  [4]Quality Interiors, Inc. installed Cocoon insulation in more than 2,000 homes in Southern
     California. (Parks Decl. Ex. J, p. 119:4-13.)

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

**IV.    COMMONALITY FOR CLASS OF CALIFORNIA HOMEOWNERS IS ESTABLISHED UNDER FED. R.CIV.P. RULES 23(a)(2) AND 23(b)(3) BASED ON CALIFORNIA RIGHT TO REPAIR LAW AND FACTS REGARDING INCORPORATION OF COCOON INSULATION IN PULTE HOMES**

The "commonality" requirement of Rule 23(a)(2) is construed permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within a class." *Id.* Although the commonality requirements under Rule 23(b)(2) are more rigorous than those required under 23(a)(2), "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* When one or more of the central issues in the action are common to the class, the action may be considered proper under Rule 23(b)(3) even though other important factors will be tried separately, such as damages or some affirmative defenses peculiar to individual class members. *Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).

A.    **Common Issues Of Law And Fact Predominate Under RoRA**

The March 30, 2009 hearing demonstrated that the state of play in this case for the Pulte homeowner class, Pulte, US Greenfiber and Quality Interiors predominates under the California Right to Repair Act ("RoRA"). This predominant controlling law is explained in the recent California Court of Appeal decision in *Greystone v. Midtec*, Inc., 168 Cal. App. 4th 1194 (2008)[5]. RoRA creates a duty for builders, product manufacturers and installer/subcontractors like the defendants to prevent economic losses to homeowners. *Greystone, supra* at 1215.

RoRA was passed by the California Legislature in response to the California Supreme Court decision in *Aas v. Superior Court,* 24 Cal.4th 627, 101 Cal. Rptr. 2d 718, 12 P.3d 1125 (2000) (*Aas*). In *Aas*, the California Supreme Court concluded that a group of homeowners could bring strict liability claims for existing construction defects that had not yet caused either property damage

---

[5]*Greystone v. Midtec* remains good law. According to the website for the Fourth Appellate District, Division One, no further review was sought and the case became final on February 2, 2009.

1   or personal injury.  The homeowners in *Aas* complained that the builder incorporated inadequate

2   shear walls and fire walls into new homes.  The *Aas* Court applied the "economic loss" rule and held

3   that the cost to repair and/or replace the defect itself was not actionable against the builder.

4          The California Legislature reversed *Aas* and the traditional "economic loss" limitation for

5   homeowners pursuing strict liability and negligence claims.

6          "In response to the holding in *Aas*, the Legislature enacted Civil Code section 895 et
       seq. (the Right to Repair Act or the Act).  The Act establishes a set of building
7      standards pertaining to new residential construction, and provides homeowners with
       a cause of action against, among others, builders and individual product
8      manufacturers for violation of the standards (§§ *896, 936*).  The Act makes clear that
       upon a showing of violation of an applicable standard, a homeowner may recover
9      economic losses from a builder without having to show that the violation caused
       property damage or personal injury (§§ *896, 942*).  In such an instance, the Act
10     abrogates the economic loss rule, thus legislatively superseding *Aas*." *Midtec*, at 1202.

11         RoRA establishes a set of *consumer protection* standards for residential construction, and

12  provides commonly applicable tort liability standards for the benefit of homeowners against

13  builders, product manufacturers and installers who fail to meet construction standards.[6] *Cal. Civil*

14  *Code § 896.*  According to *Midtec*, "The Act repeals the economic loss rule for claims that allege a

15  violation of the Act's standards." *Midtec*, *supra.*, at 1212.  RoRA explicitly states that "[i]n order to

16  make a claim", the homeowner "need only demonstrate, in accordance  with the applicable

17  evidentiary standard, that the home does not meet the applicable standard, . . ." *Cal. Civil Code §942.*

18   No showing of causation or damages is required to prove strict liability for a violation of a standard

19  provided that the violation arises out of, pertains to, or is related to, the original construction. *Id.*

20  Common issues of law and fact predominate for the class in this case under RoRA.

21         **1.     Class Members Are Entitled To Common Protection Under RoRA As**
               **Claimants**
22
            The class is defined as Pulte homeowners whose homes were built and sold on or after
23
    January 1, 2003.  *California Civil Code section 895(f)* provides in part that a "'Claimant' or 'homeowner'
24

25  _____

26         [6]At the March 30, 2009 hearing, Pulte's counsel characterized RoRA as a "procedural"
    remedy for developers.  (Hearing Tr., p. 28:2-9.)  While developers may be afforded the opportunity
27  to repair a defect under the Act, RoRA's true impact is to *change the law* to give California consumers
    with homes built after January 1, 2003 a strict liability claim and a right to repair and other remedies
28  that did not exist at common law based on the *Aas* decision. *Greystone*, *supra* at 1216 ["a primary
    purpose of the Act is to abrogate the economic loss rule for a violation of the Act's standards"].

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1    includes the individual owners of single-family homes". Plaintiff Emilio Segura and the other

2    proposed class members are all Pulte home owners who are entitled to the consumer protections of

3    the RoRA. They share in common that their homes were built and sold after January 1, 2003 by the

4    same mass produced residential builder, Pulte Homes. Every home in the proposed class

5    incorporates the same defective component, Cocoon insulation. (Parks Decl. Ex. "D" [Pulte Supp.

6    Expert Report, pp. i-ii]; Parks Decl. Ex. I, p. 47:17-23, 48:10-16, 153:20-155:19, 171:5-24 [Pulte has

7    common recordkeeping to identify the building components for each home it built and Cocoon

8    insulation was the only wet blown insulation product it used in California from 2001 to 2006].)

9              **2.    *Pulte Is Subject To Liability Under RoRA As A Builder***

10          RoRA was specifically enacted to apply to claims against builders like Pulte. *Cal. Civil Code*

11   *§§896, 911, 942.* Homeowners need only demonstrate that the homes do not meet applicable

12   statutory standards. No showing of causation or damages is required to meet plaintiffs' burden of

13   proof, provided the violation arises out of the original construction. *Cal. Civil Code §941(e);*

14   *Greystone, supra* at 1213. A builder is strictly liable for any violation of RoRA. *Greystone, supra* at 1216.

15          Pulte, along with its Del Webb division, is a mass manufacturer of residential housing and

16   that sold thousands of homes in the state of California within the past ten (10) years. (Parks Decl.

17   Ex. J, p. 118:5-10, Ex. E, p. 209:12-15; Parks Doc. Ex. "37", "38".) Each of the 9,709 homes,

18   including Plaintiff Segura's home, was manufactured by Defendant Pulte and Pulte specifically

19   incorporated Cocoon insulation as a building component into Plaintiffs' new homes and residential

20   housing in the state of California. (Parks Decl. Ex. I, p. 44:4-21; Ex. J, p. 100:25-101:2; Parks Doc.

21   Ex. "57.") The Cocoon insulation was incorporated by Pulte as part of the original construction.

22          As a mass producer of housing, Pulte "builds on an aggressive building schedule." (Parks

23   Decl. Ex. J, p. 118:5-10.) Pulte uses predominantly the same sequencing process for constructing

24   each Pulte home. (Parks Decl. Ex. K, p. 68:25-69:3.) Pulte controlled insulation product selection

25   and mandated the use of Cocoon insulation by insulation installers it hired in California. (Parks

26   Decl. Ex. J, p. 100:25-101:2.) Pulte used Cocoon insulation in wall assemblies in Southern California

27   from late 2001 until September, 2006. (Parks Decl. Ex. I, p. 44:4-21; Parks Doc. Ex. "57.")  Pulte

28   corporate approved the use of Cocoon insulation at the time the product was rolled out in

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1    California. (Parks Decl. Ex. I, p. 130:2-5.) Cocoon insulation was the only moisture-based insulation

2    product used by Pulte in home construction in California from 2001 through 2006. (Parks Decl. Ex.

3    I, p. 17:10-18, 47:17-23, 48:10-16.)  Pulte was USGF's primary builder involved with the purchase

4    and integration of Cocoon insulation into homes. (Parks Decl. Ex. E, p. 367:10-18.)  As the builder

5    of the class of mass produced homes, Pulte is subject to liability under RoRA.

6               **3.     *US Greenfiber Is Subject To Liability Under RoRA As A Product
Manufacturer/Material Supplier***

7

8            Individual product manufacturers and material suppliers like US Greenfiber are subject to

9    liability under RoRA. *Cal. Civil Code §936.*   Furthermore, the abrogation of the economic loss rule

10   that allows a homeowner to sue a builder for a violation of a construction standard without any

11   resulting property damage, also applies to the homeowners' claims against the individual product

12   manufacturer/material supplier. *Greystone, supra* at 1213-1214, 1218 ["(w)e conclude that the Right to

13   Repair Act abrogates the economic loss rule in actions brought by homeowners against individual

14   product manufacturers for a violation of the Act's standards"].  USGF can be sued in this case for

15   defective Cocoon insulation even if the defect has not resulted in property damage to other

16   property. *Id.* ["sections 896 and 936 make it clear that product manufacturers face statutory liability

17   for a violation of the Act's standards."]

18           In *Greystone v. Midtec*, the Court of Appeal specifically examined the application of RoRA to

19   individual product manufacturers.  That case involved a claim over the risk of plumbing leaks

20   created by a molding defect in plumbing fittings.  Although there had been some failures, most of

21   the fittings had not actually failed.  Greystone replaced all of the fittings, including fittings that had

22   not failed, and sued Midtec, the product manufacturer, for indemnity and for negligence. *Greystone v.*

23   *Midtec, Inc.*, 168 Cal. App. 4th 1194, 1204 (2008)

24           *Midtec* held that RoRA applies to individual product manufacturers and material suppliers.

25   *Id.* at 1211-1214.  Specifically, *California Civil Code §936*, broadly provides that the liability standards

26   of RoRA apply to individual product manufacturers and material suppliers who cause, in whole or in

27   part, a violation of a particular standard as a result of a negligent act or omission.  Importantly,

28   *California Civil Code §936* also clarifies that "the negligence standard in this section does not apply to

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

1  any . . . material supplier, individual product manufacturer, . . . with respect to claims for which strict

2  liability would apply." In other words, US Greenfiber is also subject to strict liability to the class of

3  homeowners for the Cocoon insulation defect as well as the liability standards applicable for any

4  violation of RoRA caused in whole or in part by a negligent act or omission. See *Jimenez v. Superior*

5  *Court*, 29 Cal.4th 473, 476 (2002) [a manufacturer of windows installed in mass-produced houses

6  may be strictly liable in tort for defects in windows that cause damage to other parts of the houses].

7       USGF is in the business of manufacturing and selling Cocoon insulation in California.

8  (Compl., ¶ 11, 15.) Cocoon insulation is a manufactured product that is composed primarily of

9  recycled paper and cellulose fibers. Paper products, such as old newspapers and telephone

10  directories, are shredded to roughly the size of a quarter and then processed through what is known

11  as a disk refiner or fiberizer where fire retardant and adhesive are added.   (Compl., ¶ 16.)

12       Compared to fiberglass which will not hold onto water, one of the inherent qualities of the

13  Cocoon insulation is that it is highly hygroscopic and will absorb and retain water over a period of

14  time. (Parks Decl. Ex. E, p. 56:11-57:4.) Unlike other types of more commonly and traditionally

15  known insulation, such as fiberglass or batt insulation, Cocoon insulation used by Pulte in wall

16  cavities also added water to the installation process. (Parks Decl. Ex. E, p. 52:7-10.) Cocoon

17  insulation is installed into wall cavities with water added to spray into areas for application. (Parks

18  Decl. Ex. E, p. 50:14-18.) Water is mixed with the insulation as it passes through a nozzle and

19  activates an adhesive component in the insulation.   (Compl., ¶ 17.)  An inherent common quality

20  for all Cocoon cellulose insulation manufactured and sold by USGF as Cocoon insulation is the

21  highly sponge-like and hygroscopic character of this manufactured product and the presence of

22  water and moisture in and around the product. (Compl., ¶ 18; Parks Decl. Ex. E, p. 54:22-55:3,

23  55:9-57:4, 57:11-24.) The combination of water and moisture sources with a water-retaining and

24  water absorbent product in wall cavities creates a defect in the walls of Pulte homeowners.

25       Cocoon insulation is installed wet and closed in wall cavities where air circulation is

26  inadequate.   (Compl., ¶ 19-24; Parks Doc. Ex. "62", "105", "164", Parks Decl. Ex. G, p.

27  85:18-86:18; Ex. "P", p. 60:17-61:15; Ex Q, p. 96:13-97:5.) The closure of wall cavities containing

28  Cocoon insulation, "locks in" moisture and dampness under conditions that are inherently defective

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1   for residential home construction.   (Compl., ¶ 19-24; Parks Decl. Ex. E, p. 54:22-55:3; Ex. I, p.

2   83:11-18; Ex. B; Doc. Ex. "62.".)  Furthermore, bathroom walls and wall assemblies are known and

3   expected to contain vapor barriers and fixtures that reduce or inhibit the process of drying for

4   Cocoon insulation.   (Compl., ¶ 19-24; Parks Doc. Ex. "62".)  Introduction of Cocoon insulation

5   into and around bathrooms and bathroom wall assemblies unreasonably and dangerously promotes

6   the retention of moisture and a mold-inducing environment in residential construction.   (Compl., ¶

7   19-24; Parks Decl. Ex. "B"; Parks Decl. Ex. E, p. 374:15-375:9; Doc. Ex. "62".)

8          In September 2003, USGF designed a standard Cocoon Insulation Implementation Plan

9   with Pulte because of the awareness that Cocoon insulation could impact "indoor air quality" and

10  was "on the radar" which "related to overall construction market concerns about mold, water

11  management, and the risks associated with . . building assemblies and how builders manage that

12  particular risk with respect to water management." (Parks Decl, Ex. E, p. 87:24-88:18, 103:9-12;

13  Doc. Ex. 4, 5.)  A USGF Customer Structure outline included Mold/Quality knowledge as part of

14  "Sales" training.  (Parks Doc. Ex. "27", Parks Decl. Ex. E, p. 165:9-18.)

15         As part of its Pulte Cocoon Installation Protocol, USGF trained Pulte construction

16  personnel on the Cocoon insulation "system".  (Parks Decl. Ex. E, p. 96:19-23; Ex. J, p. 79:2-3; Doc.

17  Ex. "10" [Cocoon Product Awareness Training for Pulte/Del Webb-GFPD 4577], Ex. "4", [GFPD

18  4557].)  USGF also trained Quality Interior workers for Pulte construction work in Southern

19  California.  (Parks Decl. Ex. J, p. 59:6-13, 60:10-12.)  Pulte later sued US Greenfiber claiming that its

20  specifications for Cocoon insulation were defective.  (Parks Decl. Ex "B".)  USGF played an integral

21  role in the incorporation of Cocoon insulation in the homes of Segura and the class of 9,709 homes.

22         Finally, the perceived "moisture problem" with Cocoon insulation was a topic of intense

23  discussion at US Greenfiber.  In an August 23, 2001 e-mail regarding "toxic mold", the President of

24  USGF, Dennis Barrineau, states "[w]e need to have a strategy to deal with the hysteria . . . Our sales

25  people & technicians need to be ready to address it with builders and contractors and we need to be

26  ready to deal with potential claims against cellulose." (Parks Doc. Ex. "32".)  In an August 26, 2001

27  e-mail regarding toxic mold, Dan Rizzo states "I have already been advised by Pulte and Centex that

28  this is a critical issue for them inn [sic] areas beyond TX and CA. . . . We are a perfect target by our

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

competition because we do what some people believe to be contrary to common wisdom — we add
moisture to the inside of a wall cavity." (Parks Doc. Ex. "32".) As discussed below, "water issues"
are one of the enumerated areas of construction standards outlined under RoRA that apply to this
case. US Greenfiber is subject to liability under RoRA

> ### 4.    *Quality Interiors Is Subject To Liability Under RoRA As A Product Installer/Supplier*

RoRA applies to Quality Interiors as part of the Cocoon insulation material supply chain and
as the installer of Cocoon insulation in the homes of Segura and at least 2,000 other homeowners.
*Cal. Civil Code §936, 896. Greystone v. Midtec* further clarifies that homeowners can bring an action
against Quality Interiors for violation of RoRA. *Greystone, supra* at 1213-1214.

Quality Interiors, Inc. installed Cocoon insulation in more than 2,000 homes in Southern
California. (Parks Decl. Ex. J, p. 119:4-13.) It participated in implementation of Cocoon
Installation Implementation Plan designed by USGF with Pulte. (Parks Decl. Ex. E, p. 85:1-5,
86:11-14.) Pulte selected Quality Interiors to install Cocoon Insulation and be part of the
USGF-designed Pulte Implementation Plan. (Parks Decl. Ex. E, p. 105:12-22; Ex. K, p.
57:11-19Doc. Ex. "4", "5".) Quality depended on USGF training as its source for expertise on
Cocoon Insulation. (Parks Decl. Ex. J, p. 98:17-24.) Quality performed Cocoon Insulation work for
Pulte from 2001 to 2004. (Parks Decl. Ex. J, p. 39:10-15.) According to USGF training materials,
Quality Interiors was improperly trained that "drywall can be installed within 24 hours . . . allowing
the builder to stay on schedule." (Parks Doc. Ex. "58", "59"; Parks Decl. Ex. E, p. 322:1-323:23.)

Quality Interiors entered into the contract with Pulte to install the Cocoon Insulation at
"The Estates" where Mr. Segura's home is located. (Parks Decl. Ex. J, p. 44:3-45:2.) USGF and
Quality Interiors are currently being sued for resulting property damage caused by Cocoon
Insulation to a condominium development in San Diego. (Parks Decl. Ex. O.) They were also sued
by Pulte for defective Cocoon insulation. (Parks Decl. Ex. "B".) There is evidence of
misrepresentations of the certification of Quality Interiors by US Greenfiber. According to USGF
and Quality, USGF did not have certified Cocoon Insulation installers. (Parks Decl. Ex. E, p.
71:8-10, 83:17-25, 8:6-10; Ex J, p. 61:11-15.) USGF's product approval from the ICBO/ICC under

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1    the Uniform Building Code effective February, 2001 mandated that Cocoon insulation product

2    application must be by manufacturer "certified" installers.  (Parks Doc. Ex. "164.")  Yet, according to

3    Pulte, it was lead to believe that Quality was certified by USGF.  (Parks Decl. Ex. I, p. 38:10-19.)

4    Quality Interiors also represented to Pulte that it was certified to install Cocoon Insulation.  (Parks

5    Decl. Ex. I, p. 212:7-10.)  Quality Interiors is subject to liability claims under RoRA.

### 5.  RoRA Liability Standards Apply To The Cocoon Insulation Incorporated Into Pulte Wall Assemblies

"There is nothing in either the language or history of Rule 23 that gives a court any authority

to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be

maintained as a class action. . . ." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974).  Nevertheless,

in addition to the preceding sections, common legal standards apply for the entire class.

As discussed in section IV.A.6 *infra*, under the doctrine of judicial estoppel, Pulte is estopped

from denying that Cocoon insulation is a defective building component based on its own judicial

admissions regarding the defect in the manufacture, specification and use of Cocoon insulation in

bathroom and kitchen wall assemblies.  (Parks Decl. Ex. "B".)  Mass builders of residential housing

in California are strictly liable for construction defects.  *Krieger v. Eichler Homes*, 269 Cal.App.2d 224,

227 (1969).  At a minimum, class certification should be granted on this basis alone against Pulte

Home Corporation, Inc. for the benefit of all California homeowners, like Segura, with the Cocoon

insulation building component in their bathroom and kitchen wall assemblies.

In addition to Pulte's judicial admission that Cocoon insulation is defective which is

discussed at length below, RoRA establishes common liability standards that apply to the Cocoon

insulation incorporated into Pulte wall assemblies for the entire class.  The intent of the standards in

RoRA is "to address every function or component of a structure." *Cal. Civil Code §897*.

With respect to "water issues", *California Civil Code §896(a)(10)* mandates that wall "systems"

"shall be installed in such a way so as not to allow unintended water to pass into the structure or to

pass beyond, around, or through the designed or actual moisture barriers of the system, including

any internal barriers located within the system itself." *California Civil Code §896(a)(11)* mandates that

wall "systems" "shall not allow excessive condensation to enter the structure and cause damage to

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1  another component." "Systems" that must meet "water issues" standards include "wall assemblies"

2  and "internal wall cavities".

3     Additionally, RoRA provides that with respect to issues regarding other areas of

4  construction, "manufactured products" "shall be installed so as not to interfere with the products'

5  useful life, if any." *Cal. Civil Code §896g)(3)(A).* "Useful life" means a representation of how long a

6  product is warranted or represented to last. If there is no representation of "useful life" the builder

7  must install the manufactured product so as not to interfere with the product's utility.

8     RoRA mandates that "structures shall be constructed in such a manner so as not to impair

9  the occupants' safety because they contain public health hazards" as determined by public health

10  agency. *Cal. Civil Code §896g)(15).* The mold caused by Cocoon insulation created a health and

11  safety concern with Pulte management. (Parks Decl. Ex. I, p. 83:11-84:1.) In line with the

12  abrogation of the economic loss rule, there is no requirement under RoRA that the defect actually

13  causes health and safety harm. *Id.* Finally, RoRA has a further "catchall" liability standard which

14  provides that to the extent that a function or component of a structure is not addressed by these

15  standards, it shall be actionable if it causes damage. *Cal. Civil Code §897.*

16     Plaintiffs' moving papers set forth evidence that the entire class can use to pursue a common

17  liability claim against defendants. Mr. Segura's home still has Cocoon insulation in wall cavities,

18  including the bathroom and kitchen wall assemblies. (Segura Decl, ¶ 8.) The introduction of

19  Cocoon insulation in bathroom and kitchen wall assemblies creates defects and dangers, including

20  unreasonably and dangerously allows moisture and condensation to gather and travel through the

21  wall cavities and become trapped in homes, creating mold-inducing environment in residential

22  construction, particularly in bathrooms and kitchens. (Compl., ¶ 20; Parks Decl. Ex. B, Ex. E, p.

23  374:15-375:9; Doc. Ex. "62".) For instance, it was understood that moisture from the Cocoon

24  insulation travels through interior walls of homes. (Parks Decl. Ex. E, p. 76:2-6.) Defendants did

25  not have any specification to avoid trapping moisture from the Cocoon insulation behind mirrors

26  and shower enclosures covering the wall assemblies as moisture travels through wall coverings.

27  (Parks Decl, Ex. E, p. 76:7-16, Doc. Ex. "62".) According to Pulte, mold issues in Pulte homes in

28  California were caused by Cocoon insulation "moisture trapped in the wall during the construction

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1    process." (Parks Doc. Ex. "105", Parks Decl. Ex. G, p. 85:18-86:18; Ex. "P", p. 60:17-61:15; Ex Q,

2    p. 96:13-97:5.) An internal USGF e-mail notes seeing condensation with Cocoon insulation at 12%

3    moisture content. (Parks Doc. Ex. "52.") Evidence of "water issues" created by the introduction of

4    the Cocoon insulation into wall assemblies and internal wall cavities is significant.[7]

5        Pulte was unaware of any track record with Cocoon insulation prior to making the decision

6    to start using the product in mass produced housing. (Parks Decl. Ex. I, p. 126:11-16,

7    126:25-127:10.) One Pulte construction manager considered Cocoon insulation to be experimental.

8    (Parks Decl. Ex. I, p. 128:19-21.) Yet, Pulte represented a "useful life" for Cocoon insulation that it

9    would last a lifetime and have no moisture or mold issues.[8]

10       As set forth in the evidence accompanying this motion, in 2003, another major homebuilder,

11   Centex, banned the use of Cocoon insulation. (Parks Decl. Ex. E, p. 55:9-17.) Centex put together

12   a corporate risk management program that looked into the overall risk of construction and it banned

13   Cocoon insulation from vertical wall assemblies because of the overall risk created by Cocoon

14   insulation (Parks Decl. Ex. E, p. 55:18-56:10.) Centex did extensive testing of the Cocoon

15   insulation product. Pulte did no testing on the product to make sure it was safe and effective for its

16

17       [7]There are already at least 767 homes that have experienced resulting property damage
including moisture damage and resulting mold due to the product failure associated with the
18   Cocoon insulation. This includes the Segura home. (Segura Decl. ¶¶ 1-8.) Pulte admits that it did
not test each and every home scientifically to ascertain the presence of mold. (Parks Decl. Ex. I, p.
19   105:24-106:3.) Pulte also left Cocoon insulation in the bathroom and kitchen wall assemblies of
Mr. Segura's home. (Segura Decl., ¶8.) The homeowner class and Mr. Segura remain exposed to this
20   building component defect.

21       [8]According to Pulte consumer marketing brochures, Cocoon insulation was "better
insulation" with proven "mold resistance" and "guaranteed for the life of your home." (Parks Doc.
22   Ex. "37", "38".) Pulte marketed Cocoon Insulation to "reduce risk, callbacks and warranty claims."
(Parks Doc. Ex. "37.") USGF claimed the "Cocoon System" allowed for "an even distribution of
23   moisture throughout the wall." (Parks Doc. Ex. "44"; Parks Decl. Ex. F, p, 168:2-13.) USGF
advertised to intended users that Cocoon insulation "[d]oes not cause mold as many will claim!"
24   (Parks Depo. Ex "58", "59"; Parks Decl. Ex. E, p. 322:1-323:22.) USGF advertised to intended
users that "drywall can be installed within 24 hours . . . allowing the builder to stay on schedule."
25   (Parks Doc. Ex. "58", "59.") Pulte advertised to consumers its homes would provide "Performance
for Life – The Way It Should Be." (Parks Decl. Ex. F, p. 71:8-14.) Pulte advertised Cocoon
26   insulation was superior to fiberglass and had a demonstration mock-up in its sales office to promote
the Cocoon insulation product as a feature in the Pulte homes. (Parks Decl. Ex. G, p. 60:7-16,
27   61:8-21; Ex. K, p. 51:4-22..) As late as 2007, Pulte "boasted the benefits of Cocoon Cellulose" even
as late as July, 2007 after the clear knowledge of moisture and mold caused by Cocoon insulation.
28   (Parks Doc. Ex. "154")

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

13

1   intended purpose. (Parks Decl. Ex. I, p. 121:18-22.) The Centex ban of Cocoon insulation was

2   common knowledge in the building community. (Parks Decl. Ex. J, p. 132:8-15.)

3       There is an inherent risk Of Cocoon insulation "re-wetting" following installation:

4   Compared to fiberglass which will not hold onto water, one of the inherent qualities of the Cocoon

5   insulation is that it is hygroscopic and densely packed into wall cavities and will absorb and retain

6   water over a longer period of time. (Parks Decl. Ex. E, p. 56:11-57:4.) Centex banned Cocoon

7   insulation in its home production in 2003 because the placement of Cocoon Insulation in wall

8   assemblies around plumbing or windows creates a foreseeable risk of harm in a water intrusion

9   event. (Parks Decl, Ex. E, p. 57:11-24.) In a May, 2003 draft report for experimental design of

10  water intrusion experiments, USGF understood that the risk was "the propensity of different

11  insulation systems to produce mold because of elevated water levels. We understood that issue from

12  the outset." (Parks Doc. Ex. "29" [GFPD 4642], Parks Decl. Ex. E, p. 166:21-167:10.) Testing

13  conducted by Centex found that it took longer for wall cavities to dry out with re-wetted Cocoon

14  insulation than wall cavities with fiberglass insulation. (Parks Decl. Ex. E, p. 171:5.) There are many

15  foreseeable situations where moisture can get introduced into a wall cavity. (Parks Decl. Ex. I, p.

16  135:18-136:1.) Pulte was aware of the Centex ban and that there could be a concern with mold if

17  leaks are not detected because the water is absorbed, but Pulte management discounted this

18  concern.[9] (Parks Decl. Ex. K., p. 31:3-7, 29:19-30:6.)

19      USGF designed a defective Cocoon Installation Implementation Plan with Pulte. (Parks

20  Decl., Ex. E, p. 99:4-24, 108:3-10; Ex. J, p. 66:2-23; Ex. K, 45:9-24, 57:11-19, 77:2-21; Parks Decl,

21  Doc. Ex. "166", "4", "5" [GFPD 4565-4568].) An influencing factor for the Plan was for "defining

22  consistency across all locations" regarding moisture content. (Parks Decl, Doc. Ex. "5"; Ex. E, p.

23  108:3-10.) The scope of the plan was for USGF and Pulte to implement a standard installation

24  protocol for the West region, including Southern California. (Parks Decl. Ex. E, p. 102:14-103:7.)

25  USGF agreed to "work with Pulte/Del Webb on the creation of an enhanced installation protocol

26

27      [9]Pulte understood as far back as 1998 and 1999 that if moisture content was not properly
    managed with Cocoon insulation, a product failure could result. (Parks Decl. Ex. I, p. 28:22-25,

28  29:22-30:20.) Pulte and USGF discussed the construction risk and market perception created by
    Cocoon insulation. (Parks Decl. Ex. E, p. 84:11-19; Depo. Exhibit "4", "166")

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1  that addresses a methodology for capturing the installed moisture for each spray job." (Parks Decl.

2  Ex. E, p. 91:18-92:10; Doc. Ex. "4".) USGF designed this standard protocol with Pulte so Pulte and

3  its workforce would understand what USGF required as the manufacturer in order to install Cocoon

4  insulation. (Parks Decl, Ex. E, p. 92:11-15, 112:16-21; Ex. J, p. 66:2-23.) USGF was responsible for

5  implementing the standard insulation protocol for Pulte and Quality Interiors in California. (Parks

6  Decl., Ex. E, p. 99:4-24; Ex. K, 57:11-19; Doc. Ex. "166", "4" [GFPD 4557].

7      The Ninth Circuit has made clear that, "The law of this circuit, and more specifically our

8  leading decision in Dalkon Shield, does not create any absolute bar to the certification of a

9  multi-state plaintiff class action in the medical products liability context." *Valentino v. Carter-Wallace,*

10  *Inc.,* 97 F.3d 1227, 1230 (9th Cir. 1996); *see also In re School Asbestos Litig.,* 789 F.2d 996 (3rd Cir.), cert.

11  denied, 479 U.S. 852, 107 S. Ct. 182, 93 L. Ed. 2d 117 and cert. denied, 479 U.S. 915, 107 S. Ct. 318,

12  93 L. Ed. 2d 291 (1986). The *Kingsbury* case presents a quantum leap forward in favor of class

13  certification because the controlling substantive law of California applicable to this entire case and to

14  all the defendants eliminates all of the individual issues of causation and resulting damage that would

15  otherwise be considered in evaluating plaintiff's class certification motion. RoRA *eliminates* the

16  "economic loss" rule and the burden for a plaintiff to prove that a building component defect

17  caused resulting property damage to other property for the entire class. The Cocoon insulation

18  defect <u>is</u> the harm. It is actionable for the entire class whether or not any home ever suffers actual

19  mold injury or property damage. Pulte's own judicial admission that Cocoon Insulation in wall

20  cavities is a defect, further substantiates a *common* class wide defect claim under RoRA. Following the

21  reasoning in *Valentino,* and *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir. 1998), class

22  certification is applicable to the instant case.

23         **6.**  ***Evidence Of Pulte's Judicial Admission And Notice That Cocoon***
    ***Insulation Is Defective Establishes Strict Liability For Benefit Of Class***

24      A statement in a complaint is a judicial admission. *American Title Ins. Co. v. Lacelaw Corp.,* 861

25  F.2d 224, 226 (9th Cir. 1988) Judicial estoppel can be invoked whether a party takes inconsistent

26  positions in the same action or in two different actions. See *Rissetto v. Plumbers & Steamfitters Local*

27  *343,* 94 F.3d 597, 605 (9th Cir. 1996) ("We now make it explicit that the doctrine of judicial

28

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**MOTION FOR CLASS CERTIFICATION**

1    estoppel is not confined to inconsistent positions taken in the same litigation"). Furthermore, a

2    judicial admission made by a party in a complaint is evidence that can be used against the party. <u>See</u>

3    *Wagner v. Professional Engineers in California Government*, 354 F.3d 1036, 1044 (9th Cir. 2004) ("Judicial

4    estoppel is an equitable doctrine that is intended to protect the integrity of the judicial process by

5    preventing a litigant from 'playing fast and loose with the courts'")

6         Pulte states in its product liability lawsuit that it filed in Riverside County Superior Court

7    against US Greenfiber that "in connection with the manufacturing, providing, supplying, selling,

8    testing, inspecting, delivering and distribution of the Greenfiber Cellulose Insulation and installation

9    specifications and protocol, the Greenfiber Cellulose installation specifications and protocol

10   provided to Pulte were inadequate and/or improper for the installation of the Greenfiber Cellulose

11   insulation at the kitchen and bathroom assemblies" on Pulte-built homes. (Parks Decl., Ex. "B".

12   ¶78, p.18:26-19:3.) Pulte further states it did not have "proper and adequate Greenfiber Cellulose

13   insulation specifications and protocol for the installation of the Greenfiber Cellulose insulation" and

14   that US Greenfiber "negligently manufactured, supplied, sold, tested, inspected and placed into the

15   stream of commerce the Greenfiber Cellulose insulation and installation specifications and protocol

16   for the installation of the Greenfiber cellulose insulation into mass produced housing projects by

17   residential developers" including Pulte. (Parks Decl. Ex. "B", ¶86, p.20:16-26.)

18        Pulte sued USGF because the Cocoon insulation was defectively manufactured and

19   designed–there has been a massive product failure with this product. (Parks Decl. Ex. B; Ex. J, p.

20   50:1-9.) The mold caused by Cocoon insulation created a health and safety concern with Pulte

21   management. (Parks Decl. Ex. I, p. 83:11-84:1.) Pulte waited until 2006 to ban Cocoon Insulation

22   from various wall cavity applications. (Parks Doc. Ex. "134", "137") It banned Cocoon Insulation

23   after it concluded it wasn't getting "perceived economic value from the customer" due to mold

24   issues. (Parks Decl. Ex. I, p. 84:2-84:11.) The current insulation product Pulte is using in California

25   is traditional fiberglass batt insulation. (Parks Decl. Ex. I, p. 1213:11-16.)

26        The question of whether or not a defendant builder of mass produced housing may be held

27   strictly liable for construction defects has been firmly answered in the affirmative beginning 40 years

28   ago with *Kriegler v. Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224. (1969). <u>See also</u> *GEM Developers v.*

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1    *Hallcraft Homes of San Diego, Inc.* 213 Cal.App.3d 419 (1989); *Del Mar Beach Club Owners Assn. v.*

2    *Imperial Contracting Co.* 123 Cal.App.3d 898 (1981); *Avner v. Longridge Estates* 272 Cal.App.2d 607

3    (1969). In *Jimenez v. Superior Court*, 29 Cal.4th 473, 483, 58 P.3d 450 (2002), the California Supreme

4    Court affirmed the right of a plaintiff to bring a strict products liability class action for a defective

5    building component. *Jimenez, supra.* 29 Cal. 4th at 476.   Pulte admitted that the specification of

6    Cocoon insulation in bathroom and kitchen wall cavities is a defect.  While Pulte may have claims

7    against US Greenfiber, the class of homeowners is entitled to a class wide remedy from Pulte.

8              **7.    *This Class Action Is Not Subject To Any "Prelitigation" Procedures***

9              Class actions brought under RoRA that "address solely the incorporation of a defective

10   component into a residence" do not require the named and unnamed claimants' compliance with

11   "prelitigation" procedures. *Cal. Civil Code §931.*  Pulte's counsel acknowledged that this "class

12   action" exception applied to claims regarding a specific product in a letter written *in May, 2007* in

13   response to a written notice of class action claims from Plaintiffs' counsel.  (Parks Decl. Ex. "T", p.

14   2-3 ["class actions are narrowly allowed only when the issue is a product defect"].)  Yet, at the

15   March 30, 2009 hearing, Pulte counsel suggested to the Court that Plaintiff and other class members

16   had "prelitigation" obligations under RoRA, presumably suggesting that each homeowner would

17   have to write Pulte a separate letter to give it "prelitigation" notice of claims under RoRA before the

18   class action case could proceed. (See Hearing Tr., p. 28:13-20.)

19            Pulte's demand for "prelitigation" written notice from homeowners has long been

20   waived--the horse is out of the barn.  Most germanely, Pulte filed its own lawsuit over the Cocoon

21   insulation defect--it cannot credibly argue in opposition to class certification that it does not have

22   notice of the claim that Cocoon insulation is defective.  Pulte is judicially estopped from making this

23   argument to the Court for the reasons stated above.

24            Pulte had repeated prior notice of the widespread Cocoon insulation defect long before this

25   lawsuit started. (Parks Decl. Ex. T.)  Any argument by Pulte for "enforcement" of "prelitigation"

26   procedures was waived. Pulte waived this argument because it did not file a responsive pleading or

27   motion to stay this action.  Compare *Cal. Civil Code §930(b)* [if the claimant does not conform with

28   the prelitigation requirements and files an action, the builder may bring a motion to stay the action].

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1    In any event, the lawsuit is specifically directed solely to the incorporation of a defective building

2    component and specifically names the manufacturer/supplier, U.S. Greenfiber which renders

3    "prelitigation" procedures inapplicable under *California Civil Code §931*. At this late stage, Pulte's

4    effort to balkanize each class member with a "prelitigation" process is both draconian and absurd.

5             **8.    *RoRA Allows For Common Remedies For Benefit Of Class***

6             The predominant remedy for every class member under RoRA is identical – removal and

7    replacement of Cocoon insulation with a safer, non-defective alternative. Among the remedies that

8    a claimant may recover in an action for violation of the RORA is "the reasonable value of repairing

9    any violation of the standards set forth in [the Act] ... ." *Cal. Civil Code § 944*. The California RoRA

10   eliminates any individual issues of proof of causation for resulting property damage caused by the

11   Cocoon insulation. *Cal. Civil Code § 942*. If the Cocoon insulation is a defect, Pulte, US Greenfiber

12   and Quality are liable to the homeowner class to repair the defect.

13            Pulte's judicial admission of the defect and its refusal to remove Cocoon insulation from all

14   bathroom and kitchen wall assemblies also presents the case as suitable for the Court to order class

15   certification under Fed.R.Civ.P. Rule 23(b)(2) with an option for potential class members to opt-out.

16   A Rule 23(b)(2) class action is appropriate when "the party opposing the class has acted or refused

17   to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief

18   or corresponding declaratory relief with respect to the class as a whole." *Amchem Prods v. Windsor*,

19   521 U.S. 591, 614 (1997). The Court could certify this case as a Rule 23(b)(2) class for all purposes

20   except for damages, which it could certify under a (b)(3), a practice commonly referred to as a

21   "hybrid" approach. *Robinson v. Metro-North Commuter RR*, 267 F.3d 147, 167 (2d Cir. 2001), cert

22   denied, 535 U.S. 951 (2002); *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 898 (7th Cir.1999) (endorsing

23   hybrid certification as one alternative where monetary claims alleged). In this case, there is a

24   judicially admitted defect with Cocoon insulation in bathroom and kitchen wall assemblies and Pulte

25   refuses to fix it by removing all of the Cocoon insulation. Plaintiff requests the Court to consider

26   certification under Rule 23(b)(2), in addition to Rule 23(b)(3), to order Pulte to fix the defect. See

27   *FRCP Rule 23(d)(2), (5); Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986).

28            RoRA provides a well-defined, albeit limited scope of monetary damages for homeowners.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

1   According to *California Civil Code §944*, homeowners are "only entitled to damages for" such items as

2   the reasonable value of repairing the violation of the standards; the reasonable cost to repair and

3   rectify damage resulting from the failure of the home to meet the standards; reasonable relocation

4   and storage expenses during repairs; and reasonable investigative costs. Any slight variations in the

5   nature and amount of repairs to homes can be managed efficiently by determining the cost to

6   replace Cocoon insulation for each Pulte home and applying the estimated figure to all of the homes

7   in the same model.   Pulte has standardized records to identify the location of Cocoon insulation in

8   wall cavities in Pulte homes built in California. (Parks Decl. Ex. I, p. 153:20-155:19, 171:5-24.)

9         Plaintiff submits that Pulte has not engaged in a fair or reasonable remedial process for

10  affected homeowners.  As Pulte homeowners and their families, with young children and disabled

11  spouses, were struggling with the Cocoon insulation defect, including moisture and mold damage

12  and fears over their property, Pulte customer service staff adopted "Superhero" names "in the spirit

13  of fun": "General Germicide", "Admiral Anguish", "Captain Contamination", "Major Mildew",

14  "Sergeant Stress", "Spore Boy", and "Private Payable." (Compare Parks Doc. Ex. "160" [Pulte

15  team memo] with Parks Doc. Ex. 105 [mold health risks for persons with pre-existing medical

16  conditions], Parks Decl. Ex. F, p. 50:16-51:19; Ex. G, p. 76:16-77:7.)

17        Pulte has: 1) Refused to pay for any independent opinions/investigation for Pulte

18  homeowners, and; 2) Refused to pay for the loss of use of property for periods of time when Pulte

19  homeowners have forced out of their homes. (Parks Doc. Ex. "105",  "139", "141".)  Pulte has not

20  tested all homes it built with Cocoon insulation in California for the presence of mold.  (Parks Decl.

21  Ex. I, p. 105:24-106:3.)  Pulte only removed small amounts of the Cocoon insulation from limited

22  areas of homes and refuses to remove all Cocoon insulation from the bathroom and kitchen wall

23  cavities of Pulte homes in California.   (Parks Decl. Ex. I, p. 102:22-103:8.)  Removal and

24  replacement of Cocoon insulation with safer fiberglass insulation is a remedy sought on behalf of

25  the class. (See e.g. Parks Decl. Ex. G, p. 179:19-25; Ex. I, p. 103:3-103:8.)

26        A number of management tools are available to the Court and the parties to address

27  damages issues under *California Civil Code §944*, such as bifurcating liability and damages trials,

28  appointing a magistrate judge or special master to preside over damages proceedings, and creating

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

1 | subclasses as permitted under Rule 23(c)(4). Damages may be assessed class-wide based on a

2 | formula, such as the cost per square foot to remove and replace Cocoon insulation or through test

3 | trials. In summary, the fundamental and common legal and factual issue of the lawsuit is the Cocoon

4 | insulation defect under RoRA and the determination of responsibility for the defect.

5 | ### 9.    Cocoon Insulation Defect Is Actionable Under UCL

6 | Plaintiffs' UCL claim predominantly involves common questions. Pulte admits Cocoon

7 | insulation is a defect. Plaintiff's UCL claims borrow from RoRA and from Pulte's own admissions,

8 | warranties and representations to establish an unlawful business practice. Pulte's admissions and

9 | violation of RoRA obligations are actionable as violations of the UCL in a number of manners:

10 | ● A UCL claim based on Pulte's business practice incorporating Cocoon insulation and its

11 | violation of RoRA/construction standards presents predominant common issues of law and fact for

12 | a class of Pulte homeowners. (Parks Decl. Ex. A, Compl., ¶ 24–25, 75, 72); See *Barquis v. Merchants*

13 | *Collections Ass'n*, 7 Cal.3d 94, 113 (1972)[§17200 applies to ". . . anything that can properly be called a

14 | business practice and at the same time is forbidden by law."];

15 | ● A UCL claim based on the concealment of negative information about the moisture

16 | defect with Cocoon insulation and its very specifically deceptive misrepresentations and false

17 | advertising for this product. (Parks Decl. Ex. A, Compl., ¶ 72-73); See *Southland Sod Farms v. Stover*

18 | *Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) ["While product superiority claims that are vague or

19 | highly subjective often amount to non[-]actionable puffery, . . . misdescriptions of specific or

20 | absolute characteristics of a product are actionable."].

21 | Each class member does not need to individually prove reliance and that they were actually

22 | deceived in this particular case. The Ninth Circuit has explained that

23 | "[g]enerally, to be actionable under the UCL, a concealed fact must be material in the sense that it is likely to deceive a reasonable consumer. [ ] Unlike a common law

24 | fraud claim, a UCL fraud claim requires no proof that the plaintiff was actually deceived. [ ] Instead, the plaintiff must produce evidence showing 'a likelihood of

25 | confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1025-1026 (9th Cir.

26 | 2008) [citations omitted]

27 | Moreover, RoRA eliminates "causation" issues for defective building components in residential

28 | home construction and plaintiff does not need to prove specific causation to establish a UCL claim.

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1    • A UCL claim based on Pulte's admission of the defect and its construction warranties

2    related to Cocoon insulation is actionable. (Parks Decl. Ex. A,, Compl., ¶ 71 [not of "merchantable

3    quality"]; Parks Decl. Ex. E, p. 112:22-113:1, 113:11-13; Ex. I, p. 221:25-222:4; Doc. Ex. "60",

4    "77".) See State Farm Fire & Cas. Co. v. Superior Court, 45 Cal.App.4th 1093, 1105 (1996) [§17200

5    claim actionable based on party's violation of common law duty of good faith and fair dealing]. A

6    party's violation of its common law duties to a class of consumers may serve as a basis for holding

7    that party liable for injury in fact under the UCL.

8        Plaintiffs' claim for restitution and disgorgement of profits and money, as well as a judicial

9    declaration for enforcement of a right to repair under RoRA, is suitable for a class determination.

10   See Fireside Bank v. Superior Court, 40 Cal. 4th 1069, 1090, 56 Cal. Rptr. 3d 861, 155 P.3d 268 (2007)

11   [class representative has standing to obtain a declaration on behalf of a class that a defendant has

12   violated a legal standard and to pursue restitution]. The UCL makes clear that Segura can pursue

13   restitutionary disgorgement of profits under the UCL for a class. See Kraus v. Trinity Management

14   Services, Inc., 23 Cal. 4th 116, 136, 96 Cal. Rptr. 2d 485, 999 P.2d 718 (2000).

15        10.    *Defendants' Questions And Issues About Extent Of Resulting Mold And*
              *Moisture Damage Do Not Defeat Class Certification*
16

17        As a threshold issue, "[c]ourts traditionally have been reluctant to deny class action status

18   under Rule 23(b)(3) simply because affirmative defenses may be available against individual

19   members." Smilow v. Southwestern Bell Mobile Sys., Inc., 323 F.3d 32, 39 (1st Cir. 2003); Cameron v. E.M.

20   Adams & Co., 547 F.2d 473, 478 (9th Cir. 1976). Defendants' arguments against class certification

21   which the Court noted in its March 30th order, focused on challenges to the class to prove resulting

22   property damage and mold contamination. These arguments do not apply as defenses to RoRA

23   claims and demonstrate further support for class certification in this particular case.

24   **V.    PLAINTIFF'S CLAIMS ARE TYPICAL TO THE CLAIMS OF THE CLASS**

25        Similar to commonality, the "typicality" requirement is a permissive standard. Hanlon v.

26   Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). Plaintiff's claims are typical if they are

27   "reasonably coextensive with those of absent class members . . . ." Id. "As long as the named

28   representative's claim arises from the same event, practice, or course of conduct that forms the basis

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION**

1    of the class claims, and is based upon the same legal theory, varying factual differences between the

2    claims or defenses of the class and the class representative will not render the named representative's

3    claim atypical." *Jordan v. County of Los Angeles*, 699 F.2d 1311, 1319 (9th Cir. 1982), vacated on other

4    grounds, *County of Los Angeles v. Jordan*, 459 U.S. 810 (1982) 669 F.2d at 1321.

5        All members of the class own homes built by Pulte Homes, and all homes currently have

6    Cocoon insulation in the wall assemblies.  (Parks Doc. Ex. "92", "105.")  All homes are subject to

7    the RoRA liability standards and the elimination of "causation" and "economic loss" issues.  Pulte

8    admits that the specification of Cocoon Insulation used in Plaintiff's, and others', homes, is

9    defective.  (Parks Decl. Ex. B; Ex. I, p. 63:18-64:8; Ex. Q, p. 96:13-96:5.)  Plaintiff's claim that

10   Cocoon insulation is a defective building component in Pulte homes is typical for the entire class.

11        In response to the Court's question at the March 30th hearing, Mr. Segura's home still has

12   Cocoon insulation in kitchen and bathroom wall assemblies.  (Segura Decl. ¶8.)  Mr. Segura's home

13   also suffered particular resulting damage caused by the defective Cocoon Insulation.  Mr. Segura's

14   home was one of the hundreds of Pulte homes that Pulte identified as having moisture damage and

15   mold following investigation of moisture issues associated with the Cocoon Insulation.  (Parks Doc.

16   Ex. "92"; Parks Decl. Ex. "D" [Pulte Supp. Expert Report, pp. I-ii]; Ex. F, p. 208:21-219:5,

17   339:6-17; Parks Doc. Ex. "80", "105" [reports of mold/fungal contamination in Matalas home];

18   Parks Decl. Ex. G, p. 102:8-16, 127:14-128:7 .)   Like other Pulte homeowners, Mr. Segura paid

19   hundreds of thousands of dollars for a brand new home only to discover shortly thereafter it had

20   moisture damage and mold problems.  (Parks Decl. Ex. F, p. 246:3-21.)   Accordingly, Mr. Segura's

21   has the typical claim under RoRA and the UCL for Cocoon insulation defect in wall cavities.

22   **VI.**     **ADEQUACY OF REPRESENTATION**

23        The adequacy factor requires that (1) Plaintiff and his attorney not be in any conflict of

24   interest with other members of the class, and (2) Plaintiff vigorously prosecute the action through

25   qualified counsel. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978) Plaintiff's

26   counsel is not aware of any conflicts that impair counsel's or the proposed representative's ability to

27   vigorously prosecute this action.  Plaintiffs' counsel is qualified to handle construction and complex

28   consumer lawsuits.  (Schimmel Decl., ¶¶ 1-5; Parks Decl. ¶¶ 1-3.)  The proposed class representative

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1   wants to vigorously pursue these remedies on behalf of the class. (Segura Decl., ¶¶ 1-8.)

2          Mr. Segura has appeared for depositions and participated in this case. Although defendants

3   may suggest a lack of knowledge regarding legal issues and procedures, Mr. Segura is an adequate

4   representative to pursue these claims for the class and is sincere in his interest in doing so

5   vigorously. (Segura Decl. ¶3; Parks Decl. Ex. F, p. 352:23-353:2.) *Brink v. First Credit Res.*, 185

6   F.R.D. 567, 571 (D. Ariz. 1999) ("plaintiff need not possess no more than marginal familiarity with

7   the facts of his case, and need not fully understand the legal theories, particularly when he or she is

8   represented by competent counsel.") Mr. Segura has also authorized his dismissal from the *Kearl*

9   action so that he can serve *solely* as the class representative in this action. (Parks Decl. Ex. "S".)

10  **VII.    MANAGEABILITY OF THIS ACTION FOR ADJUDICATION AND TRIAL**

11         Rule 23(b)(3) requires "that a class action [be] superior to other available methods for the fair

12  and efficient adjudication of the controversy." *Fed. R. Civ. P. 23(b)(3)*. The first factor to consider is

13  the interest of each member in "individually controlling the prosecution or defense of separate

14  actions." *Fed. R. Civ. P. 23(b)(3)(A)*. This factor is most relevant where each class member has

15  suffered sizeable damages or has an emotional stake in the litigation. See, e.g., *In re Northern Dist. of*

16  *Cal., Dalkon Shield, Etc.,* 693 F.2d 847, 856 (9th Cir. 1982). Here, the primary component of harm

17  and remedy is the cost to remove and replace Cocoon Insulation and relief from the harm caused by

18  Defendants' defective product design and decisionmaking. Pulte has admitted to the defect. This is

19  the primary remedy being sought by Plaintiff on his own behalf and on behalf of the class.

20         The second factor that the Court looks to is "the extent and nature of any litigation

21  concerning the controversy already commenced by or against members of the class." *Fed. R. Civ. P.*

22  *23(b)(3)(B)*. As to USGF, the only other two matters filed in California to Plaintiffs' knowledge are

23  the *McMillan* lawsuit in San Diego County Superior Court (Parks Decl. Ex. O) and the *Pulte* lawsuit

24  against USGF filed in Riverside County (Parks Decl. Ex. B.) Based on a more limited class

25  definition confined only to Pulte homeowners, the *McMillan* case would fall out of the class

26  definition, unless expanded by this Court. With respect to Pulte, Mr. Segura agrees to his dismissal

27  from the *Kearl* action in San Bernardino County Superior Court. Therefore, there is no overlapping

28  jurisdiction and no chance of inconsistency while this Court exercises jurisdiction.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1      The third factor is "the desirability or undesirability of concentrating the litigation of the

2  claims in the particular forum." Fed. R. Civ. P. 23(b)(3)( C). The Plaintiff and nearly all of the

3  proposed class are located in Southern California. Most of the proposed class resides within the

4  Central District of California (San Bernardino, Riverside, Los Angeles, Orange, Ventura Counties).

5  Many of the witnesses and most of the evidence are found predominantly in Southern California.

6  Pulte has all of its documents in a centralized document depository.

7      The fourth and final factor to be considered is "the difficulties likely to be encountered in

8  the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). Here, manageability is minimal.

9  Unlike so many class actions which seek "nationwide" class certification, Plaintiffs' class action is

10 limited <u>solely</u> to California and arises solely under California law. <u>Compare</u> *In re Rhone-Poulenc Rorer,*

11 *Inc.,* 51 F.3d 1293, 1300-02 (7th Cir.), cert. denied, 133 L. Ed. 2d 122, 116 S. Ct. 184 (1995) (finding

12 that class certification inappropriate in a products liability lawsuit since negligence would have to be

13 determined with reference to the laws of fifty different states).

14     The case will be manageable as a class action because Pulte has already admitted the Cocoon

15 Insulation is defective. The tort claims are all subject to RoRA. There are no "economic loss"

16 limitations to Plaintiff's claims. All of the class members reside in California and the majority of

17 class members reside in counties located within the Central District of California. "It is not a case in

18 which, because class members are scattered around the country and proceeding under the laws of

19 different states, determination of class-wide issues would require the judge to create a composite

20 legal standard that is the positive law of no jurisdiction. . . All the class members are residents of the

21 same state and are proceeding under the same federal and state laws." *Mejdrech v. Met-Coil Systems*

22 *Corp.,* 319 F.3d 910, 912 (7th Cir. 2003) (internal citations omitted).

23 **VIII.    <u>APPOINTMENT OF CLASS COUNSEL</u>**

24     Rule 23 (g) governs the standards and framework for the selection of class counsel for a

25 certified class. "The rule articulates four criteria that the district court must consider in evaluating the

26 adequacy of proposed counsel. The four mandatory considerations are: (1) the work counsel has

27 done in identifying or investigating potential claims in the action; (2) counsel's experience in

28 handling class actions, other complex litigation, and claims of the type asserted in the action; (3)

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

1  counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing

2  the class. *Fed. R. Civ. Proc. 23(g)(l)(C)(i)*.  Information relevant to each of these criteria is set forth in

3  the accompanying declarations of lead counsel, Alan Schimmel and Michael Parks. Each of the

4  lawyers identified above has substantial experience in construction and consumer class actions and is

5  well-qualified to represent the interests of the class.

6  **XI.    CONCLUSION**

7         For the foregoing reasons, Plaintiff respectfully requests this Court to grant his motion for

8  class certification.

9  DATED: May 18, 2009

SCHIMMEL & PARKS
*A Professional Law Corporation*

By: _____

Alan I. Schimmel
Michael W. Parks
Attorneys for PLAINTIFFS

---

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**