1  Edward W. Schmitt, Esq.    (SBN 101330)
   Jeffrey M. McConnell, Esq.  (SBN 126059)
2  John A. Mavros, Esq.       (SBN 257673)
   Koeller, Nebeker, Carlson & Haluck, LLP
3  3 Park Plaza, Suite 1500
   Irvine, CA 92614-8558
4  949-864-3400; fax: 949-864-9000
   *edward.schmitt@knchlaw.com*
5  *jeff.mcconnell@knchlaw.com*
   *john.mavros@knchlaw.com*
6
   Attorneys for Defendant
7  PULTE HOME CORPORATION

8

9            **UNITED STATES DISTRICT COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA**

11

12 DANIELLE KINGSBURY, EMILIO      ) Case No. CV08-151-AHM (JTLx)
   SEGURA, PILIEN SEGURA et. al.,  )
13                                 ) Hon. A. Howard Matz,
            Plaintiff,             ) U.S District Judge
14                                 ) Courtroom 14
                                   )
15 v.                              )
                                   ) **DEFENDANT PULTE HOME**
16 U.S. GREENFIBER, LLC a North    ) **CORPORATION'S OPPOSITION TO**
   Carolina business entity; PULTE ) **PLAINTIFF'S RENEWED MOTION**
17 HOME CORPORATION, a Michigan    ) **FOR CLASS CERTIFICATION;**
   corporation; QUALITY INTERIORS, ) **MEMORANDUM OF POINTS AND**
18 INC., a California Corporation, et al., ) **AUTHORITIES**
                                   )
19          Defendants.            ) Date:      July 6, 2009
                                   ) Time:      10:00 a.m.
20                                 ) Courtroom: No. 14
                                   )            312 North Spring Street
21                                 )            Los Angeles, California
                                   )
22                                 )
                                   )
23 _____ )

24           **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

25      **COMES NOW** Defendant PULTE HOME CORPORATION (hereinafter

26 "PULTE") and submits its Opposition to Plaintiff's renewed Motion for Class

27 Certification.

28 ///

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................... 1

II.   *GREYSTONE* DOES NOT SUPPORT PLAINTIFF'S
      CONTENTION OF A CLASS ACTION UNDER RORA..................... 3

      a.   *Greystone* Is Distinguishable ........................................ 3

      b.   RORA Does Not Support Plaintiff's Class Certification Motion ............ 4

      c.   Plaintiff's Claim is Not Exempt From The RORA Pre-litigation
           Requirements Under *Greystone* Because The First Amended
           Complaint Is Based on Violations of the RORA Standards................. 6

      d.   Plaintiff and Each Individual Homeowner Must Demonstrate a
           Violation of §896 or §897........................................... 8

      e.   RORA Does Not Completely Abrogate the Economic Loss
           Rule or the Causation Requirement.................................... 10

III.  PLAINTIFF'S UNFAIR COMPETITION LAW CLAIM
      UNDER §17200 IS DEFICIENT AND/OR BARRED ...................... 12

      a.   The Class Definition is still Overbroad ............................ 12

      b.   Emilio Segura Has Not Shown Actual Reliance ....................... 12

      c.   UCL Actions are Equitable in Nature ............................... 13

      d.   RORA Precludes Additional Causes of Action ....................... 13

IV.   THE PURPORTED CLASS DOES NOT MEET THE REQUIREMENTS
      UNDER RULE 23 .................................................... 14

      a.   Plaintiff Has Not Satisfied Rule 23(a) ............................ 14

           i.    Commonality is Not Satisfied ................................ 14

           ii.   Typicality is Not Satisfied ................................. 16

                 1. PULTE Has Various Affirmative Defenses
                    That Preclude Typicality ................................. 18

           iii.  Adequacy is Not Satisfied ................................... 19

      b.   Plaintiff Has Not Satisfied Rule 23(b)(3) ......................... 19

           i.    Predominance: Common Issues Do Not Predominate .......... 20

           ii.   Superiority: A Class Action is Not the Superior
                 Method to Adjudicate These Claims ......................... 21

                 1. Emilio Segura's Offer to Opt Out of the
                    Non-Class Action in State Court Does Not

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Make this Action Superior ………………………..……... 21

    2.  Manageability Concerns Make a Class Action Inferior ………………………………………..……… 22

**V.**   **PULTE'S COMPLAINT AGAINST GREENFIBER DOES NOT CONSTITUTE A JUDICIAL ADMISSION** …...………… 23

**VI.**  **CONCLUSION** …………………………………………… 24

# TABLE OF AUTHORITIES

**Federal Cases**

*Amchem Products, Inc. v. Windsor,*
    521 U.S. 591, 117 S.Ct. 2231 (1997)......................................... 14, 20

*American Title Ins. Co. v. Lacelaw,*
    861 F.2d 224 (9th Cir. 1988) .............................................. 23

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975)............................................... 14, 17

*East Tex. Motor Freight System, Inc. v. Rodriguez*
    431 U.S. 395 (1977)....................................................... 16

*General Tel. Co. of Southwest v. Falcon*
    457 U.S. 147 (1982)....................................................... 14

*Haley v. Medtronic*
    169 F.R.D. 643 (1996)..................................................... 17

*In re American Medical Systems, Inc.*
    75 F.3d 1069 (6th Cir. 1996)............................................... 23

*Migliori v. Boeing North America*
    97 F.Supp. 2d 1001 (9th Cir. 2000)......................................... 23

*Zinser v. Accufix Research Inst. Inc.*
    253 F.3d 1180 (9th Cir. 2001).............................................. 21, 22

**State Cases**

*Burr v. Sherwin Williams Co.,*
    42 Cal. 2d 682, 695, 268 P.2d 1041 (1954) ................................ 13

*Greystone v. Midtec,*
    168 Cal.App.4th 1194, 86 Cal.Rptr.3d 196 (2008)...... 1, 3, 5-7, 10, 11, 24, 25

*Korea Supply Co. v. Lockheed Martin Corp.*
    29 Cal.4th 1134 (2003) ................................................... 13

*Shuette v. Beazer Homes,*
    121 Nev. 837, 124 P.3d 530 (2005) ....................................... 22

**Federal Statutes**

*Federal Rule of Civil Procedure 23(a)*........................................ 2, 4, 14, 22, 25

*Federal Rule of Civil Procedure 23(b)*........................................ 2, 25

*Federal Rule of Civil Procedure 23(b)(3)*..................................... 19, 20

**State Statutes**

Cal. Bus. & Prof. Code §1720............................................... 2, 12, 13

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Cal. Civ. Code §895 *et.seq*……………………………………………….………......  1

Cal. Civ. Code §896(a)(3)……………………………………………………………  10

Cal. Civ. Code §896(a)(6)…………………………………………..………....…..…  10

Cal. Civ. Code §896(a)(7)…………………………………………………...……..…  10

Cal. Civ. Code §896(a)(9)…………………………………………………....………  10

Cal. Civ. Code §896(a)(10)……………………………….....…..  7, 9, 10, 11, 15-17, 20

Cal. Civ. Code §896(a)(11)………………………………….……….  9-11, 15-17, 20

Cal. Civ. Code §896(g)(3)(A) ………………………………………….…………..…  10

Cal. Civ. Code §896(g)(3)(c)…………………………………….………...  3, 10, 16

Cal. Civ. Code §896(g)(3)(E)…………………………………….………….…  6, 7

Cal. Civ. Code §897…………………………………………  1, 7, 8, 11, 14 25

Cal. Civ. Code §910(a)……………………………………………….…....  5, 6

Cal. Civ. Code §910(b)……………………………………………………….…  5

Cal. Civ. Code §910-938………………………………………………….......  5

Cal. Civ. Code §917……………………………………………….………….  5, 11

Cal. Civ. Code §931………………………………………………………….…  6, 7

Cal. Civ. Code §942…………………………………………………….…………..  11

137748_1.DOC    PULTE'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Segura's application of California Civil Code §895 *et. seq.*, (hereinafter "RORA") and *Greystone v. Midtec,* 168 Cal.App.4th 1194, 86 Cal.Rptr.3d 196, (2008) as part of a campaign to certify a class action is erroneous. Before any homeowner can proceed with a construction defect case against PULTE, that specific homeowner must identify and provide PULTE with a Notice of Claim that identifies an unmet construction standard under either §896, or if the defect does not fall under §896's defect classifications, under §897, which requires resulting damages as an element of the claim. If it is determined that an unmet construction standard exists through PULTE'S investigation of an individual home, PULTE has the statutory right to perform repairs at that home. The claimant cannot file a lawsuit until the pre-litigation procedures triggered by the Notice of Claim have been satisfied.

Plaintiff's counsel has admitted that this case involves Cellulose Insulation (hereinafter "CI"), "as installed," and that the CI has to violate an unmet construction standard under either §896 or §897. *Greystone* clearly states that when an alleged product defect claim is based on a violation of an unmet construction standard, the sole manufactured product exception to RORA is not applicable and the claim is therefore subject to RORA's pre-litigation procedures. Mr. Segura has not followed the RORA pre-litigation process, which he must do. The San Bernardino Superior Court already stayed the related *Matalas* purported class action to allow PULTE the statutory right to make repairs. (RJN, Exhs. A, B and C).

Because CI has to be re-wetted by a defect in another building component under Plaintiff's theory, Mr. Segura and any other homeowner, must identify the type of water leak within one of the 18 unmet water issue construction standards under §896, with some standards requiring a showing of damage to another building component as an element of the claim, or under §897, which absolutely requires resulting damage as an element of the cause of action. It becomes readily apparent that this case cannot be

certified as a class action as each home may have one or more claimed unmet construction standards that have different proof requirements (damages or no damages), based on different design criteria, exterior claddings, or moisture barriers that must be shown before a finding that the CI is the cause of any mold. (Oberg Dec.¶3(ii)). RORA does not provide any basis to certify class actions and does not contemplate easing the courts' reluctance toward certifying construction defect cases as class actions.

The Court's initial ruling against certifying a California Business and Professions Code §17204 Unfair Competition Law ("UCL") class action remains valid for three reasons: (1) The class definition is overbroad and includes homeowners that the Court noted are not original purchasers, or who are original purchasers, but no longer own PULTE homes and would receive no right to a recovery;  (2) Segura cannot establish the necessary standing of reliance necessary to establish an unlawful advertising claim under the UCL; (3) The UCL cause of action is really a claim for injunctive relief and damages based on the cost to repair CI and is not a claim for restitution; and (4) RORA provides the exclusive remedy when the claim is for violation of RORA functionality standards. Mr. Segura's gamesmanship in suggesting a willingness to dismiss his unmet construction standard claims in the related *Kearl* state court action demonstrates that he has no legitimate water unmet construction standard claims upon which to base a claim in this action, or to represent a class of potential homeowners with unmet construction standards.

Plaintiff's motion for class certification should be denied as this case cannot satisfy the rigorous analysis for class certification under Rule 23(a) and Rule 23(b).  If Mr. Segura is allowed to maintain his lawsuit on an individual basis, PULTE'S Motion to Dismiss should be granted on the basis that Mr. Segura has not complied with RORA's pre-litigation process.

/ / /

/ / /

## II. *GREYSTONE* DOES NOT SUPPORT PLAINTIFF'S CONTENTION OF A CLASS ACTION UNDER RORA

### a. *Greystone* is Distinguishable

*Greystone* was not a class action case and does not provide any rationale for the proposition that RORA allows this claim to proceed as a class action. In that case, the court addressed whether the builder could seek equitable indemnity from a product manufacturer. The builder, Greystone, attempted to recover the costs it incurred to replace defectively manufactured fittings that had not yet failed ($1,494,904) and for the cost to replace fittings that actually had failed ($106,000).

*Greystone* contradicts Plaintiff's contention that RORA allows a class for unmet construction standards. In *Greystone*, there was fatigue to the Midtec plumbing fittings caused by a defect in the manufacturing process. *Greystone* at 1204. Thus, Greystone made the decision to replace all of the fittings because it "was highly probable that there would be additional failures." *Greystone* at 1204.

Plaintiff's assertion that PULTE is "liable to remedy and repair the defect even if mold ends up never developing" is based on the mistaken premise that CI is a manufactured product that will predictably fail in the future. (Plf's Mtn, p.1:16). Unlike products such as plumbing fittings, CI is mixed and installed on-site. CI does not fall under the definition of a "manufactured product," which is defined by RORA as "a product that is completely manufactured offsite." Civil Code §896(g)(3)(c). PULTE does not have the same high probability that CI will fail as Greystone had with respect to the fittings and cannot be compelled to make such repairs.

There is no prevalent manufacturing problem with CI. (Oberg Dec.¶Indeed, CI would have to get re-wetted by a failure of another building component and then CI would have to be the cause of mold growth in over 9,000 homes. (Oberg Dec.¶6). *Greystone* is factually and legally adverse to Plaintiff's contention that his case can be certified as a class action.

///

///

3

### b. RORA Does Not Support Plaintiff's Class Certification Motion

The Court's previous class certification ruling correctly determined that a class action was not a viable option because Rule 23(a) could not be satisfied. Plaintiff's new theory that RORA now provides an automatic basis to meet Rule 23 is erroneous and entirely distorts both the letter and spirit of that statutory remedy.

RORA simply does not support the maintenance of construction defect class actions and cannot be pled as such. (Carpenter Dec.¶5). The Court acknowledged that RORA "provides a non-judicial mechanism for homeowners to secure remediation for the kinds of problems addressed by this action. Of course, individual homeowners may also pursue individual actions if they do not resolve their problems through the non-judicial process." (McConnell Dec, Ex. 8, p. 11). The Court's analysis highlights RORA's intent to provide builders and individual homeowners with a pre-litigation right to repair process before litigation. Allowing Plaintiff to turn RORA into a class action 'sword' would defeat the laws intent of avoiding litigation. (Carpenter Dec ¶7).

RORA is not a "consumer protection" act as Plaintiff argues. On the contrary, RORA was enacted by the California legislature to afford both homeowners and builders the opportunity for prompt and fair resolution of bona fide construction defect claims. (Carpenter Dec. Ex.1, p.13). The legislature created this pre-litigation process for the prompt resolution of construction defect claims through a statutory right to fix or repair individual problems. (Carpenter Dec.¶6). Before RORA was enacted, homeowners and builders often turned to costly litigation as their only recourse. This rarely resolved disputes or fixed homes in a timely manner. RORA was specifically enacted to solve this problem:

> "Homebuilders, specialty contractors and their insurance partners have been hurt by the economic cost of resolving disputes through a regime that has enabled Plaintiff's attorneys to aggregate a large number of small claims … and use the threat of protracted litigation to win huge cash settlements. Moreover, this corrupt system served to create an unnatural distance between homebuilders and their customers – allowing little or no opportunity for repairing problems if and when they arose." (Carpenter Dec. Ex.1 p.5.)

1    The statute does not permit homeowners to file suit without providing a Notice

2  of Claim that **specifically** identifies the unmet standard (§910(a); Carpenter Dec.¶6).

3  This is precisely because each home may not have the same construction defect

4  problems, if any at all. The builder also has the right to investigate those individual

5  claims and make an offer to repair the violation at that specific home. (§917). Plaintiff

6  cannot simply make a generalized statement regarding a violation of a functionality

7  standard, create a massive class action, and then <u>compel</u> the builder to make repairs of

8  homes that have not even exhibited a defect. There can be no RORA repair if a

9  functionality standard has not actually been violated.

10   *Greystone* also affirms that the pre-litigation procedure is not just the superior

11 remedy, but a necessary remedy <u>mandated</u> by RORA when a builder is sued for failure

12 to meet a functionality standard:

13   "Chapter 4 of the Act, beginning with Section 910, established a series of
     pre-litigation procedures that a claimant <u>must pursue before filing an action</u>
14   against 'any party alleged to have contributed to a violation of the
     standard.'" *Greystone v. Midtec*, 168 Cal.App.4[th] 1194, 1211, 86 Cal.Rptr.3d
15   196, 208.

16   *Greystone* noted that 'claimants' are defined by the Act as <u>individual</u>

17 homeowners and that each is required to provide a valid Notice of Claim under

18 §910(a). *Id.* at 1211, fn.7. The statutory scheme simply does not make sense unless

19 the builder is given the opportunity to first evaluate each <u>individual</u> claim, formulate a

20 repair protocol, and then repair the alleged defect, if necessary.   Significantly,

21 PULTE'S prior warranty or "customer service" repairs do not waive PULTE'S

22 statutory pre-litigation rights. Indeed, §910(b) explicitly states, "if a homeowner seeks

23 ['redress through any applicable normal customer service procedure'], **that request**

24 **shall not satisfy the notice requirements of this section.**"   Each individual

25 homeowner cannot seek a judicial remedy until the RORA pre-litigation procedures

26 have been followed. (§§910-938).

27   The application of RORA's pre-litigation procedures has already been

28 adjudicated in PULTE'S favor. In the related *Matalas* state court action, Plaintiff

5

1  argued, like here, that RORA's pre-litigation procedures did not apply based on their

2  assertion that the claim addressed solely the incorporation of a defective product.

3  (RJN, Ex.B). Like the instant matter, *Matalas* is a purported class action that involves

4  the same alleged CI construction defect issue. Special Master Ross Hart ruled that

5  PULTE had the right to repair. (RJN, Exh. C and D, ¶¶3 & 4 p.1:23-26). As a result of

6  the prior *Matalas* ruling, Mr. Segura's counsel is well aware that the pre-litigation

7  requirements apply, but he is simply trying to side step them here.

8      Mr. Segura has not complied with the pre-litigation process. Plaintiff has yet to

9  provide a proper Notice of Claim describing what current water intrusion issues exist

10 at his home in conformity with the requirements of §910(a). (Rusaw Dec.¶4).

11 Plaintiff has not even alleged a violation of an applicable construction standard for

12 which the builder would be required to make a repair. (Carpenter Dec.¶6). There is

13 simply no evidence that a defective mold or water intrusion issue condition exists at

14 his home or any other home. (Oberg Dec.¶5). For these reasons, Segura cannot

15 advance a claim on behalf of a class based on RORA.

16  **c. Plaintiff's Claim Is Not Exempt From The RORA Pre-litigation Requirements Under *Greystone* Because The First Amended Complaint Is Based On Violations of the RORA Standards**

17

18      Plaintiff is wrong that he and any other homeowners need not comply with the

19 mandatory pre-litigation procedures based on the sole manufactured product exception

20 under §931 and §896(g)(3)(E). This action falls squarely within RORA as the claim is

21 about unmet construction standards, not a sole product defect. Plaintiff cannot side

22 step the pre-litigation procedures based on the *Greystone* opinion and the intent of the

23 statute.

24      In *Greystone*, Midtec argued that Greystone's claim was not subject to RORA

25 because the claim was an "action seeking recovery solely for a defect in a

26 manufactured product" under §896(g)(3)(E). The court explicitly held that

27 Greystone's claim did not fall under this exception. It concluded that the sole

28 manufactured product exception only bars actions in which "**the claimant seeks to**

6

1  **recover for a defect in a product that** *does not* **violate one of the standards set**

2  **forth in §896.**" *Greystone* at 1222. The failed plumbing fittings were potential

3  violations of §896(a)(14) and (15) dealing with plumbing systems. Because Greystone

4  sought to recover for a defect that constituted a violation of the functionality standards

5  in §896, the court held that the sole manufactured product exception did not apply. *Id.*

6       Similarly, Mr. Segura's action is subject to the RORA pre-litigation procedures

7  because the complaint alleges violations of the §896 standards.  The complaint is

8  clearly based on a violation of the functionality standards and installation of CI.

9  Plaintiff's First Amended Complaint (hereinafter "FAC") alleges that the homes are

10  "in violation of the construction standards set forth in Civil Code Section 896 and

11  897." (FAC p.2:5-6, p.17:26-27).  Plaintiff's Motion also identifies §896(a)(10), (11)

12  and (g)(15) as the basis for his claim. (Plf's Mtn. p.11:23-28).  Moreover, Plaintiff's

13  counsel made a judicial admission to this Court that the *installation* of the CI is the

14  issue: "The defect is that this product *as installed* does not meet standard of building in

15  CA for insulation product in wall cavities." (McConnell. Dec., Ex.7, p.9:21-25, p.10:1-

16  2, p.11:5-9).  (See *Totten v. Merkle* (9th Cir. 1998) 137 F.3d 1172, 1176, noting that a

17  statement made by one's attorney qualifies as a party admission under Fed.R.Evid.

18  801(d)(2)).  Accordingly, Plaintiff's claim does not "address *solely* the incorporation

19  of a defective component into a residence" for purposes of §896(g)(3)(E) and §931 and

20  thus is not exempt from the pre-litigation procedures.

21       Even if the Plaintiff's claim were limited solely to a defective product (which it

22  is not), the claim would be subject to the pre-litigation repair process because PULTE

23  has been named as a defendant. *Greystone* addresses the Senate Journal letter authored

24  by former senator John Burton that the mandatory pre-litigation procedures couldn't be

25  avoided through the sole manufactured product exception if the builder is sued:

26       "Under [896(g)(3)(E)], if a homeowner brings a claim solely for a defect in a
         manufactured product and the homeowner includes the builder in the claim,
27       **the right to repair provisions apply to the claim against the builder.**"
         (*Greystone* at 1222.)

28

7

PULTE'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

137748_1.DOC

The Construction Building Industry Association ("CBIA") Manual also explains that if the builder is named, the pre-litigation procedures apply.

> "Class actions are almost never certified for construction defect cases due to the difficulty in finding commonality in claims. The only situation in which class have been certified involve claims that solely allege defects in manufactured products incorporated into a home, such a fire sprinklers or furnaces. **Provided that the only defendant named is the manufacturer, RORA does not apply. If a builder is named, RORA's right to repair pre-litigation process applies.**" (Carpenter Dec. Ex.1 p.60)

Plaintiff's alleged defect does not implicate a "manufactured product" and does not fall within the exception to the sole product defect exclusion to RORA. RORA's pre-litigation process applies to Plaintiff's claim as well as every Pulte homeowner who subsequently claims water intrusion into their home.

### d. Plaintiff and <u>Each Individual Homeowner</u> Must Demonstrate a Violation of §896 or §897

Plaintiff's contention that all that is required is a vague reference to a potential violation of the unmet construction standards to trigger liability under RORA is false. RORA does not eliminate the requirement for causation and damages. On the contrary, a hallmark achievement of SB 800 was to give the builder notice of the individual problems on a ***home-by-home*** basis. (Carpenter Dec. ¶5:21-22). Each homeowner must identify ***with specificity*** what functionality standard is being breached at the outset. (Carpenter Dec.¶6)

Plaintiff did not comply with this Court's order to identify an unmet construction standard that applies to his CI claim. The Court correctly asked Plaintiff's counsel at the hearing: "Have you identified the standards that you claim give you the right to pursue this action because they weren't complied with?" (McConnell. Dec. Ex.7, p.11:21-25). Plaintiff's counsel responded with "Well, I believe we cited the Civil Code 896. I believe there is a list of applicable standards in 896." *Id.* at p.12:1:1. Plaintiff has still failed to point to a functionality standard applicable to CI. (Oberg Dec.¶3). Nor has Plaintiff identified a RORA unmet construction standard on behalf of 9,000 homes, as he does not know if these homes

1    have any water intrusion issues, let alone the same type of alleged water issues, which

2    he does not have. Mr. Segura does not even have an expert to demonstrate any water

3    issues in his own home or in any other purported class members home.

4         Plaintiff first identifies functionality standard §896(a)(10), which refers to the

5    failure of exterior moisture barriers to perform their function. To demonstrate a

6    violation of §896(a)(10), the Plaintiff must show that unintended water entered the

7    internal structures of his home so that PULTE can investigate the claim to determine if

8    a repair is necessary. There is no evidence that Mr. Segura has any problems with a

9    failing moisture barrier. (Oberg Dec.¶5). Mr. Segura testified that he never observed

10   any signs of water intrusion or moisture penetrating any stucco cracks or slab cracks in

11   his home. (McConnell Dec., Ex.1, p. 364:12-16; p. 398:6-9). He also testified that no

12   family member ever noticed signs of water leaks around the windows and that he has

13   never observed any moisture on the windowsills inside his home. (*Id.* at p.401:17-19;

14   p.398:11-14). In any event, §896(a)(10) does not apply to CI because CI is not

15   intended to keep moisture from passing "beyond, around, or through a moisture

16   barrier." (Civil Code §896(a)(10); Oberg Dec.¶4)

17        Plaintiff also relies on §896(a)(11), which states:

18          Stucco, exterior siding, and exterior walls shall not allow

19          excessive condensation to enter the structure and **cause damage
     **to another component**. For purposes of this paragraph,
     "systems" include, without limitation, framing, substrate,

20          flashings, trim, wall assemblies, and internal wall cavities, if

21          any."

22        Plaintiff's burden is to show that excessive condensation is entering the

23   structure in violation of §896(a)(11). This functionality standard applies to the

24   function of the "stucco, exterior siding, and exterior walls" of a home. He hasn't

25   proven a violation of this standard, as there is no evidence that excessive condensation

26   has entered his home or that these moisture barriers have failed. (Oberg Dec.¶4).

27   Plaintiff can't establish that condensation is coming through a wall, let alone through a

28   wall and causing resultant damage - which he is required to do under §896(a)(11).

9

1   For the same reason that Segura cannot meet this burden, thousands of other
2   homeowners have the same burden. Each homeowner has to submit a Notice of Claim
3   that demonstrates a violation of the unmet construction standards. Assuming that a
4   violation exists, a class cannot be based on a violation of §896(a)(10) and (a)(11)
5   because each home may manifest water intrusion in different ways. Each construction
6   standard involves the work of multiple trades and each home may not even have the
7   same water intrusion issues. (Carpenter Dec.¶7). Because each home may have a
8   different water intrusion source, the repair for each construction standard will be
9   different and also require different trades to perform repairs. (Carpenter Dec.¶7).

10   Plaintiff's reference to §896(g)(3)(A) and the useful life of CI as a manufactured
11   product is also misplaced. CI is not a "manufactured product" as defined by RORA.
12   §896(g)(3)(c). Additionally, there is no evidence that the useful life of CI as a thermal
13   barrier for heat transfer has been affected. (Oberg Dec.¶5).

14   Plaintiff's inability to identify an applicable §896 construction standard under
15   RORA highlights the fact that Mr. Segura cannot proceed under RORA. Without
16   identifying a specific violation under a RORA functionality standard, any construction
17   defect claim, let alone a class action claim, cannot be maintained.

18   **e. RORA Does Not Completely Abrogate the Economic Loss Rule or the**
19   **Causation Requirement**

20   Plaintiff misreads *Greystone* when he argues that RORA completely abrogates
21   the economic loss rule espoused by *Aas* so as to allow him to automatically establish a
22   class without any showing of damages or causation. Although RORA abrogates the
23   economic loss rule "to the extent that some of the functionality standards do not
24   require resultant damage," nowhere does *Greystone* hold that the economic loss rule is
25   completely abrogated. (Carpenter Dec. Ex.1,p.60). Many of the functionality
26   standards retain the economic loss rule. (Carpenter Dec.¶9). The *Aas* decision remains
27   in effect for those standards that require damage. See *i.e.,* §896(a)(3), §896(a)(6),
28   §896(a)(7), §896(a)(9), §896(a)(11). Plaintiff has even alleged violation of

PULTE'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

1  §896(a)(11), which explicitly requires a showing of damage. When alleged defects are

2  not encompassed by a §896 functionality standard, Plaintiff may fall back on §897,

3  which requires a showing of resulting damages. *Greystone* acknowledges this point:

4  "Construction defects that do not violate the standards remain actionable, subject to the

5  economic loss rule (§897)." *Greystone* at p.1212, fn.9.

6      For any other functionality standard, Plaintiff still has the burden to show that a

7  violation of the standard exists. A builder has the right to investigate the violation and

8  make a repair offer, which cannot be done if a violation is not identified. Civil Code

9  §917. RORA and the pre-litigation process would not make any sense if a plaintiff

10  didn't have to identify the violation. Here, there is no instance where a violation of

11  any §896 functionality standard has occurred. (Oberg Dec.¶3).

12      Plaintiff has failed to point to any functionality standard that encompasses his

13  claim. Sections 896(a)(10) and 896(a)(11) are simply inapplicable to allegations

14  regarding insulation. (Oberg Dec.¶3). Consequently, Plaintiff's only option is to fall

15  back on §897, which explicitly maintains the economic loss rule.

16      Even if Segura could point to an applicable functionality standard, §942 only

17  applies *after* the pre-litigation process is exhausted. This process involves the builder

18  receiving a Notice of Claim, investigating the unmet construction standard, making a

19  repair offer, and initiating repairs, if necessary. If the RORA repair were

20  unsatisfactory, the homeowner might have a continuing violation of a standard. Here,

21  Plaintiff has not identified any applicable unmet construction standard, no

22  investigation has been made by PULTE to formulate a repair offer, and RORA repairs

23  have not been initiated or refused. The pre-litigation process has not even started.

24  Segura cannot show a continuing violation of a functionality standard and cannot

25  claim that §942 eliminates causation and damages.

26      Plaintiff is putting the cart before the horse when he argues that §942 removes

27  any causation or damages requirement for individual homeowners that have never

28  been through the pre-litigation process. Section 942 does not and cannot apply in this

1   circumstance. Any other result would be absurd.

2   **III.   PLAINTIFF'S UNFAIR COMPETITION LAW CLAIM UNDER §17200 IS DEFICIENT AND/OR BARRED**

3       The Court previously recognized that the UCL claim was largely deficient
4   because, as defined, Plaintiff's class was unworkable.  The Plaintiff's FAC is still
5   deficient and cannot certify a UCL class action.

6       **a.  The Class Definition is still Overbroad**

7       The class definition is overbroad and unworkable, as it includes homeowners
8   who currently own PULTE homes, but are not original purchasers, as well as original
9   purchasers of Pulte homes who no longer own the home.   These groups of
10  homeowners would not have a claim for restitution as either the putative class member
11  does not own a PULTE home or purchased the PULTE home from a second or third
12  party without any knowledge or awareness of any alleged statements or representations
13  concerning CI. The Court even noted that it was skeptical whether the original
14  purchasers have an available remedy under the UCL. (McConnell Dec. Ex. 8, p.5, fn.6)
15  The FAC remains overbroad and is not suitable for class certification.

16      **b.  Emilio Segura Has Not Shown Actual Reliance**

17      The putative class representatives cannot establish the necessary standing of
18  reliance necessary to establish an unlawful advertising claim under the UCL.  Even the
19  Court is skeptical that a UCL claim exists when it states: "[I]t is not apparent … that
20  even original purchasers have an available remedy under the UCL." (McConnell Dec.
21  Ex.8, p.5,fn.6).  Mr. Segura did not rely on any marketing or advertising regarding CI.
22  He testified that the primary reason for his move was to make more room for his very
23  large family.   (McConnell Dec. Ex.1, p.238:14-22).   He doesn't remember any
24  individual at PULTE telling him about CI as a feature in his home and therefore he
25  cannot show that he relied on any alleged false statements about CI. *Id.* at p.134:11-
26  20, p.239:8-11, p.379:17-25.  There was no representation that his home would be
27  mold or mildew free. *Id.* at p.241:17-20. No one from the ranks of the purported class

28

1  members have suggested that they relied on any information or statements from
2  PULTE regarding CI to support their UCL claim. This is confirmed by the deposition
3  testimony of numerous potential class members. (McConnell Dec. Ex.4, p.33:5-14;
4  Ex.5, p.60:14-24; Ex.6, p.76:24-25,p.77:1-5;p.127:3-8). Mrs. Matalas testified that she
5  didn't even know what the "cocoon system" was. (McConnell Dec. Ex.3, p.83:19-24,
6  p.84:1-23, p.139:17-22. The Court's original ruling concerning denial of the UCL
7  class should not be disturbed.

### c.  UCL Actions are Equitable In Nature

9  Plaintiff's UCL claim also cannot be maintained because he is claiming
10 damages, which cannot be recovered through a UCL claim. *Korea Supply Co. v.*
11 *Lockheed Martin Corp.* (2003) 29 Cal.4th 1134, 1144. The primary relief under the
12 UCL is an injunction. The purpose of such relief, in the context of the UCL, is to
13 protect California's consumers from ongoing, unfair business practices. Any alleged
14 unfair business practice is no longer occurring. Thus, an injunction would serve no
15 purpose to prevent future harm if only those who have already been injured by the
16 practice were entitled to relief.

### d.  RORA Precludes Additional Causes of Action

18 Plaintiff is seeking recovery under §896's functionality standards, as well as
19 restitution under the UCL by way of a class action. Plaintiff's UCL claim is barred
20 because it is subject to RORA, which provides the exclusive statutory remedy.
21 Pursuant to §943(a), **"no other cause of action for a claim covered by this title or**
22 **for damages recoverable under Section 944 is allowed."** Section 943 thus precludes
23 Plaintiff from maintaining other statutory causes of action such as the UCL.

24 Plaintiff's UCL claim is also problematic because the express and implied
25 warranty claim must be broken down into two more classes. In California, a cause of
26 action for breach of implied warranty requires privity. *Burr v. Sherwin Williams Co.*,
27 42 Cal. 2d 682, 695, 268 P.2d 1041 (1954). If an implied warranty were given to
28 Plaintiff, it would only apply to original purchasers in privity with PULTE.

## IV.    THE PURPORTED CLASS DOES NOT MEET THE REQUIREMENTS UNDER RULE 23

To certify a class, Plaintiffs must set forth prima facie facts satisfying all the requirements of Rule 23(a): (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982). A class action "may be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Id.* at 161. The court must look to the allegations of the complaint and "consider the nature and proof necessary to establish those allegations" to ensure that the material is "sufficient to form a reasonable judgment on each requirement." *Blackie v. Barrack*, 524, F.2d 891, 901 (9th Cir. 1975).

This Court already denied Plaintiffs initial class certification motion. As the Court noted, "The other claims I have little doubt lack the basis for certification ... I don't think Mr. Parks has talked me out of any of the findings I've made as to the UCL issues, the strict liability or the negligence [claims]." (Ex. 7, p. 27:8-11).

This Court should also deny Plaintiffs renewed class certification motion, which is incorrectly based on RORA's functionality standards. Class actions cannot be certified under RORA based on violations of unmet construction standards of §896. (Carpenter Dec.¶7-8). RORA is a pre-litigation procedure that allows builders the right to make repairs and potentially avoid litigation. (Carpenter Dec.¶7). Even though RORA does not allow class actions, PULTE will nevertheless discuss why Plaintiff has not met the Rule 23(a) standards for class certification.

### a.    Plaintiff Has Not Satisfied Rule 23(a)

#### i.    Commonality is Not Satisfied

The class is not sufficiently cohesive based on these functionality standards because the "disparity among class members" is too great. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625, 117 S.Ct. 2231 (1997). Notwithstanding the fact that CI is not even implicated by these standards or that Mr. Segura cannot show any damage, there are no common issues between Plaintiff and the purported class members based

PULTE'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

1   on the myriad of causation and damage issues relating to the alleged defects. Every

2   home is not going to experience a violation of the same §896 functionality standard

3   because individual homes are constructed in numerous different ways. (Oberg

4   Dec.¶3(i)(ii)).  Assuming that a violation even exists, a class action is not appropriate

5   to remedy these problems because a violation will inevitably manifest in a different

6   way for each homeowner.  This is why RORA requires each individual homeowner to

7   identify, with specificity, the unmet construction standard being violated at his or her

8   individual home prior to litigation. (Carpenter Dec.¶6).

9        Plaintiff's renewed motion alleges that CI is defective because it violates

10  §896(a)(10) and §896(a)(11).  These reference the failure of water resistant barriers

11  (i.e. flashings, stucco, building paper, weep screeds, siding, brick etc.) to keep

12  unintended water and/or condensation from entering a structure. (Oberg Dec.¶3).

13  Because insulation is not a water resistant barrier, these standards are not applicable to

14  CI and cannot form the basis for any CI class action. (Oberg Dec.¶3(iii)).

15       Even if these two unmet functionality standards were applicable to CI, they do

16  not create a single class action because the two standards cannot possibly apply to

17  thousands of homes when, as this Court already noted: "the impact of CI's alleged

18  defect on members of the putative class is affected by conditions that vary

19  substantially from home to home." (McConnell Dec. Ex.8,p.6).  All 9,000 homes will

20  not have the same water intrusion issues and thus cannot exhibit a breach of the same

21  unmet construction standard for purposes of commonality. (Oberg Dec.¶3(i)-(iv)).

22       Additionally, Plaintiff has not established any proximate cause between CI,

23  alleged mold, or the failure of a water resistant barrier under §896(a)(10) or

24  §896(a)(11).  Plaintiff doesn't even have an expert to make these determinations.

25  Homes across California have different water resistant barriers and different exterior

26  systems including siding, stucco, or brick. (Oberg Dec.¶3(ii)).   These varying

27  circumstances mean that the cause of water intrusion will be different for each home

28  and precluding a finding of commonality. *Id.*  Depending on the specific home and

1    how it was built, each will fail for different reasons. It's also a function of what the

2    architect wants to do to prevent water from getting into the house. (Oberg Dec.¶3(i)).

3    Thus, any potential water intrusion could be the result of numerous different factors

4    and happen in many different ways. (Oberg Dec.¶3(iv)).

5    With respect to CI, each home will not fail in the same way because CI is not a

6    manufactured product like a fitting, or a car part under §896(g)(3)(c). (Oberg Dec.

7    Ex.1,p.3(ii)). CI is delivered to the construction site as an unfinished product and is

8    "manufactured' on-site. Because CI must be mixed up and installed on site, the

9    varying problems that could arise during the installation process create numerous

10    commonality problems. When installed, CI must be blown into the wall cavity with

11    the proper moisture content and allowed sufficient time to dry before the drywall or

12    other wall coverings are installed. (Oberg Dec. Ex.1,p.3(ii)). Potential defects can be

13    brought about by numerous factors such as weather, installation method, moisture

14    content, drying time, and homeowner maintenance, just to name a few. (Oberg Dec.

15    Ex.1,¶3(iii). Thus, a bald assertion that CI is defective cannot automatically create

16    commonality among all homeowners and form the basis for a construction defect class

17    action. For these reasons, this class certification motion does not satisfy commonality.

18    ii.  Typicality Is Not Satisfied

19    "A class representative must be part of the class and possess the same interest

20    and suffer the same injury as the class members." *East Tex. Motor Freight System, Inc.*

21    *v. Rodriguez,* 431 U.S. 395, 403 (1977). Typicality is not met because Segura does

22    not possess the same interest and injury as the purported class members. He simply

23    has no claims in common with the potentially thousands of other purported class

24    members who have an alleged violation of §896(a)(10) and §896(a)(11).

25    Mr. Segura cannot be an appropriate class representative when the defects he

26    purports to have do not even align with the defects allegedly experienced by the

27    putative class members. Plaintiff's claim that there is a breach of a water resistant

28    barrier functionality standard in his home is incorrect, as Plaintiff does not even have

16

1   an expert to establish a violation exists and his own testimony establishes the opposite

2   conclusion.    Thus, there is no evidence that Mr. Segura's home is currently

3   experiencing a violation of any functionality standard or that mold exists after PULTE

4   made its warranty repairs. (Oberg Dec.¶4). PULTE's expert has testified that, in fact,

5   there is no evidence that the moisture barrier system is allowing water to pass through

6   the walls into the home. (Oberg Dec.¶4). Segura testified that he never observed any

7   water intrusion due to the failure of a water-resistant barrier. (McConnell Dec. Ex.1,

8   p.362:12-16; p.398:6-9). If Segura's claim is that PULTE has violated these RORA

9   functionality standards across the board, then Plaintiff's claims are not typical of the

10  purported class members because he has not shown that he is experiencing any such

11  violation.

12      To meet typicality, the claims must also arise from the same practice or course

13  of conduct that gives rise to the claims of other class members. *Haley v. Medtronic*,

14  169 F.R.D. 643, 653 (1996). Even if Segura could prove he was suffering from mold

15  related problems or water intrusion, he would also have to demonstrate that other

16  homeowners are suffering the exact same violation of §896(a)(10) and §896(a)(11)

17  "sufficient to form a reasonable judgment" that a violation of these same standards

18  exists. *Blackie*, at 901. The fact that each homeowner's moisture barrier systems are

19  different means that any alleged water intrusion defects would not arise for the same

20  reasons. (Oberg Dec. Ex.1,¶3(i)-(iv). A home with stucco and siding will not have the

21  same water intrusion problems as a home with stucco and stone. (Oberg Dec. ¶3(ii)).

22  Each homeowner's alleged claims will arise from a different course of conduct based

23  on the type of materials used, the installation of these materials, and maintenance.

24      The Court correctly noted that more than 90% of the putative class members

25  have not reported any mold problems making Segura's claims atypical of the

26  purported class members.   Testimony of purported class members Kearl, Mamo,

27  Villalobos, and Naff demonstrate that no home has exhibited the same water intrusion,

28  if at all.   In addition, this testimony highlights the diverse issues that arise in

1    construction defect litigation and how they cannot possibly be resolved through this
2    purported class action litigation. (McConnell Dec. Ex.2, p.96:7-22, p.135:19-25; Ex.3,
3    p.183:14-24; Ex.4, p.61:18-25, p.62:1-10, p.67:1-17, p.68:1-22, p.69:7-24, p.70:1-8,
4    p.71:14-25, p.72:4-25, p.74:22-25; Ex.5, p.147:4-11, p.148:9-12, p.150:23-25; Ex.6,
5    p.29:1-24, p.51:9-14.  Some homeowners may not have a breach of any functionality
6    standard at all, let alone the two standards cited by Plaintiff.  This is the precise reason
7    RORA requires an individual Notice of Claim from each homeowner specifying the
8    alleged violation before PULTE exercises its right to repair.  (Carpenter Dec.¶7)

9    ### 1. PULTE Has Various Affirmative Defenses That Preclude Typicality
10

11   Segura also fails to satisfy typicality because his claims will inevitably be
12   subject to different affirmative defenses than the purported class members.  RORA
13   provides a specific set of affirmative defenses to the builder under §945.5.  PULTE has
14   a wide variety of affirmative defenses available to it. (RJN, Ex.G, ¶¶83-90).  Some
15   defenses provided by RORA include the extent that the builder's repair was successful
16   in correcting the particular violation, unforeseen acts of nature, a homeowner's failure
17   to minimize damages, and a homeowner's failure to perform proper maintenance. See
18   Civil Code §945.5(g), (a), (b), and (d). The existence of these specific affirmative
19   defenses will vary from homeowner to homeowner based upon specific situations.

20   PULTE has already repaired hundreds of homes under their customer service
21   and warranty program.  By eliminating any mold-related problems in these homes,
22   different defenses will apply to different homeowners.   Most, if not all, of the
23   purported class members have failed to give any notice to PULTE regarding any
24   violation of the unmet construction standards dealing with water resistant barriers.
25   (Rusaw Dec.¶4).  To the extent that a purported class member failed to give timely
26   notice of a water issue, PULTE would have an affirmative defense to potential mold
27   claims.  If some homeowners failed to allow timely access for inspections and repairs,
28   this gives rise to unique affirmative defenses as to those homeowners, creating

1    insurmountable typicality issues.

2              iii.  Adequacy is Not Satisfied

3         Adequacy requires that the "representative parties will fairly and adequately

4    protect the interests of the class." As with the first class certification motion, Plaintiff

5    fails to satisfy the adequacy requirement because there is significant overlap between

6    the claims in *Kearl* and those in this matter. (McConnell Dec, Ex.8).  Consequently,

7    Segura will not have a strong interest in representing the class adequately.

8         Plaintiff's offer to "dismiss his state law claim [the *Kearl* action] against

9    PULTE and serve solely as the class representative for this class action claim..."

10   makes his 'gamesmanship' very apparent. (Plf's Mtn. p.2:14-15).  The doctrine of

11   judicial estoppel prevents Segura from dismissing on the one hand and prosecuting on

12   the other.   Just like this *Kingsbury* action, *Kearl* dealt with construction issues

13   involving unmet construction standards of §896 and §897.   (RJN, Ex.F).   By

14   dismissing his unmet construction standard claims in *Kearl*, Mr. Segura is essentially

15   saying that he does not have a stucco claim, a roof claim, a window claim, or any other

16   unmet construction standard in his home.   Also, Segura should be estopped from

17   prosecuting the inconsistent position that he has an unmet construction standard in this

18   Court, on the one hand, but does not have an unmet construction standard in state

19   court, where he still alleges he has such claims.

20        Despite playing 'fast and loose' with the judicial system, Mr. Segura remains an

21   *inadequate* representative because Mr. Segura's home has been remediated and does

22   not exhibit any signs of mold. (Oberg Dec.¶4).  Assuming that some purported class

23   members are actually experiencing mold or water intrusion problems, he would not be

24   an adequate representative for such a class of homeowners because he has no incentive

25   for PULTE to make further repairs.   This is an inherent conflict that precludes

26   adequacy from being satisfied.

27   **b.  Plaintiff Has Not Satisfied Rule 23(b)(3)**

28        Rule 23(b)(3) sets forth two elements that must be clearly established under a

1    rigorous standard: (1) predominance and (2) superiority.

2                i.  Predominance: Common Issues Do Not Predominate

3         Plaintiffs must establish under "…the more stringent 23(b)(3) requirement," that

4    questions common to the class predominate over all other questions.  *Amchem*

5    *Products, Inc. v. Windsor*, 521 U.S. 591, 609, 117 S.Ct. 2231 (1997).  Common

6    questions do not predominate here.  This Court previously held that common issues do

7    not predominate because the Court would have to analyze "on an individual basis a

8    myriad of different issues" including, but not limited to, issues of proximate cause and

9    damages. (McConnell. Dec., Ex.8, p. 10).  Plaintiffs have not provided any reason to

10   disturb this Court's previous ruling.

11        Plaintiff's renewed class certification motion alleges that two functionality

12   standards of RORA have been violated and, on that basis, a class action should be

13   certified.  As discussed above, he inaccurately asserts that no proof of damages or

14   causation are required based on RORA and that common issues predominate based on

15   vague allegations of defective insulation and violations of §896(a)(10) or §896(a)(11).

16   (Plf's Mtn. p.1:11-12).

17        The predominance inquiry has not been satisfied, as it would be nearly

18   impossible to identify and resolve each individual homeowner's issues on a class wide

19   basis.  This is one of Plaintiff's many obstacles in his attempt to certify this class.  At

20   the outset, Segura's burden is to specifically point out where a failure of a

21   water/moisture barrier exists, and for purposes of predominance, demonstrate that each

22   purported class members has common questions of law and fact.  Plaintiff has not

23   demonstrated that common issues exist between his home and any other purported

24   class member's home, because no violation has been shown and because construction

25   defect issues inherently involve numerous factors as explained under commonality.

26   For this reason and those outlined under commonality, the proposed class does not

27   satisfy the predominance inquiry.

28   / / /

PULTE'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

ii. Superiority: A Class Action is Not the Superior Method to Adjudicate
These Claims

Prosecuting a construction defect action of nearly 9,000 homes on a representative basis involves too many differentiating factors and issues of causation and damages to efficiently adjudicate their claims. The California legislature has already established the RORA pre-litigation process to deal with complex construction defect claims. Again, RORA is a mandatory pre-litigation process, not simply an "option" for homeowners.

*1. Emilio Segura's Offer to Opt Out of the Non-Class Action in State Court Does Not Make This Action Superior*

Segura's cavalier offer to dismiss his state law claim does not all of a sudden make this class action a superior method of adjudication. On the contrary, the class members he claims to represent still have an appropriate remedy through RORA's pre-litigation process and, once exhausted, through their state court claims. It is questionable as to whose interests are being served by this gesture.

His offer certainly does not reduce or eliminate the other class members' interest in pursuing their construction defects individually. Every class member will have unique claims, different defects, and ultimately will be served best through their own litigation. Each has a strong interest in controlling their own individual claims in light of the $59,700.00 estimated cost to remove and replace CI alleged by Plaintiff. Also, divergent individual circumstances, such as one homeowner having substantial construction defects when compared to another homeowner will likely lead to inadequate remedies for some and unwarranted remedies for others.

The existence of other litigation tends to show that "interested parties have decided that individual actions are an acceptable way to proceed, and even may consider them preferable to a class action." *Zinser v. Accufix Research Institute*, 253 F.3d 1180, 1191 (9th Cir. 2001). Even if Segura dismisses his state court action, it does not eliminate the fact that the *Kearl* action against PULTE still exists, which would presumably be prosecuted by potential class members who stand to gain double

21

PULTE'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR CLASS CERTIFICATION

1    recovery. This demonstrates that these claims are better handled on an individual basis

2    and that the class members have opted out of any potential *Kingsbury* class action.

3    Moreover, the fact that *Kearl* contains allegations for multiple construction defects

4    indicates that a class action is less beneficial to litigants and not the superior method to

5    adjudicate these claims.

6              *2. Manageability Concerns Make a Class Action Inferior*

7        The Court did not need to address any manageability issues in Plaintiff's first

8    class certification motion because Plaintiff had not met any of the Rule 23(a)

9    requirements. Plaintiff's renewed class certification motion has not addressed any of

10   the manageability issues and has not raised any new manageability arguments

11       Manageability is often a determinative factor that requires the court to look at

12   the likely difficulties if the action were to proceed as a class. Granting certification

13   here will decrease judicial economy and unnecessarily increase the burden upon this

14   Court and the parties. Because of the number of individual issues discussed under

15   commonality and typicality, no substantial benefit will accrue to either litigants or the

16   courts by certifying this class. *Zinser*, 253 F.3d at 1189.

17       Courts have noted that single-family residential construction defect cases will

18   rarely, if ever, be appropriate for class treatment. *Shuette v. Beazer Homes*, 121 Nev.

19   837, 124 P.3d 530, 542 (2005). The Court has already held that adjudicating

20   Plaintiff's claim would require the Court to "individually examine the cause of any

21   alleged mold, because even if CI has an inherent defect that causes mold, as Plaintiff

22   allege, there is significant evidence that there are many other potential causes of mold

23   in a residential home." (McConnell. Dec. Ex.8,p.6). This alone makes Plaintiff case

24   unmanageable.

25       In addition, the RORA functionality standards allegedly violated do not even

26   relate to CI; they relate to potential failure of a water resistant barrier to keep

27   unintended water from entering the structure. (Oberg Dec.¶3). And even if these

28   standards did somehow relate to insulation, there isn't a shred of evidence that this

1  unmet construction standard exists. (Oberg Dec.¶4). Indeed, PULTE has not received

2  any valid Notice of Claim relating to water intrusion from Mr. Segura to specifically

3  identify his claim.  Requiring this Court to make determinations regarding individual

4  damages, causation, and even the mere existence of defects makes this class action

5  exceptionally unmanageable.

6      A  class  action  is  ill  suited  to  handle  claim  for  violations  of  RORA's

7  functionality standards, product defects, and UCL claims.  The presence of distinct

8  causation and damages make a class action wholly unmanageable.  Plaintiff has not

9  demonstrated, as is his burden, that the great number of individual issues regarding CI,

10  mold, and water intrusion can be managed in a single class action.  *In re American*

11  *Medical Systems, Inc.* 75 F.3d 1069, 1085 (6th Cir. 1996) (noting that where a number

12  of individual issues existed, "the economies of scale achieved by class treatment are

13  more  than  offset  by  the  individualization  of  numerous  issues  relevant  only  to  a

14  particular plaintiff.")

15  **V.    PULTE'S  COMPLAINT  AGAINST  GREENFIBER  DOES  NOT
16  CONSTITUTE A JUDICIAL ADMISSION, BUT PLAINTIFF HAS
   MADE A JUDICIAL ADMISSION**

17      The argument that PULTE'S complaint constitutes a judicial admission in this

18  lawsuit is easily dismissed, as the 9th Circuit does not consider pleadings in another

19  case  as  a  judicial  admission  in  subsequent  litigation.  *Migliori  v.  Boeing  North*

20  *America,* 97 F. Supp.2d 1001, 1009 (9th Cir. 2000).  "The pleadings from a prior

21  litigation can be used as evidence but are not judicial admissions binding upon the

22  litigants in a different litigation." *Id.* at 1009, fn.9.  Plaintiff's reliance on *American*

23  *Title Ins. Co. v. Lacelaw*, 861 F.2d 224 (9th Cir. 1988) and *Rissetto v. Plumbers &*

24  *Steamfitters Local 343*, 94 F.3d 597 (9th Cir. 1996) does not support Plaintiff's

25  position.

26      *American Title* dealt with admissions made in a trial brief in a bench trial.

27  *Rissetto* concerned a plaintiff who obtained a worker's compensation settlement based

28  on an assertion that she could not work and the plaintiff was subsequently judicially

137748_1.DOC

1   estopped in another suit against the employer that she was unlawfully fired from her

2   job.   Unlike *Rissetto*, the PULTE pleading is not in the same action.   Moreover,

3   Plaintiff has distorted allegations from a Complaint that does not allege that CI is

4   inherently defective.   As the 9th Circuit does not treat pleadings in other actions as an

5   admission, the Court should not exercise it's equitable jurisdiction to deem the PULTE

6   complaint an admission or to determining whether the this action should be certified as

7   a class.

8       The Court however, can exercise the judicial admission doctrine against

9   Plaintiff in denying Plaintiff's class certification motion.   The statement of Plaintiff's

10  counsel during March 30, 2009 class certification hearing, that Plaintiff's claim is not

11  confined to a sole alleged defect in the CI, but rather "the defect is that this product **as**

12  **installed** does not meet the standards of building in California for insulation product in

13  wall cavities," is a judicial admission that Plaintiff's lawsuit falls under the Right to

14  Repair law and the pre-litigation requirements. (McConnell. Dec. Ex.7, p.9:21-

15  25,p.10:1-2, p.11:5-9; See *Totten*, at 1176).   Plaintiff cannot take the inconsistent

16  position that, on one hand, he has a right to certify a class under the Right to Repair

17  law; and, on the other hand, claim that the necessary pre-litigation procedures can be

18  avoided, but continue to argue that the claim is exempt by the sole manufactured

19  product defect exception, while telling the Court that he must establish a defect

20  through the §896 construction standards, which *Greystone* says places the claim <u>within</u>

21  the Right to Repair Law.

22      As judicial estoppel is intended to protect against plaintiff playing fast and loose

23  with the court, the court should exercise the judicial estoppel doctrine against plaintiff

24  in considering plaintiff's class certification motion.

25  **VI.   CONCLUSION**

26      RORA was not designed to allow for class actions based on violations of unmet

27  construction standards. (Carpenter Dec. ¶10-11).   The recent *Greystone v. Midtec* case,

28  instead of supporting Plaintiff's, is completely adverse to Plaintiff's class certification

1   motion. *Greystone* holds that alleged violations of §896 and §897 are subject to

2   RORA's pre-litigation process. Because Plaintiff has judicially admitted that the CI

3   issue is tied to the unmet construction standards and alleged violations of §896,

4   Plaintiff cannot maintain a judicial action against PULTE.

5          Mr. Segura has failed to comply with the pre-litigation process. Each

6   homeowner has to establish a violation of a construction standard and allow the right

7   to repair as intended under RORA before proceeding with a lawsuit. As each

8   homeowner has the evidentiary burden of proving a violation of one or more unmet

9   construction standard, the case quickly disintegrates into thousands of individual home

10  cases involving how water entered the home, how the unmet construction standard

11  applies, whether damage to another component is required, as well as whether CI is the

12  cause of any mold. The traditional class action analysis does not change because of

13  RORA and this case still does not and cannot satisfy the rigorous analysis of the Rule

14  23(a) and Rule 23(b) requirements.

15         Plaintiff's proposed UCL class remains deficient and has not overcome the

16  Court's original objections. The Court should now end Plaintiff's misguided

17  campaign and deny Plaintiff's class certification motion. If this single homeowner

18  case remains, the Court should also grant PULTE'S related Motion to Dismiss for Mr.

19  Segura's failure to comply with RORA's pre-litigation process.

20

21  DATED: May 29, 2009                    Respectfully submitted,

22                                         Koeller, Nebeker, Carlson & Haluck, LLP

23

24                                         _____
                                           Edward W. Schmitt, Esq.
25                                         Jeffrey M. McConnell, Esq.
                                           John A. Mavros, Esq.
26                                         Attorneys for Defendant
                                           PULTE HOME CORPORATION
27

28