**STUTZ ARTIANO SHINOFF & HOLTZ**
*A Professional Corporation*
Bret W. Eubank, Esq. (State Bar No. 110532)
David R. Plancarte (State Bar No. 228898)
41593 Winchester Road, Suite 118
Temecula, California 92590
Tel: (951) 296-9730
Fax: (951) 296-9740
beubank@stutzartiano.com
dplancarte@stutzartiano.com

Attorneys for Defendant
QUALITY INTERIORS, INC.

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE KINGSBURY, EMILIO SEGURA, PILIEN SEGURA, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. GREENFIBER, LLC, a North Carolina business entity; PULTE HOME CORPORATION, a Michigan corporation; QUALITY INTERIORS, INC., a California Corporation; and DOES 1 through 1000, inclusive,<br><br>Defendants. | Case No. 2:08-CV-00151-AHM-JTL<br><br>**QUALITY INTERIORS, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br><br>Judge:   A. Howard Matz<br>Date:    July 6, 2009<br>Time:   10:00 a.m |

Defendant QUALITY INTERIORS, INC. ("Quality") submits the following Memorandum of Points and Authorities in Opposition to Plaintiff's Motion for Class Certification on the First Amended Class Action Complaint ("FAC"):

/ / /

/ / /

/ / /

/ / /

/ / /

# TABLE OF CONTENTS

Page(s)

I. PLAINTIFF MISCONSTRUES THE RIGHT TO REPAIR ACT .......... 1

II. PLAINTIFF'S RORA CLAIM IS ONLY ACTIONABLE IF CAUSATION AND DAMAGES ARE SHOWN ................................. 2

    A. RORA Section 897 Is Applicable ............................. 2

    B. RORA Section 896 Is Not Applicable ......................... 3

III. CLASS ACTIONS ARE ELIMINATED UNDER RORA - EACH PLAINTIFF MUST ABIDE BY RORA'S PRE-LITIGATION REQUIREMENTS ................................................. 10

IV. PLAINTIFF'S UCL CLAIM BASED ON A RORA VIOLATION IS NOT ACTIONABLE ........................................... 13

# TABLE OF AUTHORITIES

**California Cases**                                                                                             Page(s)

*Greystone Homes, Inc. V. Midtec, Inc.*
    (2008) 168 Cal.App.4th 1194 .................... 1, 6-8, 12, 13

**California Statutes**

California Business & Professions Code Section 17200 .................. 13
California Civil Code Section 895 ................................. 2, 4
California Civil Code Section 896 ............................... 2-7, 9, 12
California Civil Code Section 896 ................................ 12, 13
California Civil Code Section 897 ................................ 2, 3, 8
California Civil Code Section 916 .................................... 11
California Civil Code Section 926 .................................... 11
California Civil Code Section 931 ................................. 11, 12
California Civil Code Section 932 .................................... 11
California Civil Code Section 936 ..................................... 8
California Civil Code Section 942 ................................... 6-8
California Civil Code Section 943 .................................... 13
California Civil Code Section 945 ..................................... 8
California Civil Code Sections 895-945 ................................ 1
California Civil Code Sections 910-938 ............................... 10

**Other**

Merriam-Webster's Dictionary ......................................... 3

## I.

## PLAINTIFF MISCONSTRUES THE RIGHT TO REPAIR ACT

Plaintiff argues California's Right to Repair Act (California Civil Code Sections 895-945.5) ("RORA") "has eliminated all of the traditional notions of causation and resulting property damage..." in the area of homeowner construction defect law (Motion, p.7, L:2-8). Plaintiff relies on the holding in *Greystone Homes, Inc. V. Midtec, Inc.* (2008) 168 Cal.App.4th 1194 in further support of this argument. However, Plaintiff's argument is far from accurate and exaggerates the effect of *Greystone*. As shown below, **Plaintiff's RORA claim requires proof of the elements of causation and damages**. Because of this, we revert back to the original reasons for defeating class certification that hold true in this instance as well.

Plaintiff's Motion is also inaccurate in arguing that his RORA claim is capable of serving as the basis of a class action and that Plaintiff and all class members are exempt from RORA's pre-litigation requirements. As will be shown, RORA's express language actually eliminates the possibility of a class action based on RORA violations. Further, Plaintiff Emilio Segura and all class members must each abide by RORA's pre-litigation procedure as there is no applicable exemption or waiver.

Plaintiff also contends that his Unfair Competition Law claim is actionable based on the RORA violations. This simply is untrue, as it is contrary to the express language of RORA.

As there is no new basis under the FAC from which to grant class certification, Plaintiff's motion should be denied once again[1].

/ / /
/ / /
/ / /

---

[1] This Opposition focuses on the new RORA claim. Quality Interior, Inc.'s prior Opposition and supporting Declaration with exhibits thereto to the original Motion for Class Certification are incorporated by reference herein to the extent necessary.

## II.

## PLAINTIFF'S RORA CLAIM IS ONLY ACTIONABLE IF CAUSATION AND DAMAGES ARE SHOWN

Plaintiff's RORA claim (1st cause of action in the FAC) states that "construction standards set forth in Civil Code Section 896 and 897" are in violation in Plaintiff's and class members' homes. FAC, p.17, L:17-28. However, Plaintiff's FAC fails to specifically identify the RORA standard allegedly in violation. Instead, Plaintiff's FAC alleges the general section 896[2] - without actually identifying any of the standards listed within 896 - and alleges section 897, which is a "catch-all" standard. Plaintiff's Motion similarly falls short, as it identifies several standards within section 896 but does not specify which, if any, Plaintiff and the class are relying upon, and does not demonstrate how either are applicable. These shortcomings are indicative of Plaintiff's inability to base its RORA claim on any particular standard within section 896 of RORA. The truth is only the "catch-all" section 897 is applicable to this matter. Unfortunately for Plaintiff, a section 897 violation places us back at square one with respect to the class certification issues, as **both causation and damages are required elements of a section 897 violation.**

A.   **RORA Section 897 Is Applicable**

Section 897 is the only RORA standard that is applicable to this matter. Section 897 provides in relevant part:

> "To the extent that a *function* or *component* of a *structure* is not addressed by these standards [those enumerated in Section 896], it shall be actionable **if it causes damage** [emphasis added]." Section 897.

RORA defines the term "structure" as "any residential dwelling, other building, or improvement located upon a lot or within a common area." Section 895. RORA does not specifically define the terms "function" or "component." However, "function" is commonly defined as "the action for which a person or thing is specially fitted or used

---

[2] All references to "section" refer to California Civil Code unless otherwise specified.

1  or for which a thing exists" and "<u>component</u>" is defined as "a constituent part."
2  (Merriam-Webster's Dictionary). This action deals with Cocoon insulation. "<u>Insulation</u>"
3  is defined as "material used in insulating" and "insulating" is defined as "to separate
4  from conducting bodies by means of nonconductors so as to **prevent transfer of**
5  **electricity, heat, or sound.**" (Merriam-Webster's Dictionary). Thus, in this action, the
6  "component" at issue is insulation. Nowhere in section 896, or any other part of RORA,
7  is "insulation" as a component addressed. Indeed, the term "insulation" never shows up
8  in RORA. Further, the "function" at issue is, essentially, the prevention of transfer of
9  electricity, heat, or sound. Nowhere in section 896 is the function of insulation
10 addressed. Indeed, section 896 is broken up into various issues, namely "water issues,"
11 "structural issues," "soil issues," "fire protection issues," "plumbing and sewer issues"
12 and "electrical system" issues, and than "other" issues. The only possible standard
13 *potentially* addressing the function of insulation is one of the "other" issues found in
14 section 896(g)(4) and (5), relating to heating and air-conditioning respectively, but
15 neither are alleged by Plaintiff. The fact is RORA does not provide specific standards
16 for all components or functions of residential structures. That is the basis for enacting
17 the catch-all provision section 897. Some of these omitted functions and/or components
18 include drywall, flooring, and insulation - neither of these terms are found in section 896.
19 As these are not addressed in section 896, they land in 897. Thus, from the plain
20 meaning section 897 it is clear that section 896 does not apply to the subject insulation
21 and that *causation and resultant damage are necessary elements* of a violation under
22 section 897 which does apply. We are thus back to the same causation and damages
23 issues that formed a basis of this Court's denial of class certification on March 30, 2009,
24 which should similarly hold true here.

25 **B.    RORA Section 896 Is Not Applicable**

26      Plaintiff's Motion fails to demonstrate that any standard under section 896 is
27 applicable to the subject insulation. Without this showing, for class certification
28 purposes, the application of section 897 - with accompanying causation and damages

1  issues - must be considered[3] and should be the basis for denying Plaintiff's Motion.
2  Knowing he cannot demonstrate how any subdivision of section 896 could be applicable,
3  Plaintiff instead cites various portions of section 896 to give the allusion of applicability
4  when there in fact is none.

Plaintiff's Motion first cites section 896(a)(10), which provides:

> "*Stucco, exterior siding, exterior walls*, including, without limitation, exterior framing, and other exterior wall finishes and fixtures and the systems of those components and fixtures, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall be installed in such a way so as not to allow *unintended water* to **pass into the structure** or to **pass beyond, around, or through the designed or actual moisture barriers** of the system, including any internal barriers located within the system itself. For purposes of this paragraph, "systems" include, without limitation, framing, substrate, flashings, trim, wall assemblies, and internal wall cavities, if any [emphasis added]." Section 896(a)(10).

Plaintiff's Motion cites this provision but fails to demonstrate how the subject Cocoon insulation is applicable. It simply is not. This section is found within the "water issues" section of section 896 of RORA, and from the opening language of such provision i.e. "Stucco, exterior siding, exterior walls...", it is clear that this provision is intended to apply to the systems that make up the various exterior cladding of homes (stucco, wood siding, brick, cmu, etc.). Notably, this language was left out of Plaintiff's Motion. Exterior cladding generally includes some form of water intrusion prevention system (flashing, building paper, etc.), and hence the language in this section that these systems shall be installed so as not to allow "unintended water" to "pass into the structure" or "to pass beyond, around, or through the designed or actual moisture barriers of the system" reinforces the application of this section to exterior cladding systems. It is important to note that RORA defines "<u>unintended water</u>" as "water that passes beyond, around, or through a component or the material **that is designed to prevent that passage [emphasis added]**." Section 895(d). This further reinforces the intent and application of this statute, i.e. water intrusion through a component that is supposed to prevent the

---

[3] Especially since Plaintiff alleges violations of <u>both</u> section 896 and 897.

passage of water or moisture, as designed or de facto. Insulation is intended to deal with the transfer of *electricity, heat and sound*, not the passage of *water* into structures. It is not a moisture or water barrier but rather a heat and sound barrier. Indeed, since insulation is already in the interior of a structure, it cannot prevent the passage of water into the structure (by that point it would be too late!). Of course, Plaintiff's motion fails to attempt this analysis because Plaintiff is keenly aware that this section is simply not applicable to the subject insulation. On the contrary, Plaintiff's Motion feigns reliance on RORA then conjures up its own notion of how the subject insulation is defective, neither of which are standards under RORA. Plaintiff apparently argues that the Cocoon insulation is defective because (1) it allows excessive moisture into wall cavities and (2) it takes longer to dry than other insulation in the event that water enters into a structure after installation. First, as with concrete, stucco, and other components of structures, Cocoon insulation is *intended* to be installed with the inclusion of water/moisture. The moisture with which Cocoon insulation is installed is entirely unrelated to the "unintended water" that is the subject of section 896(a)(10). Second, the ability of insulation - or any other component, such as drywall - to mitigate damages after an event of water intrusion from whatever source is not the issue at hand in section 896(a)(10) either. Section 896(a) (10) simply does not apply to the subject insulation.

The next standard in section 896 that Plaintiff's Motion cites is also inapplicable to the subject insulation. Said section 896(a)(11) provides in relevant part:

> "*Stucco, exterior siding, and exterior walls* shall not allow excessive condensation **to enter the structure** **and** **cause** **damage** to another component [emphasis added]." Section 896(a)(11).

As with the preceding standard cited in Plaintiff's Motion, the beginning language of this standard showing it is intended to apply to exterior cladding was conveniently omitted in Plaintiff's Motion. Also, as with the preceding standard, the subject insulation is in the interior and thus cannot be a component involved in whether condensation enters a structure. Plaintiff may argue that the moisture used in the installation process of the

Cocoon insulation is the problematic entrance of condensation into the structure. However, this would be contrary to the apparent intent of the standard given its beginning and entire language. More importantly, assuming Plaintiff's argument were given credence, **this standard requires a showing of causation and damage to another component**. This places us back to square one with the issues of causation and resultant damage that defeated class certification on the non-statutory claims. Again, Plaintiff conveniently avoids this in his moving papers. Instead, Plaintiff cites *Greystone* for the broad proposition that causation and damages are no longer necessary elements of claims in homeowner construction defect cases. This is simply not true. When the *Greystone* court describes RORA repealing the economic loss rule it does so by reference to section 942 of RORA, which provides in relevant part:

> "In order to make a claim for violation of the standards set forth in Chapter 2 (commencing with Section 896), a *homeowner need only demonstrate, in accordance with the applicable evidentiary standard, that the home does not meet the applicable standard*, subject to the *affirmative defenses* set forth in Section 945.5. No further showing of causation or damages is required *to meet the burden of proof* regarding a violation of a standard set forth in Chapter 2...[emphasis added]." *Greystone* at 1212; Section 942.

It is important to note that the homeowner still needs to show that the applicable standard has not been met. In *Greystone* the court was dealing with only three (3) standards within RORA, related to plumbing systems, and thus its holding is limited to those standards. Notably, **the RORA standards at issue in *Greystone* do not require a showing of causation or damages.** *Greystone* at 1220; see also Section 896(a)(14), (15) and (e). Again, a factor conveniently omitted from Plaintiff's Motion. Such standards are:

> "The lines and components of the plumbing system, sewer system, and utility systems shall not leak." Section 896(a)(14);
>
> "Plumbing lines, sewer lines, and utility lines shall not corrode so as to impede the useful life of the systems." Section 896(a)(15); and
>
> "Plumbing and sewer systems shall be installed to operate properly and shall not materially impair the use of the structure by its inhabitants." Section 896(e).

Now, while these three standards do not require a showing of causation or damages, **many of RORA standards do require a showing of causation and damages.** Thus, under section 942, a showing of causation and damages is still required for many RORA claims. For instance, in addition to section 896(a)(11) that was cited by Plaintiff, many other standards within subdivision (a) relating to "water issues" require such elements, as shown below:

> "Windows, patio doors, deck doors, and their systems shall not allow excessive condensation to enter the structure and **cause damage** to another component...[emphasis added]." Section 896(a)(3);

> "Decks, deck systems, balconies, balcony systems, exterior stairs and stair systems shall not allow unintended water to pass within the systems themselves and **cause damage** to the systems...[emphasis added]." Section 896(a)(6);

> "Foundation systems and slabs shall not allow water or vapor to enter into the structure so as to **cause damage** to another building component ." Section 896(a)(7);

> "Hardscape...irrigation systems, landscaping systems, and drainage systems,...shall not be installed in such a way as to cause water or soil erosion to enter into or come in contact with the structure so as to **cause damage** to another building component [emphasis added]." Section 896(a)(9);

> "Retaining and site walls...shall not allow unintended water to pass beyond, around, or through its designed or actual moisture barriers...so as to **cause damage**...[emphasis added]." Section 896(a)(12); and

> "The waterproofing system behind or under ceramic tile and tile countertops shall not allow water into the interior of walls, flooring systems, or other components so as to **cause damage** [emphasis added]." Section 896(a)(18).

Thus, seven of the eighteen sub-subdivisions of section 896(a) have, as elements of the standard, causation and damage. Thus, the particular RORA standard at issue is important because some RORA standards require showings of causation and resultant damage, while others do not. Causation and resultant damage may have not been elements under the three particular standards at issue in *Greystone*, but that is not always the case. And thus Plaintiff's reliance on *Greystone* is misplaced. Thus, here, though Quality contends section 896(a)(11) is not applicable to the subject insulation, even if it were as Plaintiff contends, the elements of causation and resultant damage would be

required elements of proof which, as previously noted by the Court, weigh against class certification.

Neither RORA nor *Greystone* completely abrogate the elements of causation and damage as Plaintiff suggests. Indeed, what section 942 provides is a lesser evidentiary standard. For standards having elements of causation and damage a homeowner need only show the standard was violated in accordance with "the applicable evidentiary standard..." and "no *further* showing of causation or damages is required to meet the burden of proof...." Section 942. For standards lacking the elements of causation and damage, a homeowner need only show the standard was violated in accordance with "the applicable evidentiary standard....", and issues of causation and damage are never addressed, as in the *Greystone* case. Indeed, if section 942 did not contemplate a showing of causation or damages at all, the term "further" would not have been included in this section as it was.

Moreover, section 942 provides that a homeowner's showing of a violation of a RORA standard is subject to **affirmative defenses** set forth in Section 945.5. Section 945.5 excuses defendants from liability if they can demonstrate that the violations are "**caused**" by various factors, such as *weather conditions, a homeowner or his/her contractors' failure to follow commonly accepted maintenance obligations or manufacturer/builder recommendations, alterations by a homeowner or his/her agent, ordinary wear and tear, neglect*, etc. (Section 945.5). Furthermore, defendants who are **subcontractors or material suppliers are liable under RORA only "to the extent that"** they "**caused**, in whole or in part, **a violation** of a particular standard **as the result of a <u>negligent act or omission</u> or a <u>breach of contract</u>**." Section 896 and 936; See also *Greystone* at 1216. Thus, regardless of whether a particular RORA standard contains elements of causation and damage, issues of causation and resultant damage will be part and parcel of any determination of liability for a standard's violation, particularly with respect to subcontractor and material supplier defendants, where Quality and defendant U.S. Greenfiber, LLC are likely to fall under.

Plaintiff's Motion also cites section 896(g)(3) but this section is similarly inapplicable. This section applies to "manufactured products" and requires that they be installed so as not to interfere with their useful life, and if no useful life is represented by the manufacturer, than they shall be installed so as to not interfere with the product's utility. Section 896(g)(3)(A) and (B). However, Plaintiff once again fails to demonstrate how this section is applicable to the subject insulation. It is quite telling that Plaintiff omits the definition of "manufactured product" under RORA. RORA defines a "manufactured product" to be "a product that is **completely manufactured offsite.**" Section 896(g)(3)(C). Examples of manufactured products listed under RORA include windows, doors, roofs, plumbing products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops, cabinets, paint, and appliances.... Section 896(g)(3)(A). Notably, construction components such as stucco and concrete which incorporate the use of water during on site installation are not one of the examples of "manufactured products" under RORA. As with stucco and concrete, the subject Cocoon insulation incorporates the use of moisture during the **on site** installation, changing its form from its as delivered state to its intended moist state (incorporating varying levels of moisture depending on installation conditions) as installed, and thus is not a product completely manufactured offsite, and thus section 896(g)(3) is inapplicable.

Plaintiff's Motion also cites section 896(g)(15) but this section is also inapplicable. This section provides:

> "Structures shall be constructed in such a manner so as not to impair the occupants' safety because they contain public health hazards as *determined by a duly authorized public health official, health agency, or governmental entity having jurisdiction* [emphasis added]." Section 896(g)(15).

Rather than showing a public health hazard uniformly applicable to all potential class members, *as determined by a duly authorized public health official, health agency, or governmental entity*, Plaintiff merely points out that Pulte, as do all builders, is concerned with potential mold growth. But mold is a concern for all builders in all aspects of construction, and there are multiple types and degrees of mold. Regardless,

Plaintiff fails to show how mold and more importantly, the subject insulation, is, can, or will be duly determined to be a public health hazard under RORA. Frankly, this standard would be stretched beyond reason if Plaintiff's apparent interpretation was adopted, as any structure contains mold or has the ability to harbor mold. The emphasis must be on the construction component itself, and whether it is a public health hazard under RORA, not whether a structure or component has the ability to harbor mold. Plaintiff fails to provide any evidence that the subject insulation is a public health hazard under RORA i.e., a public health hazard *as determined by a duly authorized public health official, health agency, or governmental entity*, let alone that such hazard would be uniformly applicable to all class members.

### III.

### CLASS ACTIONS ARE ELIMINATED UNDER RORA - EACH PLAINTIFF MUST ABIDE BY RORA'S PRE-LITIGATION REQUIREMENTS

Plaintiff is incorrect in asserting that his RORA claim is capable of serving as the basis of a class action, and that such a class action would exempt him and all class members from RORA's pre-litigation requirements. Indeed, RORA eliminates class actions based on violations of its standards. Consistent with this, only product defect claims dealing solely with traditional tort theories - not involving any standard within RORA - are exempt from the pre-litigation requirements of RORA. Plaintiff miscontrues the language of RORA in his favor, as not all claims dealing with products are exempt from RORA. It is only those that do not rely upon any RORA standard that are exempt. Since Plaintiff's claim herein is specifically based on RORA, it too is subject to the pre-litigation requirements of RORA.

RORA requires homeowners to allow builders the right to repair a home before homeowners can file an action for construction defects. Sections 910-938. The goal of the statute is to minimize litigation and allow homeowners and builders the opportunity to address and repair alleged unmet violations without proceeding to litigation. Before filing a lawsuit a plaintiff must satisfy a series of pre-litigation nonadversarial

procedures. Id. At several points during the pre-litigation process the builder may waive its right to repair. Id. Absent such a waiver, however, **a claimant may not proceed with filing an action for violation of a RORA standard until the "conclusion of the repair."** Section 926. The requirement of adhering to the pre-litigation procedures is "to be **strictly construed**." Even if a claim combines causes of action or damages not covered by RORA (i.e. personal injury, *class actions*, other statutory remedies, fraud, etc.), as Plaintiff does in this matter, the claimed unmet RORA standards must nevertheless be administered according to the pre-litigation requirements. Section 931. More importantly, RORA provides that:

> "Subsequently discovered claims of unmet standards **shall be administered separately** under this chapter, unless otherwise agreed to by the parties... [emphasis added]. Section 932.

Thus, each homeowner must abide by the pre-litigation procedure absent waiver, and all claims (with the exception of those described in section 932 dealing with claims by the same claimant for the same home for the same standard) must be administered separately thereby eliminating any class action based on a RORA standard violation.

Plaintiff argues that Pulte has waived the RORA pre-litigation requirement when Pulte filed lawsuits involving the Cocoon insulation. Quality believes Pulte will address this argument in its papers, but it should be noted that the RORA pre-litigation requirements are to be strictly construed, and there is no evidence presented that Plaintiff class representative Emilio Segura has complied with such requirements, or that Pulte - or any other defendant - has waived the pre-litigation requirements in any manner in which waiver is possible as described under RORA. Plaintiff's argument lacks merit, as the Pulte lawsuit merely reflects that Pulte is seeking indemnity - from multiple defendants - for particular damages (kitchen and bath assemblies) at particular homes, and no RORA violation is asserted. Nevertheless, under RORA, a builder is entitled to seek indemnity from material suppliers, subcontractors, etc., for damages arising from violations under RORA. Section 916(e). Thus, what is essentially a pursuit for indemnity as authorized under RORA could not possibly amount to a waiver under

RORA as well. Moreover, other defendants such as subcontractors and material suppliers are similarly entitled to notice from builders under RORA, and no such evidence of such notice is provided in Plaintiff's Motion with respect to Quality and U.S. Greenfiber, LLC. Id.

Plaintiff also argues that the subject claims are exempt from the RORA pre-litigation requirements because the claim is a class action addressing solely the incorporation of a defective component. Plaintiff has simply misunderstood the language of RORA. Plaintiff cites section 931 of RORA in support of his argument, which provides that "as to any class action claims that address *solely* the incorporation of a defective component into a residence, the named and unnamed class members need not comply with this chapter [emphasis added]." Section 931. If in fact Plaintiff's class action did not rely upon RORA than this section would matter. But when Plaintiff amended the complaint to state a claim under RORA, i.e. that the insulation violates a standard under RORA, the class action was no longer "solely" based on the incorporation of a defective component. As the court in *Greystone* explained, "A claim...that a defect in a manufactured product constitutes a *violation of the standards established in section 896* is not an "action seeking recovery *solely* for a defect in a manufactured product." [Section 896(g)(3)(E)]. *Greystone* at 1221-1222. In this instance the *Greystone* court was interpreting section 896(g)(3)(E)[4] and concluded that this subdivision "is intended to bar actions in which the claimant seeks to recover for a defect in a product that *does not* violate one of the standards set forth in section 896." Id. The language of section 931 is essentially the same as that in 896(g)(3)(E), but expounds somewhat on section 896(g)(3)(E). Whereas section 896(g)(3)(E) provides that a claim dealing "solely" with a defective component (i.e. no violation of a RORA standard is claimed) is exempt from RORA, section 931 provides that a *class action* claim similarly based on "solely" a defective component is also exempt from RORA. Plaintiff's interpretation of section 931

---

[4] Section 896(g)(3)(E) states: "This title does not apply in any action seeking recovery solely for a defect in a manufactured product located within or adjacent to a structure."

is illogical. Under that interpretation, a class action claim dealing with a defective component involving an alleged RORA violation is exempt from RORA, but any individual's claim within such class - per the *Greystone* analysis of section 896(g)(3)(E) - would be subject to RORA. Thus, for the foregoing reasons, the class action is not available under a RORA claim and each homeowner claim must satisfy RORA's pre-litigation requirements.

## IV.

## PLAINTIFF'S UCL CLAIM BASED ON A RORA VIOLATION IS NOT ACTIONABLE

Plaintiff apparently argues that RORA can somehow serve the basis of a UCL (Cal. Bus. & Prof. Code Section 17200 et seq.) claim for Plaintiff and the class. Such an argument is defeated, however, by the express language of RORA. Section 943 of RORA states:

> "Except as provided in this title, **no other cause of action for a claim covered by this title** or for damages recoverable under Section 944 **is allowed. In addition to the rights under this title, this title does not apply to any action by a claimant to enforce a** contract or express contractual provision, or any action for fraud, personal injury, or **violation of a statute**...[emphasis added]." Section 943.

Since "no other cause of action for a claim covered by this title...is allowed," it follows that Plaintiff cannot bring a cause of action for violation of the UCL based on a RORA violation claim. Further, because "this title does not apply to any action by a claimant to enforce...a violation of a statute," it follows that RORA cannot be applied in any action to enforce a violation of the UCL. Thus, Plaintiff cannot assert a UCL claim based on any alleged RORA violations.

DATED: June 1, 2009            STUTZ ARTIANO SHINOFF & HOLTZ
                               A Professional Corporation

                               By: _____
                                   Bret W. Eubank
                                   David R. Plancarte
                               Attorneys for Defendant QUALITY INTERIORS, INC.