1   Alan I. Schimmel, Esq. SBN 101328
    *aischimmel@spattorneys.com*
2   Michael W. Parks, Esq. SBN 154531
    *mwparks@spattorneys.com*
3   SCHIMMEL & PARKS
    *A Professional Law Corporation*
4   11601 Wilshire Blvd., Suite 2100
    Los Angeles, California 90025
5   Telephone: (310) 479-9797
    Facsimile: (310) 479-4407
6
    Attorneys for PLAINTIFFS AND
7   PROPOSED CLASS

8

9
                    UNITED STATES DISTRICT COURT
10
                CENTRAL DISTRICT OF CALIFORNIA
11

12
    DANIELLE KINGSBURY, EMILIO      ) CASE NO. CV08-151-AHM (JTLx)
13  SEGURA, PILIEN SEGURA,          )
    individually and on behalf of all others )
14  similarly situated,             ) **PLAINTIFF'S MEMORANDUM OF**
                                     ) **POINTS AND AUTHORITIES IN**
15              Plaintiffs,          ) **SUPPORT OF MOTION FOR CLASS**
                                     ) **CERTIFICATION**
16      v.                          )
                                     )
17  U.S. GREENFIBER, LLC, a North   ) Date:        March 1, 2010
    Carolina business entity; PULTE HOME ) Time:        10:00 a.m.
18  CORPORATION, a Michigan         ) Courtroom    No. 14
    corporation; QUALITY INTERIORS, )              312 North Spring Street
19  INC., a California Corporation; and )          Los Angeles, California
    DOES 1 through 1000, inclusive, )
20                                   )
                Defendants.          )
21  _____ ) Action Filed: 11/15/07

22

23

24

25

26

27

28

    _____
    PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
                MOTION FOR CLASS CERTIFICATION

# **TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -i-

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -iii-

I.     INTRODUCTION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    FACTUAL AND PROCEDURAL BACKGROUND  . . . . . . . . . . . . . . . . . . . . . 2

III.   ADEQUACY OF CLASS DEFINITION AND SHOWING OF
       NUMEROSITY  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.    COMMON ISSUES OF LAW AND FACT PREDOMINATE . . . . . . . . . . . . . . 4

       A.    California's Residential Construction/Consumer Protection Laws
             Apply In Common To The Class . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

       B.    RORA Standards And Remedies Involve Common Issues Of Law
             And Fact Regarding Defective Cocoon Insulation  . . . . . . . . . . . . . . . . 7

             1.    Pulte Homeowners Who Own Homes Built On Or After
                   January 1, 2003 Are Protected In Common By RORA  . . . . . . . . . 7

             2.    RORA Applies To Pulte As A Builder  . . . . . . . . . . . . . . . . . . . 7

             3.    RORA Applies To US Greenfiber As A Product
                   Manufacturer/Material Supplier . . . . . . . . . . . . . . . . . . . . . . . . 8

             4.    Quality Interiors Is Subject To Liability Under RORA As A
                   Product Installer/Supplier . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

             5.    RORA Liability Standards Apply To The Cocoon Insulation
                   Incorporated Into Pulte Wall Assemblies . . . . . . . . . . . . . . . . . 11

             6.    Pulte's Admissions And Notice That Cocoon Insulation Is
                   Defective Also Support Class Certification  . . . . . . . . . . . . . . . . 16

             7.    RORA Provides Common Remedies Which Apply . . . . . . . . . . . 16

             8.    Defendants' Alleged Defenses Do Not Defeat Class
                   Certification  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

       C.    Plaintiff's UCL Claim Is Amenable To Class Certification  . . . . . . . . . . 18

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1   V.     PLAINTIFF'S CLAIMS ARE TYPICAL TO THE CLAIMS OF THE

2          CLASS .......................................................... 22

3   VI.    ADEQUACY OF REPRESENTATION ............................. 22

4   VII.   MANAGEABILITY OF THIS ACTION FOR ADJUDICATION AND

5          TRIAL ......................................................... 23

6   VIII.  APPOINTMENT OF CLASS COUNSEL ............................ 25

7   IX.    CONCLUSION ................................................. 25

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

-ii-

## **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Amchem Prods v. Windsor*,
    521 U.S. 591, 614 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Blackie v. Barrack*,
    524 F.2d 891, 901 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Brink v. First Credit Res.*,
    185 F.R.D. 567, 571 (D. Ariz. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Cameron v. E.M. Adams & Co.*,
    547 F.2d 473, 478 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*County of Los Angeles v. Jordan*,
    459 U.S. 810 (1982) 669 F.2d at 1321 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*East River Steamship Corp. v. Transamerica Delaval, Inc.*
    (1986) 476 U.S. 858 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Eisen v. Carlisle & Jacquelin*,
    417 U.S. 156, 177 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011, 1019 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 17, 22

*In re Northern Dist. of Cal., Dalkon Shield, Etc.*,
    693 F.2d 847, 856 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Rhone-Poulenc Rorer, Inc.*,
    51 F.3d 1293, 1300-02 (7th Cir.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Jefferson v. Ingersoll Int'l, Inc.*,
    195 F.3d 894, 898 (7th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Jordan v. County of Los Angeles*,
    699 F.2d 1311, 1319 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507, 512 (9th Cir. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Local Joint Executive Board of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
    244 F.3d 1152, 1163 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Mejdrech v. Met-Coil Systems Corp.*,
    319 F.3d 910, 912 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Migliori v. Boeing North America*,
    97 F.Supp.2d 1001, 1009, n.9 (C.D.Cal.2000) . . . . . . . . . . . . . . . . . . . . . . . . 5

*O'Connor v. Boeing North America, Inc.*,
    184 F.R.D. 311, 319 (C.D.Cal. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

---

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

*Preferred MSO of America-Austin LLC v. Quadramed Corp.*,
    85 F. Supp. 2d 974 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Probe v. State Teachers' Ret. Sys.*,
    780 F.2d 776, 780 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Robinson v. Metro-North Commuter RR*,
    267 F.3d 147, 167 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Smilow v. Southwestern Bell Mobile Sys., Inc.*,
    323 F.3d 32, 39 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Southland Sod Farms v. Stover Seed Co.*,
    108 F.3d 1134, 1145 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*St. Paul Fire & Marine Ins. Co. v. Sears, Roebuck & Co.*,
    603 F.2d 780, 785-786 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*State Farm Mut. Auto. Ins. Co. v. Porter*,
    186 F.2d 834, 840 (9th Cir. 1950) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227, 1230 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

**STATE CASES**

*Aas v. Superior Court*,
    24 Cal.4th 627, 101 Cal. Rptr. 2d 718, 12 P.3d 1125 (2000) . . . . . . . . . . . . . . . 5

*Avner v. Longridge Estates*
    272 Cal.App.2d 607 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Barquis v. Merchants Collections Ass'n*,
    7 Cal.3d 94, 113 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tele. Co.*,
    20 Cal. 4th 163 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Del Mar Beach Club Owners Assn. v. Imperial Contracting Co.*
    123 Cal.App.3d 898 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Greystone v. Midtec*, Inc.,
    168 Cal. App. 4th 1194 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7-10

*In re Tobacco II Cases*,
    46 Cal.4th 298 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 18, 20

*Jimenez v. Superior Court*,

    29 Cal.4th 473, 483, 58 P.3d 450 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 14

*Juarez v. Arcadia Fin., Ltd.*,
    152 Cal. App. 4th 889 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Kriegler v. Eichler Homes, Inc.*
    269 Cal.App.2d 224. (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Sacramento Regional Transit Dist. v. Grumman Flexible*,
    158 Cal. App. 3d 289, 294 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*South Bay Chevrolet v. Gen. Motors Acceptance Corp.*,
    72 Cal. App. 4th 861 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*State Farm Fire & Cas. Co. v. Superior Court*,
    45 Cal.App.4th 1093, 1105 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Weinstat v. Dentsply International*,
    180 Cal.App.4th 1213 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Zhang v. Superior Court*
    (2009) 178 Cal.App.4th 1081 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21


**STATE STATUTES**

*Cal. Civil Code § 895* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Cal. Civil Code § 895(f)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cal. Civil Code § 896* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 10, 12-15

*Cal. Civil Code § 905* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Cal. Civil Code § 911* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cal. Civil Code § 942* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 16

*Cal. Civil Code § 944* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Cal. Civil Code §936* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-10

*Cal. Civil Code §941(e)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cal. Civil Code §942* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 16

*California Business & Professions Code § 17200* . . . . . . . . . . . . . . . . . . . . . . . . . 18

*California Civil Code §897.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

*California Civil Code §910* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

*California Civil Code §931* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*California Health & Safety Code § 17920.3* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# I.   **INTRODUCTION**

Plaintiff Emilio Segura completed the informal prelitigation opportunity to repair process with Defendants and renews his motion for class certification.  Defendants denied Plaintiff's claims and refused to offer any repairs.  Accordingly, the prelitigation "opportunity to repair" process is completed.

This motion for class certification is on behalf of a clear and ascertainable class of Pulte homeowners who, like Segura, have the same Cocoon insulation alleged to be defective in their wall cavities.  The proposed class is similarly situated and entitled to the same common protection of California's residential home construction laws, including *Civil Code §§ 895 et seq.* (The California Right to Repair Act--"RORA").  Segura is an adequate class representative because he completed the RORA prelitigation "opportunity to repair" process with the defendants and can proceed building component defect claim.

The predominant and common issues of fact for Plaintiff and the proposed class are established by the common builder, Pulte Homes, and the presence of Cocoon insulation in the wall cavities of all class members' homes.  The basic common issue is whether or not Cocoon insulation is a defective building component.  Pulte already admitted that Cocoon insulation is defective in a prior lawsuit it filed against U.S. Greenfiber in Riverside County.  The predominant and common issues of law arise under RORA and the UCL.  The same laws apply in common to defendants and to the entire class.  Each class member owns a mass produced home built and sold by Pulte Homes on or after January 1, 2003 that contains Cocoon insulation.

Class certification is superior because a single liability adjudication will determine whether or not Cocoon Insulation is a defective component in the mass-produced Pulte homes.  While hundreds of homes have already suffered varying amounts of mold contamination and other resulting harm, no individualized standards of proof regarding causation or resulting property damage are required to litigate the RORA claim or the UCL claim.  RORA eliminates the economic loss rule or proof of causation of resulting property damage.  A "right to repair" remedy exists if the Cocoon insulation is defective.

1      Now that the prelitigation process is completed, Segura is an adequate class

2  representative.  Segura's home still has Cocoon insulation in the wall cavities and he has

3  suffered an injury to tangible property and loss of money as a result of the Cocoon

4  insulation defect.  Segura's standing and adequacy as a class representative is also

5  supported by the recent California Supreme Court decision, *In re Tobacco II Cases,* 46

6  Cal.4th 298 (2009), and its progeny.  Plaintiffs respectfully request the Court to grant the

7  motion for class certification.

8  **II.    FACTUAL AND PROCEDURAL BACKGROUND**

9      This action was brought as a class action on behalf of California consumers who

10  are the owners of homes built by defendant Pulte that contain Cocoon Insulation

11  manufactured by Defendant, U.S. GREENFIBER, LLC  ("USGF").  (**Docket No. 132**,[1]

12  *Kingsbury* First Amended Complaint, Parks Decl. Ex. "A" ["Compl."], ¶ 1.)  Plaintiffs

13  filed their complaint in state court and this action was removed by USGF under CAFA.

14  Two prior motions for class certification were filed and the Court has previously received

15  voluminous evidence and briefing regarding the Cocoon insulation product.  The first

16  motion was denied with leave for Plaintiffs to amend the complaint to specifically assert

17  the RORA cause of action regarding the defective Cocoon insulation. The second motion

18  for class certification focused on the applicability of the prelitigation procedures to class

19  actions under RORA.  The issue of first impression was whether a homeowner, like

20  Segura, who files a class action under RORA regarding a defective building component,

21  is exempt from engaging in the *Civil Code §910* prelitigation "opportunity to repair"

22  process based on the language of *Civil Code §931*.  The Court determined that Segura

23  would first have to comply with the prelitigation "opportunity to repair" process before he

24

25      [1]In the interests of judicial economy and saving paper, Plaintiffs request judicial notice

26  and refer to, and incorporate into this motion, the declarations of Michael W. Parks [Docket Nos.132-134], Alan Schimmel [Docket No. 124] and Emilio Segura [Docket No 125] previously

27  filed on May 18, 2009 and the declaration of Michael W. Parks [Docket No. 144] filed on June 15, 2009 in support of the motion for class certification heard on September 14, 2009. These

28  declarations and the supporting evidence will be cited and referenced by the Docket Nos. assigned to these pleadings.

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1  could be considered an adequate class representative.

2       Following the September 14, 2009 hearing, Segura served the defendants with a

3  written notice of the Cocoon insulation defect claim pursuant to *Civil Code §910*

4  asserting on behalf of himself and the owners of other Pulte homes built and sold on and

5  after January 1, 2003. (Parks Decl. filed 2/1/10, Ex. "A".)   Pulte acknowledged receipt of

6  this notice and requested an inspection of the Segura home and defendants performed a

7  brief visual inspection of the home on November 3, 2009.    (Parks Decl. filed 2/1/10, ¶

8  4.)  On November 6, 2009, immediately following the inspection, counsel for Pulte

9  informed "Mr Segura that Pulte does not offer a repair for these alleged claims" raised

10 "on Mr. Segura's behalf only in the pending *Kingsbury (Segura)* case venued in the U.S.

11 District Court."  (Parks Decl. Filed 2/1/10, Ex. "B".)

12 **III.   ADEQUACY OF CLASS DEFINITION AND SHOWING OF NUMEROSITY**

13

14      "A class will be found to exist if the description of the class is definite enough so

15 that it is administratively feasible for the court to ascertain whether an individual is a

16 member." *O'Connor v. Boeing North America, Inc.*, 184 F.R.D. 311, 319 (C.D.Cal.

17 1998). Plaintiff's amended complaint defines a specific and adequate class of: All persons

18 who currently own residential homes built by Pulte Homes in the state of California and

19 sold as new on or after January 1, 2003, that incorporate Cocoon insulation manufactured

20 by Defendant U.S. Greenfiber. (**Docket No. 132**, Parks Decl., Ex. "A", ¶35.)  The class

21 consists of the owners of approximately 9,709 homes in California.[2]  All of the class

22 members are entitled to the consumer protections of RORA and all class members

23 currently own homes built and sold by Pulte on or after January 1, 2003 that incorporate

24 Cocoon insulation as a building component.[3]  Pulte's business records confirm the

25 _____

26      [2]Pulte admitted to 9,709 RORA homeowner class members with Cocoon insulation in wall cavities in its prior opposition brief to the March 30, 2009 motion for class certification.

27 (Docket No. 89, Pulte Opp., p. 2:4-5.)

28      [3]The minimum construction standards under RORA extend for the benefit of both original and subsequent purchasers of the Pulte homes. *Cal. Civil Code § 905.*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1  administrative feasibility to ascertain the class members and the location of Cocoon

2  insulation.[4]  Plaintiff's complaint also includes a subclass of approximately 2,000 homes

3  installed with the Cocoon Insulation by Quality Interiors, Inc. Plaintiff states an adequate

4  class definition under Fed.R.Civ.P Rule 23(a)(1).

5  **IV.   COMMON ISSUES OF LAW AND FACT PREDOMINATE**

6       The threshold "commonality" requirement of Rule 23(a)(2) is construed

7  permissively. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998). "All

8  questions of fact and law need not be common to satisfy the rule.  The existence of shared

9  legal issues with divergent factual predicates is sufficient, as is a common core of salient

10  facts coupled with disparate legal remedies within a class." *Id.* "When common

11  questions present a significant aspect of the case and they can be resolved for all members

12  of the class in a single adjudication, there is clear justification for handling the dispute on

13  a representative rather than on an individual basis." *Id.*  When one or more of the central

14  issues in the action are common, class certification may be proper even though other

15  important factors will be tried separately, such as damages or some affirmative defenses

16  peculiar to individual class members. *Local Joint Executive Board of Culinary/Bartender*

17  *Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001).

18  **A.   California's Residential Construction/Consumer Protection Laws**
   **Apply In Common To The Class**

19

20       Class certification in this case is supported by the common set of California

21  residential construction and consumer protection laws, particularly RORA, that apply to

22  all the parties.  Class certification is also strongly supported by evidence of Pulte's

23  admission in a lawsuit that the Cocoon insulation building component is a defective

24  product in mass-produced housing.

25

26  _____

[4]Pulte used standard recordkeeping practices and files for each home it built in California. (**Docket No. 133**, Parks Decl. Ex. I, p. 46:12-47:16.)  It was standard operating procedure for Pulte to have an e-schedule for each house to show the building logic and organization from start to finish.  (**Docket No. 133**, Parks Decl. Ex. I, p. 49:2-12, 50:7-9.)  Pulte has standardized records to identify the location of Cocoon insulation in wall cavities in the homes it built. (**Docket No. 133**, Parks Decl. Ex. I, p. 153:20-155:19, 171:5-24.)

RORA establishes a duty on the part of builders, product manufacturers and installers like the defendants to avoid residential construction defects and prevent economic losses to homeowners. *Greystone v. Midtec*, Inc., 168 Cal. App. 4th 1194, 1215 (2008).  RORA was passed by the California Legislature in response to the California Supreme Court decision in *Aas v. Superior Court,* 24 Cal.4th 627 (2000).

> "In response to the holding in *Aas*, the Legislature enacted Civil Code section 895 et seq. (the Right to Repair Act or the Act). The Act establishes a set of building standards pertaining to new residential construction, and provides homeowners with a cause of action against, among others, builders and individual product manufacturers for violation of the standards (*§§ 896, 936*). The Act makes clear that upon a showing of violation of an applicable standard, a homeowner may recover economic losses from a builder without having to show that the violation caused property damage or personal injury (*§§ 896, 942*). In such an instance, the Act abrogates the economic loss rule, thus legislatively superseding *Aas*." *Greystone,* at 1202.

RORA establishes a set of *consumer protection* standards for residential construction, and provides a common liability standard for the benefit of homeowners against builders, product manufacturers and installers. *Cal. Civil Code § 896.*  According to *Greystone*, "The Act repeals the economic loss rule for claims that allege a violation of the Act's standards." *Greystone, supra.*, at 1212.  RORA explicitly states that "[i]n order to make a claim", the homeowner "need only demonstrate, in accordance  with the applicable evidentiary standard, that the home does not meet the applicable standard, . . ." *Cal. Civil Code §942.*   No showing of causation or damages is required to prove strict liability for a violation of a standard provided that the violation arises out of, pertains to, or is related to, the original construction. *Id.*

Class certification in this particular action also finds strong support from the factual statements and affirmative admissions made by Pulte in a product liability lawsuit it filed in Riverside County Superior Court against US Greenfiber.  The statements in the complaint are admissible against Pulte to support the claim on behalf of the class that Cocoon Insulation is defective for Pulte's mass produced housing. *State Farm Mut. Auto. Ins. Co. v. Porter*, 186 F.2d 834, 840 (9th Cir. 1950); *Migliori v. Boeing North America*, 97 F.Supp.2d 1001, 1009, n.9 (C.D.Cal.2000).

1    Pulte's complaint states that "in connection with the manufacturing, providing,

2    supplying, selling, testing, inspecting, delivering and distribution of the Greenfiber

3    Cellulose Insulation and installation specifications and protocol, the Greenfiber Cellulose

4    installation specifications and protocol provided to Pulte were inadequate and/or improper

5    for the installation of the Greenfiber Cellulose insulation at the kitchen and bathroom

6    assemblies" on Pulte-built homes." **(Docket No. 132**, Parks Decl., Ex. "B". ¶78,

7    p.18:26-19:3.)  It states that Pulte did not have "proper and adequate Greenfiber Cellulose

8    insulation specifications and protocol for the installation of the Greenfiber Cellulose

9    insulation" and that US Greenfiber "negligently manufactured, supplied, sold, tested,

10   inspected and placed into the stream of commerce the Greenfiber Cellulose insulation and

11   installation specifications and protocol for the installation of the Greenfiber cellulose

12   insulation into mass produced housing projects by residential developers" including Pulte.

13   **(Docket No. 132**, Parks Decl. Ex. "B", ¶86, p.20:16-26.)

14   Pulte is the mass builder for the entire class of homes and it is charged with strict

15   liability for defects in mass produced housing. *Kriegler v. Eichler Homes, Inc.* (1969) 269

16   Cal.App.2d 224. (1969); *Del Mar Beach Club Owners Assn. v. Imperial Contracting Co.*

17   123 Cal.App.3d 898 (1981).  In *Jimenez v. Superior Court* , 29 Cal.4th 473, 483, 58 P.3d

18   450 (2002), the California Supreme Court affirmed the right to bring a strict liability class

19   action for a defective building component. *Jimenez, supra*. 29 Cal. 4th at 476.

20   Although Pulte sued USGF because the Cocoon insulation was defectively

21   manufactured and designed, class members' homes contain this defective insulation

22   product. The completion of the pre-litigation right to repair process establishes Segura's

23   adequacy to bring the RORA claim as a class representative. Now that Pulte knows the

24   defect exists and denied the defect claim as part of the prelitigation process, Mr. Segura

25   can proceed with the claim on behalf of the class. See e.g. *Preferred MSO of*

26   *America-Austin LLC v. Quadramed Corp.*, 85 F. Supp. 2d 974 (1999) [pre-litigation ADR

27   applies to proposed class representative]; *Tobacco II, supra*, 46 Cal.4th at p. 306, 326

28   [standing requirements and elements for claim on behalf of class only apply to class

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1    representative, not to all class members].

2    **B.    RORA Standards And Remedies Involve Common Issues Of Law And Fact Regarding Defective Cocoon Insulation**

3

4    Motions for class certification do not to decide the merits of Plaintiff's causes of

5    action. *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). "There is nothing in either

6    the language or history of Rule 23 that gives a court any authority to conduct a

7    preliminary inquiry into the merits of a suit in order to determine whether it may be

8    maintained as a class action. . . ." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177

9    (1974). Defendants' anticipated arguments that Plaintiff has not "established" a RORA

10   violation fail to defeat class certification because common, predominant liability

11   standards apply to the claims Plaintiff seeks to adjudicate for the benefit of the class.

12   **1.    *Pulte Homeowners Who Own Homes Built On Or After January 1, 2003 Are Protected In Common By RORA***

13   The class is defined as Pulte homeowners whose homes were built and sold on or

14   after January 1, 2003. *California Civil Code section 895(f)* provides in part that a

15   "'Claimant' or 'homeowner' includes the individual owners of single-family homes".

16   Plaintiff Emilio Segura and the other proposed class members are all Pulte homeowners

17   entitled to the consumer protections of the RORA.  They share in common that their

18   homes were built and sold after January 1, 2003 by the same mass home builder, Pulte

19   Homes.  Mr. Segura's home has Cocoon insulation and every home in the proposed class

20   incorporates the same defective component, Cocoon insulation. (**Docket No. 132**, Parks

21   Decl. Ex. "D" [Pulte Supp. Expert Report, pp. i-ii]; **Docket No. 133,** Parks Decl. Ex. I, p.

22   47:17-23, 48:10-16, 153:20-155:19, 171:5-24.

23   **2.    *RORA Applies To Pulte As A Builder***

24   RORA was specifically enacted to apply to claims against builders like Pulte. *Cal.*

25   *Civil Code §§896, 911, 942.*  Homeowners need only demonstrate that the homes do not

26   meet applicable statutory standards. No showing of causation or damages is required to

27   meet plaintiffs' burden of proof, provided the violation arises out of the original

28   construction.   *Cal. Civil Code §941(e); Greystone, supra* at 1213.  A builder is strictly

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

1   liable for any violation of RORA. *Greystone, supra* at 1216.

2   Pulte, along with its Del Webb division, is a mass manufacturer of residential

3   housing in the state of California. (**Docket No. 133,** Parks Decl. Ex. J, p. 118:5-10,

4   **Docket No. 132,** Ex. E, p. 209:12-15; **Docket No. 134,** Parks Doc. Ex. "37", "38".) Each

5   of the 9,709 homes built in California was manufactured by Pulte with Cocoon insulation

6   as a specific building component. (**Docket No. Docket No. 133,** Parks Decl. Ex. I, p.

7   44:4-21; Ex. J, p. 100:25-101:2; **Docket No. 134,** Parks Doc. Ex. "57".) Cocoon

8   insulation was incorporated by Pulte as part of the original construction.

9   Pulte controlled insulation product selection and mandated the use of Cocoon

10   insulation by installers it hired in California. (**Docket No. 133,** Parks Decl. Ex. J, p.

11   100:25-101:2.) Pulte used Cocoon insulation in wall assemblies in Southern California

12   from late 2001 until September, 2006. (**Docket No.** 133, Parks Decl. Ex. I, p. 44:4-21;

13   Parks Doc. Ex. "57".) Pulte corporate approved the use of Cocoon insulation. (**Docket**

14   **No. 133,** Parks Decl. Ex. I, p. 130:2-5.) Cocoon insulation was the only moisture-based

15   insulation product used by Pulte in home construction in California from 2001 through

16   2006. (**Docket No. 133,** Parks Decl. Ex. I, p. 17:10-18, 47:17-23, 48:10-16.) Pulte is

17   subject to liability under RORA to the entire class.

### 3.   *RORA Applies To US Greenfiber As A Product Manufacturer/Material Supplier*

Individual product manufacturers and material suppliers like US Greenfiber are

subject to liability under RORA. *Cal. Civil Code §936.* The abrogation of the economic

loss rule allowing homeowners to sue a builder, also applies to claims against the

individual product manufacturer/material supplier. *Greystone, supra* at 1213-1214, 1218.

USGF may be liable for defective Cocoon insulation even if the defect has not resulted in

property damage to other property. *Id.*

In *Greystone v. Midtec*, the Court of Appeal specifically examined the application

of RORA to individual product manufacturers. *Greystone* involved a claim over the risk

of plumbing leaks created by a defect in plumbing fittings; most of the fittings had not

1   actually failed. Greystone replaced all of the fittings and sued Midtec for indemnity and

2   negligence. *Greystone v. Midtec, Inc.*, 168 Cal. App. 4th 1194, 1204 (2008)  *Midtec* held

3   that RORA applies to individual product manufacturers and material suppliers. *Id.* at

4   1211-1214. Specifically, liability under *Civil Code §936* applies to individual product

5   manufacturers and material suppliers who cause, in whole or in part, a violation of a

6   particular standard as a result of a negligent act or omission.

7       USGF is in the business of manufacturing and selling Cocoon insulation in

8   California. (**Docket No. 132**, Parks Decl. Ex. "A", ¶ 11, 15.) Cocoon insulation is a

9   manufactured product composed primarily of recycled paper and cellulose fibers. (**Docket

10  No. 132**, Parks Decl. Ex. A, ¶ 16.)  One of the inherent qualities of the Cocoon insulation

11  is that it is highly hygroscopic and will absorb and retain water over a period of time.

12  (**Docket No. 132**, Parks Decl. Ex. E, p. 56:11-57:4.)  Cocoon insulation also introduces

13  significant water into the new construction. (**Docket No. 132**, Parks Decl. Ex. E, p.

14  52:7-10.) It is installed into wall cavities with water added to spray into areas for

15  application. (**Docket No. 132**, Parks Decl. Ex. E, p. 50:14-18.)  Cocoon cellulose is the

16  highly sponge-like and hygroscopic character of this manufactured product and the

17  presence of water and moisture in and around the product. (**Docket No. 132**, Parks Decl.

18  Ex. A, Compl., ¶ 18; Ex. E, p. 54:22-55:3, 55:9-57:4, 57:11-24.)

19      Cocoon insulation is installed wet and closed in wall cavities where air circulation

20  is inadequate. (**Docket No. 132**, Parks Decl. Ex. A, Compl., ¶ 19-24, Ex. G, p.

21  85:18-86:18; **Docket No. 134,** Parks Doc. Ex. "62", "105", "164", **Docket No. 133,** Ex.

22  "P", p. 60:17-61:15; Ex Q, p. 96:13-97:5.)  The closure of wall cavities containing

23  Cocoon insulation, "locks in" moisture and dampness under conditions that are inherently

24  defective for residential home construction. (**Docket No. 132**, Parks Decl. Ex. A,

25  Compl., ¶ 19-24; Ex. B; Parks Decl. Ex. E, p. 54:22-55:3; **Docket No. 133,** Ex. I, p.

26  83:11-18; **Docket No. 134** Doc. Ex. "62.".)  Furthermore, bathroom walls and wall

27  assemblies contain vapor barriers and fixtures that trap moisture and reduce or inhibit the

28  process of drying Cocoon insulation. (**Docket No.** 132, Parks Decl. Ex. A, Compl., ¶ 19-

---

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1    24; **Docket No. 134,** Parks Doc. Ex. "62".)  Introduction of Cocoon insulation into and

2    around bathrooms and bathroom wall assemblies unreasonably and dangerously promotes

3    moisture and a mold-inducing environment in residential construction.   (**Docket No. 132,**

4    Parks Decl. Ex. A, Compl., ¶ 19-24; Parks Decl. Ex. "B"; Parks Decl. Ex. E, p.

5    374:15-375:9; **Docket No. 134,** Doc. Ex. "62".)

6          USGF trained Pulte personnel on the Cocoon insulation "system". (**Docket**

7    **No.132** , Parks Decl. Ex. E, p. 96:19-23; **Docket No. 133,** Ex. J, p. 79:2-3; **Docket No.**

8    **134,** Doc. Ex. "10" [Cocoon Product Awareness Training for Pulte/Del Webb-GFPD

9    4577], Ex. "4", [GFPD 4557].)  USGF also trained Quality Interior for Pulte construction

10   work in Southern California. (**Docket No. 133,** Parks Decl. Ex. J, p. 59:6-13, 60:10-12.)

11         The perceived "moisture problem" with Cocoon insulation was well known at US

12   Greenfiber. (**Docket No. 134,** Parks Doc. Ex. "32".)  In an August 26, 2001 e-mail

13   regarding toxic mold, Dan Rizzo states "I have already been advised by Pulte and Centex

14   that this is a critical issue for them inn [sic] areas beyond TX and CA. . . . We are a

15   perfect target by our competition  because we do what some people believe to be contrary

16   to common wisdom – we add moisture to the inside of a wall cavity." (**Docket No. 134,**

17   Parks Doc. Ex. "32".)  Cocoon insulation "water issues" are enumerated areas of

18   construction standards in this case.  US Greenfiber is subject to liability under RORA.

19            **4.**    ***Quality Interiors Is Subject To Liability Under RORA As A***
                    ***Product Installer/Supplier***

20

21         RORA applies to Quality Interiors as part of the Cocoon insulation material supply

     chain and as the installer of Cocoon insulation in the homes of Segura and at least 2,000
22

other homeowners. *Cal. Civil Code §936, 896.  Greystone v. Midtec* further clarifies that
23

homeowners can bring an action against Quality Interiors for violation of RORA.
24

25   *Greystone, supra* at 1213-1214.

         Quality Interiors, Inc. installed Cocoon insulation in more than 2,000 homes in
26

Southern California.  (**Docket No. 133,** Parks Decl. Ex. J, p. 119:4-13.)  It participated in
27

implementation of Cocoon Installation Implementation Plan for Pulte. (**Docket No. 132,**
28

1   Parks Decl. Ex. E, p. 85:1-5, 86:11-14.)  Pulte selected Quality to install Cocoon

2   Insulation and be part of the USGF-designed Pulte Implementation Plan.  (**Docket No.**

3   132, Parks Decl. Ex. E, p. 105:12-22; **Docket No. 133,** Ex. K, p. 57:11-19; **Docket No.**

4   **134,** Doc. Ex. "4", "5".)  Quality performed Cocoon Insulation work for Pulte from 2001

5   to 2004.  (**Docket No. 133**, Parks Decl. Ex. J, p. 39:10-15.)  According to USGF training

6   materials, Quality Interiors was improperly trained that "drywall can be installed within

7   24 hours . . . allowing the builder to stay on schedule."  (**Docket No. 134**, Parks Doc. Ex.

8   "58", "59"; **Docket No. 132**, Parks Decl. Ex. E, p. 322:1-323:23.)

9          Quality Interiors entered into the contract with Pulte to install the Cocoon

10  Insulation at "The Estates" where Mr. Segura's home is located.  (**Docket No. 133**, Parks

11  Decl. Ex. J, p. 44:3-45:2.)  It was also sued by Pulte for defective Cocoon insulation.

12  (**Docket No. 132**, Parks Decl. Ex. "B".)  There is evidence of misrepresentations of the

13  certification of Quality Interiors by US Greenfiber.  According to USGF and Quality,

14  USGF did not have certified Cocoon Insulation installers.  (**Docket No. 132**, Parks Decl.

15  Ex. E, p. 71:8-10, 83:17-25, 8:6-10; **Docket No. 133**, Ex J, p. 61:11-15.)  USGF's product

16  approval from the ICBO/ICC under the Uniform Building Code effective February, 2001

17  mandated that Cocoon insulation product application must be by manufacturer "certified"

18  installers.  (**Docket No. 134**, Parks Doc. Ex. "164.")  Quality Interiors represented to

19  Pulte that it was certified to install Cocoon Insulation.  (**Docket No. 133**, Parks Decl. Ex.

20  I, p. 212:7-10.)  Quality Interiors is subject to liability under RORA.

21          **5.      *RORA Liability Standards Apply To The Cocoon Insulation
              Incorporated Into Pulte Wall Assemblies***

22

23          Defendants do not make any legitimate argument for the proposition that RORA

24  cannot apply to a class action regarding the Pulte homes and the Cocoon Insulation

25  incorporated into each of the homes.  Cocoon Insulation is a common component in the

26  entire class of Pulte homes.  The construction standards set forth in RORA "are intended

27  to address every function or component of a structure".  California Civil Code §897.

28  Therefore, a class claim for defective Cocoon insulation is actionable under RORA.

---

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1

### a.     Civil Code §896(a)(10), (a)(11)

2      Civil Code §896(a) provides that with respect to water issues:

3           . . . .

4           (10) Stucco, exterior siding, **exterior walls**, including, without limitation, **exterior framing, and other exterior wall finishes and fixtures** *and the systems of those components and fixtures*, including, but not limited to, pot shelves, horizontal surfaces, columns, and plant-ons, shall be installed in such a way so as <u>not to allow unintended water to pass into the structure or to pass beyond, around, or through the designed or actual moisture barriers of the system</u>, including any internal barriers located within the system itself. **For purposes of this paragraph, "***systems***" include**, without limitation, framing, substrate, flashings, trim, *wall assemblies, and internal wall cavities*, if any.
           (11) Stucco, exterior siding, and exterior walls shall <u>not allow excessive condensation to enter the structure and cause damage to another component</u>. For purposes of this paragraph, "systems" include, without limitation, framing, substrate, flashings, trim, *wall assemblies, and internal wall cavities*, if any. [emphasis added]

11      These standards specifically apply to wall assemblies and internal wall cavities.

12  The system of wall assemblies and internal wall cavities contain Cocoon Insulation and

13  allow unintended water and excessive condensation to pass into the residential structures

14  of Pulte homeowners.  US Greenfiber's Cocoon "system" dumbs down the vapor barrier

15  and vapor retarder system for wall assemblies and allows excessive moisture and

16  condensation to enter into living spaces.

17      Although an influencing factor for the Plan was for "defining consistency across

18  all locations" regarding moisture (**Docket No. 132**, Parks Decl, Doc. Ex. "5"; Ex. E, p.

19  108:3-10), Cocoon Insulation creates moisture problems because water is not prevented

20  from passing through the wall cavity and the drywall.  Once moisture passes through the

21  drywall, the moisture gets trapped behind mirrors, cabinets and shower enclosures and

22  creates a moisture issue.   (**Docket No. 132**, Parks Decl. Ex. A, Compl., ¶ 19-24; Parks

23  Decl. Ex. "B"; Parks Decl. Ex. E, p. 374:15-375:9; **Docket No. 134**, Doc. Ex. "62".)

24      It was understood that moisture from the Cocoon insulation can travel through

25  interior walls of homes.  (**Docket No. 132**, Parks Decl. Ex. E, p. 76:2-6.)  In a May, 2003

26  draft report for experimental design of water intrusion experiments, USGF understood

27  that the risk was "the propensity of different insulation systems to produce mold because

28  of elevated water levels.  We understood that issue from the outset." (**Docket No. 134**,

1   Parks Doc. Ex. "29" [GFPD 4642], **Docket No. 132,** Parks Decl. Ex. E, p.

2   166:21-167:10.)  USGF did not have any specification to avoid trapping moisture from

3   the Cocoon Insulation behind mirrors  and shower enclosures covering the wall

4   assemblies.  (**Docket No. 132**, Parks Decl, Ex. E, p. 76:7-16.)

5          According to Pulte, mold issues in Pulte homes in California were caused by

6   Cocoon insulation "moisture trapped in the wall during the construction process."

7   (**Docket No. 134**, Parks Doc. Ex. "105", **Docket No. 132,** Parks Decl. Ex. G, p.

8   85:18-86:18; **Docket No. 133,** Ex. "P", p. 60:17-61:15; Ex Q, p. 96:13-97:5.)  Mold was

9   observed on the inside of drywall.  (**Docket No. 132**, Parks Decl. Ex. G, p. 226:13-18.).[5]

10          There is also an inherent risk Of Cocoon insulation "re-wetting" following

11   installation: Compared to fiberglass which will not hold onto water, one of the inherent

12   qualities of the Cocoon insulation is that it is hygroscopic and will absorb and retain

13   water over a longer period of time.  (**Docket No. 132**, Parks Decl. Ex. E, p. 56:11-57:4.)

14   Centex banned Cocoon insulation in 2003 because the Cocoon Insulation in wall

15   assemblies creates a foreseeable risk of harm in a water intrusion event.  (**Docket No.**

16   **132**, Parks Decl, Ex. E, p. 57:11-24.)  Pulte was aware of the Centex ban and long

17   standing concerns with mold if leaks are not detected, but Pulte management discounted

18   this concern.  (**Docket No. 133**, Parks Decl. Ex. K., p. 31:3-7, 29:19-30:6; Ex. I, p.

19   28:22-25, 29:22-30:20.) In sum, water issues surrounding the incorporation of Cocoon

20   insulation are common, predominant issues, and should be maintained as a class action.

21                  **b.**     *Civil Code §896(g)(15)*

22          "Structures shall be constructed in such a manner so as not to impair the occupants'

23   safety because they contain public health hazards as determined by a duly authorized

24

25          [5]There are already at least 767 homes that have experienced resulting property damage
26   including moisture damage and resulting mold due to the product failure associated with the
     Cocoon insulation.  This includes the Segura home.  (**Docket No. 125**, Segura Decl. ¶¶ 1-8.)
27   Pulte admits that it did not test each and every home scientifically to ascertain the presence of
     mold.  (**Docket No. 133**, Parks Decl. Ex. I, p. 105:24-106:3.)   Pulte also left Cocoon insulation
28   in the bathroom and kitchen wall assemblies of Mr. Segura's home. (**Docket No. 125**, Segura
     Decl., ¶8.)  The homeowner class and Mr. Segura remain exposed to this defect.

public health official, health agency, or governmental entity having jurisdiction. This paragraph does not limit recovery for any damages caused by a violation of any other paragraph of this section on the grounds that the damages do not constitute a health hazard." *Civil Code §896(g)(15).*

The California Legislature has identified health and safety standards applicable to dwellings in California.  According to California Health & Safety Code § 17920.3,

> "Any building or portion thereof including any dwelling unit, guestroom or suite of rooms, or the premises on which the same is located, in which there exists any of the following listed conditions to an extent that endangers the life, limb, health, property, safety, or welfare of the public or the occupants thereof shall be deemed and hereby is declared to be a substandard building:
> . . . .
> (a) Inadequate sanitation shall include, but not be limited to, the following:
> . . . .
> (11) **<u>Dampness of habitable rooms</u>**. [emphasis added].

Plaintiff's home has suffered dampness and mold resulting from the Cocoon Insulation.  (**Docket No. 132**, Parks Decl. Ex. "D" [Pulte Supp. Expert Report, pp. I-ii]; Ex. F, p. 208:21-219:5, 339:6-17; **Docket No. 134**, Parks Doc. Ex. "92", "80", "105" [reports of mold/fungal contamination in Matalas home]; **Docket No. 133,** Parks Decl. Ex. G, p. 102:8-16, 127:14-128:7.)  Mr. Segura still has Cocoon Insulation in the wall cavities of his home. (**Docket No.125**, Segura Decl. ¶8.)  A violation of health and welfare standards applicable to residential buildings is amenable to class certification.

### c. *Civil Code §897*

California Civil Code §897 is the catchall provision of RORA: "The standards set forth in this chapter are intended to address every function or component of a structure. To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage."

The phrase "causes damage" is not limited by the "economic loss rule".  The mere presence of Cocoon Insulation, which is present in all proposed class members' homes, "causes damage" under RORA because its presence is a defect and its repair and removal causes the demolition of other property. <u>See</u> *Jimenez v. Superior Court*, 29 Cal. 4th 473,

---

482-484 (2002); *Sacramento Regional Transit Dist. v. Grumman Flexible*, 158 Cal. App. 3d 289, 294 (1984) ["damage" includes inadequate value for product, costs of repair and replacement of the defective product or consequent expense or loss of profits]; Compare *East River Steamship Corp. v. Transamerica Delaval, Inc.* (1986) 476 U.S. 858, 867-868 [benefit of the bargain damage for failure of product itself].  Mass produced homes must be free of defects and all homes in this action have the same alleged defect.

Pulte admitted in its complaint against USGF that Cocoon insulation is defective. Plaintiff submitted evidence to support the defect.  Cocoon Insulation is inadequate and poor at managing moisture as a component of wall assemblies.  It is highly hygroscopic. It allows moisture to enter into living spaces. Pulte admits that this component was inadequate for mass produced housing.  The repair of the Cocoon Insulation defect requires demolition of other components.  Drywall must be demolished.  Drywall nailing must be removed.  Paint and wall covering must be removed.  The demolition of other components to repair the Cocoon insulation defect is damage.  (**Docket No.144**, Parks Supp Declaration, Ex "A".)   The Ninth Circuit has held that if repair to the insured's product results in damage to another part of the building, that damage is covered as "property damage." *St. Paul Fire & Marine Ins. Co. v. Sears, Roebuck & Co.*, 603 F.2d 780, 785-786 (9th Cir. 1979).

### d.    *Civil Code §896(g)(3)(A)*

Civil Code §896(g)(3)(A) states:

> "To the extent not otherwise covered by these standards, manufactured products, including, but not limited to, windows, doors, roofs, plumbing products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops, cabinets, paint, and appliances shall be installed so as not to interfere with the products' useful life, if any."

"Manufactured product" means a product that is completely manufactured offsite. Plaintiff has submitted evidence in support of his motion for class certification that Cocoon Insulation is manufactured by US Greenfiber in plants and delivered in bags to construction sites.  The issue whether or not Cocoon insulation is a "manufactured product" is common to the entire class. Pulte and USGF boasted about a "useful life" for

---

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLASS CERTIFICATION

Cocoon insulation and that it would have no moisture or mold issues.[6]  Cocoon Insulation is not the "lifetime" product warranted by Pulte and US Greenfiber.

### 6.    *Pulte's Admissions And Notice That Cocoon Insulation Is Defective Also Support Class Certification*

Pulte's product liability lawsuit against US Greenfiber asserts that Cocoon insulation was defective and the wrong product for incorporation into Pulte's homes. (**Docket No. 132,** Parks Decl., Ex. "B". ¶78, p.18:26-19:3; ¶86, p.20:16-26.)  Pulte's lawsuit, alone, provides a compelling basis for class certification.

### 7.    *RORA Provides Common Remedies Which Apply*

The predominant remedy sought for every class member under RORA is identical – removal and replacement of Cocoon insulation with a safer, non-defective alternative. Among the remedies that a claimant may recover in an action for violation of the RORA is "the reasonable value of repairing any violation of the standards set forth in [the Act] ... ." *Cal. Civil Code § 944*.  RORA eliminates any individual issues of proof of causation for resulting property damage caused by the Cocoon insulation. *Cal. Civil Code § 942*.  If the Cocoon insulation is a defect, Pulte, US Greenfiber and Quality are liable to the homeowner class to repair the defect.

RORA provides a well-defined, albeit limited scope of monetary damages for homeowners.  Under *California Civil Code §944*, homeowners are "only entitled to damages for" such items as the reasonable value of repairing the violation of the standards; the reasonable cost to repair and rectify damage resulting from the failure of the home to meet the standards; reasonable relocation and storage expenses during repairs; and reasonable investigative costs. Slight variations in the nature and amount of repairs to homes can be managed efficiently by determining the cost to replace Cocoon insulation for each home and applying the estimated figure to all of the homes in the same

---

[6](**Docket No. 134,** Parks Doc. Ex. "37", "38" "44", "58", "59"; (**Docket No. 132,** Parks Decl. Ex. E, p. 322:1-323:22; Ex. F, p, 71:8-14, 168:2-13; **Docket No. 133,** Ex. G, p. 60:7-16, 61:8-21; Ex. K, p. 51:4-22..)  Pulte "boasted the benefits of Cocoon Cellulose" even as late as July, 2007 after the clear knowledge of moisture and mold caused by Cocoon insulation. (**Docket No. 134,** Parks Doc. Ex. "154")

---

1  model.   Pulte has standardized records to identify the Cocoon insulation in wall cavities

2  the homes it built. (**Docket No. 133**, Parks Decl. Ex. I, p. 153:20-155:19, 171:5-24.)

3         Pulte rejected an informal "prelitigation" repair remedy following notice submitted

4  by Segura.  (Parks Decl. 2/1/10, Ex. B.) Pulte has not taken homeowners' concerns about

5  the Cocoon insulation defect seriously.[7]  Pulte has refused RORA remedies to

6  homeowners.  (**Docket No. 134**, Parks Doc. Ex. "105",  "139", "141".)  Pulte has not

7  tested all homes it built with Cocoon insulation in California for the presence of mold.

8  (**Docket No. 133**, Parks Decl. Ex. I, p. 105:24-106:3.)

9         A number of management tools are available to the Court and the parties to

10  address damages issues under *California Civil Code §944*, such as bifurcating liability

11  and damages trials, appointing a magistrate judge or special master to preside over

12  damages proceedings, and creating subclasses as permitted under Rule 23(c)(4).

13  Damages may be assessed class-wide based on a formula, such as the cost per square foot

14  to remove and replace Cocoon insulation or through test trials. In summary, the

15  fundamental and common legal and factual issue of the lawsuit is the Cocoon insulation

16  defect under RORA and the determination of responsibility for the defect.  See *Valentino*

17  *v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1230 (9th Cir. 1996); *Hanlon v. Chrysler Corp.*,

18  150 F.3d 1011, 1020 (9th Cir. 1998).

19              **8.    *Defendants' Alleged Defenses Do Not Defeat Class Certification***

20         As a threshold issue, "[c]ourts traditionally have been reluctant to deny class action

21  status under Rule 23(b)(3) simply because affirmative defenses may be available against

22  individual members."  *Smilow v. Southwestern Bell Mobile Sys., Inc.*, 323 F.3d 32, 39

23  (1st Cir. 2003); *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976).

24  Plaintiffs do not need to prove that each class member suffered resulting property damage

25  and mold contamination to establish a violation of RORA.  These arguments do not

26

27         [7]Pulte customer service adopted "Superhero" names "in the spirit of fun": "General

28  Germicide", "Admiral Anguish", "Captain Contamination", "Major Mildew", "Sergeant Stress", "Spore Boy", and "Private Payable." (**Docket No. 134**, Parks Doc. Ex. "160".

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1  defeat class certification.  Segura has completed the opportunity to repair process and he

2  can pursue the RORA claim on behalf of the class.

3        **C.**    **Plaintiff's UCL Claim Is Amenable To Class Certification**

4        Plaintiff's UCL claim is amenable to class certification.  The UCL is a broad

5  remedial statute that permits an individual to challenge wrongful business conduct "in

6  whatever context such activity might occur." *Cel-Tech Commc'ns, Inc. v. Los Angeles*

7  *Cellular Tele. Co.*, 20 Cal. 4th 163 (1999) (citation omitted); *Cal. Bus. & Prof. Code §*

8  *17200*.  Because the statute is written in the disjunctive, it is violated where a defendant's

9  act or practice is (1) unlawful, (2) unfair, (3) fraudulent, or (4) in violation of section

10  17500 (false or misleading advertisements). Each prong of the UCL is a separate and

11  distinct theory of liability and offers an independent basis for relief. *South Bay Chevrolet*

12  *v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999).

13        The UCL is not limited only to the return of money or property that was once in

14  the possession of that person. Instead, restitution is broad enough to allow a plaintiff to

15  recover money or property in which he or she has a vested interest. *See Juarez v. Arcadia*

16  *Fin., Ltd.*, 152 Cal. App. 4th 889 (2007) (citing *Korea Supply Co. v. Lockheed Martin*

17  *Corp.*, 29 Cal. 4th 1134 (2003). Plaintiff and all other consumers have a vested property

18  right in their homes and an interest to have their homes restored to a defect-free condition.

19        Segura satisfies the requirements of *In re Tobacco II* to bring a UCL class action.

20  Only the named class representative is required to establish standing in a UCL class

21  action. *In Re Tobacco II Cases supra* at 315-316.  Additionally, under *In re Tobacco II*, a

22  plaintiff acting as a proposed class representative does not need to prove individualized

23  reliance or harm to unnamed class members to obtain class certification of a UCL claim

24  involving misrepresentations about a product. *Tobacco II, supra* at 306, 326.  Instead, the

25  focus of the UCL is on the defendant's conduct.  *Tobacco II supra* at 324.

26        The extent of Segura's reliance on Pulte's representations regarding wet Cocoon

27  insulation were not previously before the Court in the prior motions. Segura specifically

28  relied on representations about Cocoon insulation to complete the purchase of his home

---

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

from Pulte.  Prior to closing, while the home was still being built, Mr. Segura was upset

to discover wet insulation installed in the uncompleted home. (Parks Decl. Filed 2/1/10,

Ex. "C", p.155:11-156:1, 164:9-25.)  Segura took his concerns about the wet insulation to

Pulte representatives and spoke with them.  (Parks Decl. Filed 2/1/10, Ex. "C", p. 165:20-

22, 168:16-169:18, 368:15-23.)  Pulte representatives  represented to Mr. Segura that he

should not worry about the wet Cocoon insulation, everything is taken care of,  the

insulation is wet and its going to be like that.  (Parks Decl. Filed 2/1/10, Ex. "C", p.

369:7-11. 168:2-13.)  Mr. Segura was  told "don't worry about it.  It will retain moisture

for about a year, and that eventually in the future it will dry out."  (Parks Decl. Filed

2/1/10, Ex. "C", p. 368:20-23.)  Mr. Segura relied on the representations and closed

escrow on the house in April, 2005. (Parks Decl. Filed 2/1/10, Ex. "C", p. 103:23-25)

Segura later discovered that Cocoon insulation in his home was still moist more than one

year later when mold was discovered and drywall was removed.  (Parks Decl. Filed

2/1/10, Ex. "C", p. 369:13-21.)  Mr. Segura believes he was deceived by Pulte.  (Parks

Decl. Filed 2/1/10, Ex. "C", p. 243:24-244:5, 258:4-12, 369:7-21.)

According to Pulte consumer marketing brochures, Cocoon insulation was "better

insulation" with proven "mold resistance" and "guaranteed for the life of your home."

(**Docket No. 134**, Parks Doc. Ex. "37", "38".)  Pulte marketed Cocoon Insulation to

"reduce risk, callbacks and warranty claims."  (**Docket No. 134**, Parks Doc. Ex. "37.")

USGF claimed the "Cocoon System" allowed for "an even distribution of moisture

throughout the wall." (**Docket No. 134**, Parks Doc. Ex. "44"; **Docket No. 133,** Parks

Decl. Ex. F, p, 168:2-13.)  USGF advertised to intended users that Cocoon insulation

"[d]oes not cause mold as many will claim!" (**Docket No. 134**, Parks Depo. Ex "58",

"59"; **Docket No. 132,** Parks Decl. Ex. E, p. 322:1-323:22.)  USGF advertised to intended

users that "drywall can be installed within 24 hours . . . allowing the builder to stay on

schedule." (**Docket No. 134,** Parks Doc. Ex. "58", "59.") Pulte advertised to consumers

its homes would provide "Performance for Life – The Way It Should Be." (**Docket No.

132,** Parks Decl. Ex. F, p. 71:8-14.)  Pulte advertised Cocoon insulation was superior to

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1   fiberglass and had a demonstration mock-up in its sales office to promote the Cocoon

2   insulation product as a feature in the Pulte homes.  (**Docket No. 133,** Parks Decl. Ex. G,

3   p. 60:7-16, 61:8-21; Ex. K, p. 51:4-22..)   As late as 2007, Pulte "boasted the benefits of

4   Cocoon Cellulose" even as late as July, 2007 after the clear knowledge of moisture and

5   mold caused by Cocoon insulation.  (**Docket No. 134,** Parks Doc. Ex. "154")

6        The application of *In Re Tobacco II* was recently explained in a court of appeal

7   decision reversing a trial court order denying class certification. *Weinstat v. Dentsply*

8   *International*, 180 Cal.App.4th 1213 (2010).

9        According to *Weinstat*:

10       In Tobacco II, our Supreme Court rejected the rationale that informed the
         trial court's decertification order. First, it held that Proposition 64's standing
11       requirements for UCL actions apply only to the class representatives.
         (Tobacco II, supra, 46 Cal.4th at p. 306.) Second, the standing requirements
12       as modified by Proposition 64 impose an actual reliance requirement on
         representative plaintiffs prosecuting a private enforcement action under the
13       fraud prong of the UCL. (Id. at p. 326.) Further, while only the class
         representative need establish personal reliance on the defendant's
14       misrepresentation or nondisclosure resulting in damage, the representative
         need not show that such reliance was " ' "the sole or even the predominant
15       or decisive factor in influencing his conduct. ... It is enough that the
         representation has played a substantial part, and so has been a substantial
16       factor, in influencing his decision." [Citation.] [¶] Moreover, a presumption,
         or at least an inference, of reliance arises wherever there is a showing that a
17       misrepresentation was material. [Citations.]' " (Id. at pp. 326–327.) A
         misrepresentation is "material" if a reasonable person would attach
18       importance to its existence or nonexistence in deciding his or her course of
         action in the transaction in question. (Id. at p. 327.) Finally, the class
19       representative need not demonstrate individualized reliance on a specific
         misrepresentation. (Ibid.)
20
    *Weinstat, supra*, 1222-1223.
21
         Pulte's defect admissions in its lawsuit against USGF and its specific
22
    misrepresentations made to Mr. Segura to induce him to rely on Pulte and go forward
23
    with the home purchase after Mr. Segura discovered the wet Cocoon insulation installed
24
    in the wall cavities, are actionable as violations of the UCL in a number of manners:
25
         ● A UCL claim based on unfair business practice to incorporate Cocoon insulation
26
    in violation of RORA/strict liability construction standards.  (Parks Decl. Ex. A, Compl.,
27
    ¶ 24-25, 75, 72); See *Barquis v. Merchants Collections Ass'n*, 7 Cal.3d 94, 113 (1972);
28

---

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1   *Zhang v. Superior Court* (2009) 178 Cal.App.4th 1081. 1089-1090 [UCL action can be

2   based on California Insurance Code §790 et seq. despite bar on private right of action];

3   ● A UCL claim based on the concealment of negative information about the

4   moisture defect with Cocoon insulation and its very specifically deceptive

5   misrepresentations and false advertising for this product. (Parks Decl. Ex. A, Compl., ¶

6   72-73); <u>See</u> *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir.

7   1997) ["While product superiority claims that are vague or highly subjective often amount

8   to non[-]actionable puffery, . . . misdescriptions of specific or absolute characteristics of a

9   product are actionable."]. Under *Tobacco II*, this claim extends to all original and

10  subsequent purchasers because each class member does not need to individually prove

11  reliance and that they were actually deceived.

12  ● A UCL claim based on Pulte's admission of the defect and its misleading

13  representations to Segura about Cocoon insulation is actionable. (Parks Decl. Ex. A,,

14  Compl., ¶ 71 [not of "merchantable quality"]; Parks Decl. Ex. E, p. 112:22-113:1, 113:11-

15  13; Ex. I, p. 221:25-222:4; Doc. Ex. "60", "77".) <u>See</u> *State Farm Fire & Cas. Co. v.*

16  *Superior Court*, 45 Cal.App.4th 1093, 1105 (1996) [§17200 claim actionable based on

17  party's violation of common law duty of good faith and fair dealing].

18  The UCL provides a hybrid basis for class certification under Fed.R.Civ.P. Rule

19  23(b)(2). Plaintiffs' claim for restitution, as well as a judicial declaration for enforcement

20  of a right to repair, is suitable for a class determination. Certification is consistent with

21  Rule 23(b)(2) because a class action is appropriate when "the party opposing the class has

22  acted or refused to act on grounds generally applicable to the class, thereby making

23  appropriate final injunctive relief or corresponding declaratory relief with respect to the

24  class as a whole." *Amchem Prods v. Windsor*, 521 U.S. 591, 614 (1997). The Court may

25  certify this case as a Rule 23(b)(2) class for all purposes except for damages, which it

26  could certify under a (b)(3), a practice commonly referred to as a "hybrid" approach.

27  *Robinson v. Metro-North Commuter RR*, 267 F.3d 147, 167 (2d Cir. 2001), cert denied,

28  535 U.S. 951 (2002); *Jefferson v. Ingersoll Int'l, Inc.*, 195 F.3d 894, 898 (7th Cir.1999)

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

21

1    Based on the additional facts and recent cases submitted in support of this motion,

2    Plaintiff respectfully requests the Court to consider certification under Rule 23(b)(2), in

3    addition to Rule 23(b)(3), to order Pulte to fix the defect.  See *FRCP Rule 23(d)(2), (5);*

4    *Probe v. State Teachers' Ret. Sys.*, 780 F.2d 776, 780 (9th Cir. 1986).

5    **V.    PLAINTIFF'S CLAIMS ARE TYPICAL TO THE CLAIMS OF THE
            CLASS**

6            Similar to commonality, the "typicality" requirement is a permissive standard.

7    *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Plaintiff's claims are

8    typical if they are "reasonably coextensive with those of absent class members . . . ." *Id.*

9    Segura has finished the prelitigation process.  He has Cocoon insulation in his wall

10   cavities.  Pulte made specific representations Segura relied on that the <u>wet</u> Cocoon

11   insulation was "fine" in his home.  "As long as the named representative's claim arises

12   from the same event, practice, or course of conduct that forms the basis of the class

13   claims, and is based upon the same legal theory, varying factual differences between the

14   claims or defenses of the class and the class representative will not render the named

15   representative's claim atypical." *Jordan v. County of Los Angeles*, 699 F.2d 1311, 1319

16   (9th Cir. 1982), vacated on other grounds, *County of Los Angeles v. Jordan*, 459 U.S. 810

17   (1982) 669 F.2d at 1321.  Mr. Segura's home is one of thousands of Pulte homes with

18   Cocoon insulation and one of the hundreds of homes identified with moisture damage and

19   mold associated with the Cocoon insulation. Mr. Segura's claims are typical of the class.

20   **VI.   ADEQUACY OF REPRESENTATION**

21           The adequacy factor requires that (1) Plaintiff and his attorney not be in any

22   conflict of interest with other members of the class, and (2) Plaintiff vigorously prosecute

23   the action through qualified counsel. *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d

24   507, 512 (9th Cir. 1978)  Plaintiff's counsel is not aware of any conflicts that impair

25   counsel's or the proposed representative's ability to vigorously prosecute this action.

26   Plaintiffs' counsel is qualified to handle this lawsuit. (**Docket No. 124,** Schimmel Decl.,

27   ¶¶ 1-5; **Docket No. 132,** Parks Decl. ¶¶ 1-3.)  Mr. Segura completed the opportunity to

28

---

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1    repair process contemplated by the RORA prelitigation procedures.  (Parks Decl, 2/1/10,

2    Ex. A, B.)  Mr. Segura is prepared to vigorously pursue remedies on behalf of the class.

3    (**Docket No. 125,** Segura Decl., ¶¶ 1-8.)

4            Mr. Segura has appeared for depositions and participated in this case.  Although

5    defendants may suggest a lack of knowledge regarding legal issues and procedures, Mr.

6    Segura is an adequate representative to pursue these claims for the class and is sincere in

7    his interest in doing so vigorously. (**Docket No. 125,** Segura Decl. ¶3; **Docket No. 132,**

8    Parks Decl. Ex. F, p. 352:23-353:2.)  *Brink v. First Credit Res.,* 185 F.R.D. 567, 571 (D.

9    Ariz. 1999) ("plaintiff need not possess no more than marginal familiarity with the facts

10   of his case, and need not fully understand the legal theories, particularly when he or she is

11   represented by competent counsel.")  Mr. Segura has also authorized his dismissal from

12   the *Kearl* action so that he can serve *solely* as the class representative in this action.

13   (**Docket No. 133,** Parks Decl. Ex. "S".)

14   **VII.    MANAGEABILITY OF THIS ACTION FOR ADJUDICATION AND
            TRIAL**

15

16           Rule 23(b)(3) requires "that a class action [be] superior to other available methods

17   for the fair and efficient adjudication of the controversy." *Fed. R. Civ. P. 23(b)(3)*. The

18   first factor to consider is the interest of each member in "individually controlling the

19   prosecution or defense of separate actions." *Fed. R. Civ. P. 23(b)(3)(A)*. This factor is

20   most relevant where each class member has suffered sizeable damages or has an

21   emotional stake in the litigation. See, e.g., *In re Northern Dist. of Cal., Dalkon Shield,*

22   *Etc.,* 693 F.2d 847, 856 (9th Cir. 1982).  Here, the primary component of harm and

23   remedy is the cost to remove and replace Cocoon Insulation and relief from the harm

24   caused by Defendants' defective product design and decisionmaking.  Pulte has admitted

25   to the defect.  This is the primary remedy being sought by Plaintiff on his own behalf and

26   on behalf of the class.

27           The second factor that the Court looks to is "the extent and nature of any litigation

28   concerning the controversy already commenced by or against members of the class." *Fed.*

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1    *R. Civ. P. 23(b)(3)(B)*. As to USGF, the only other two matters filed in California to

2    Plaintiffs' knowledge are the *McMillan* lawsuit in San Diego County Superior Court

3    (**Docket No. 133,** Parks Decl. Ex. O) and the *Pulte* lawsuit against USGF filed in

4    Riverside County (**Docket No. 132,** Parks Decl. Ex. B.)  Neither of these actions are class

5    actions involving the Cocoon insulation product and neither falls within the class

6    definition proposed by Plaintiffs here.  With respect to the *Matalas v. Pulte* action, the

7    class allegations in *Matalas* were dismissed without prejudice in deference to this action

8    which has progressed much further than *Matalas*. (Parks Decl., 2/1/10, Ex. D, E.)  With

9    respect to Pulte, Mr. Segura agrees to his dismissal from the *Kearl* action in San

10   Bernardino County Superior Court.   Therefore, there is no overlapping jurisdiction and

11   no chance of inconsistency while this Court exercises jurisdiction.

12          The third factor is "the desirability or undesirability of concentrating the litigation

13   of the claims in the particular forum." Fed. R. Civ. P. 23(b)(3)( C).  The Plaintiff and

14   nearly all of the proposed class are located in Southern California.  Most of the proposed

15   class resides within the Central District of California (San Bernardino, Riverside, Los

16   Angeles, Orange, Ventura Counties).  Many of the witnesses and most of the evidence are

17   found predominantly in Southern California.  Pulte has all of its documents in a

18   centralized document depository.

19          The fourth and final factor to be considered is "the difficulties likely to be

20   encountered in the management of a class action." Fed. R. Civ. P. 23(b)(3)(D). Here,

21   manageability is minimal.  Unlike so many class actions which seek "nationwide" class

22   certification, Plaintiffs' class action is limited <u>solely</u> to California and arises solely under

23   California law. <u>Compare</u> *In re Rhone-Poulenc Rorer, Inc.*, 51 F.3d 1293, 1300-02 (7th

24   Cir.), cert. denied, 133 L. Ed. 2d 122, 116 S. Ct. 184 (1995) (class certification

25   inappropriate in a products liability lawsuit involving reference to the laws of fifty states).

26          The case will be manageable as a class action because Pulte has already admitted

27   the Cocoon Insulation is defective.  The tort claims are all subject to RORA.  There are

28   no "economic loss" limitations to Plaintiff's claims.  Plaintiff is not required to prove

---

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

1 individual reliance and harm for each class member. All of the class members reside in

2 California and the majority of class members reside in counties located within the Central

3 District of California. "It is not a case in which, because class members are scattered

4 around the country and proceeding under the laws of different states, determination of

5 class-wide issues would require the judge to create a composite legal standard that is the

6 positive law of no jurisdiction. . . All the class members are residents of the same state

7 and are proceeding under the same federal and state laws." *Mejdrech v. Met-Coil Systems*

8 *Corp.*, 319 F.3d 910, 912 (7th Cir. 2003) (internal citations omitted).

9 **VIII.   APPOINTMENT OF CLASS COUNSEL**

10         Rule 23 (g) governs the standards and framework for the selection of class counsel

11 for a certified class. "The rule articulates four criteria that the district court must consider

12 in evaluating the adequacy of proposed counsel. The four mandatory considerations are:

13 (1) the work counsel has done in identifying or investigating potential claims in the

14 action; (2) counsel's experience in handling class actions, other complex litigation, and

15 claims of the type asserted in the action; (3) counsel's knowledge of the applicable law;

16 and (4) the resources counsel will commit to representing the class. *Fed. R. Civ. Proc.*

17 *23(g)(l)(C)(i).* Information relevant to each of these criteria is set forth in the

18 accompanying declarations of lead counsel, Alan Schimmel and Michael Parks. Each of

19 the lawyers identified above has substantial experience in construction and consumer

20 class actions and is well-qualified to represent the interests of the class.

21 **IX.   CONCLUSION**

22         For the foregoing reasons, Plaintiff respectfully requests this Court to grant his

23 motion for class certification.

24 DATED: February 1, 2010            SCHIMMEL & PARKS
                                      *A Professional Law Corporation*

25

26

27                                    By: _____
                                          Alan I. Schimmel
28                                        Michael W. Parks
                                          Attorneys for PLAINTIFFS

---

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION FOR CLASS CERTIFICATION

25