O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

| Present: The Honorable | A. HOWARD MATZ, U.S. DISTRICT JUDGE | |
|---|---|---|
| Stephen Montes | Not Reported | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys **NOT** Present for Plaintiffs:          Attorneys **NOT** Present for Defendants:

**Proceedings:**          IN CHAMBERS (No Proceedings Held)


       This action is before the Court on Plaintiff Emilio Segura's third motion for class certification under Federal Rules of Civil Procedure 23(b)(3)and 23(b)(2).[1]   For the following reasons, the Court DENIES the Motion.[2]

# I.     FACTS

       The Court and parties are familiar with the factual background and procedural history of this case.   The Court will provide only a brief overview here.

       On March 30, 2009, the Court denied Plaintiffs' first motion for class certification because Plaintiffs failed to allege questions of law or fact common to the class, to show that the claims of the named Plaintiff Emilio Segura[3] were typical of the class, or to show

---

       [1] Plaintiff seeks to certify his RORA claims under Rule 23(b)(3), and his UCL claims as a Rule 23(b)(2) class for all purposes except the issue of damages, which Plaintiff seeks to certify under Rule 23(b)(3).

       [2] Docket No. 178.

       [3] In the Court's March 30, 2009 Order denying the first motion to certify the class, the Court noted that "Emilio Segura is the only named Plaintiff who could serve as a named representative of the putative class . . . ." Accordingly, hereafter, the Court refers to Plaintiff in the singular throughout this Order.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al*., v. U.S. GREENFIBER, LLC, *et al.* | | |

that Segura is an adequate class representative. Plaintiffs also failed to show the predominance of questions common to the class, and the superiority of the class action method to the non-judicial remediation mechanism available under California's "Right of Repair Act," Cal. Civil Code § 895, et seq. ("RORA").[4] Additionally, Plaintiffs' proposed class was poorly defined.

Plaintiff then amended his complaint to allege a specific claim under RORA. On May 18, 2009, Plaintiff filed a second motion for class certification. In that motion, he sought to certify essentially the same classes that he now seeks to certify. These classes were defined in the First Amended Complaint ("FAC") as:

> 35. The Plaintiff RORA class is defined as follows: All persons who currently own residential homes built by Pulte Homes in the state of California and sold as new on or after January 1, 2003, that incorporate Cocoon insulation manufactured by Defendant U.S. Greenfiber (hereinafter the "Plaintiff RORA class").

> 36. Plaintiff sub-class No. 1 is defined as: All persons wherever situated in the state of California who currently own residential homes built in the state of California and sold as new on or after January 1, 2003, that incorporate Cocoon insulation by Quality Interiors, Inc. (hereinafter the "Quality Interiors Sub-Class").

FAC ¶¶ 35-36. In his now-pending Amended and Corrected Motion for Class Certification, Plaintiff seeks to certify a class of:

> All Pulte homeowners in the State of California who own homes built and sold by Pulte on or after January 1, 2003 that contain Cocoon insulation manufactured by U.S. Greenfiber LLC. Included in this class are two subclasses: a) a subclass of these California homeowners whose Pulte-built homes were installed with the Cocoon insulation by Quality Interiors, Inc.; [and] b) a subclass of these California homeowners who own Pulte-build homes and were *original purchasers* of the homes.

(Amended and Corrected Notice of Mot. and Mot. for Class Cert. at 2.) However, an

---

[4] This Act is sometimes referred to as the "Right to Repair Act" or "S.B. 800."

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

"original purchase" subclass is not referred to in the FAC, and thus the Court will not consider it for purposes of the instant motion. *See Costelo v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D.Cal. July 16, 2009) (Selna, J.) ("The Court is bound to class definitions

provided in the complaint and, absent an amended complaint, will not consider certification beyond it.")

On September 14, 2009, the Court denied the second motion for class certification, finding (among other things) that because Plaintiff Segura had not pursued RORA's mandatory prelitigation requirement, he was not an adequate class representative.   The Court did not make a finding as to any of the remaining Rule 23 requirements.  The Court granted leave to renew any class certification motion "if [Segura] does comply with [the prelitigation] requirement."  The Court did not make a ruling as to whether all putative members of the class needed to comply with RORA's prelitigation requirement.

On January 4, 2010, Segura informed the Court that he had completed RORA's prelitigation procedures, and that Pulte had denied his claim for repairs.  Accordingly, the case was placed on active status and on February 1, 2010, Plaintiff filed the present motion for class certification.  On May 19, 2010, the Court requested from each party additional information pertaining to Plaintiff's allegations and claims and the class certification motion. (*See* Dkt. No. 194.)  The parties submitted their responses on May 26, 2010.  (*See* Dkt. Nos.198, 200, and 201.)[5]

## II.   PLAINTIFF'S RORA ALLEGATIONS AND PROPOSED CLASS DEFINITION

As the Court noted in its September 14, 2009 Order, the FAC does not mention any specific provision of RORA that Defendants allegedly violated.   Instead, the entirety of the RORA claim alleged in the FAC is as follows:

---

[5] In his Motion, Plaintiff does not suggest that certifiability should be analyzed separately as to each Defendant.  Because the putative members of the class and both subclasses all are homeowners whose homes were built by Pulte, the Court's analysis will focus on Plaintiff's theory of liability as to Pulte.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

    a.    Cocoon insulation violates specific details and standards regarding moisture, excessive condensation and the introduction of unintended water into residential dwellings;

    b.    Cocoon insulation violates standards against interference with the useful life of homes built by Pulte and standards against interference with other building components and features incorporated into Pulte homes, including, but not limited to home performance and occupancy, efficiency, and the condition of other building components found in and around the building cavities where Cocoon insulation is incorporated;

    c.    Cocoon insulation violates safety and health standards against the introduction of moisture through wall cavities and into residences;

    d.    Cocoon insulation violates standards against causing defects and damage to Plaintiff SEGURA's home and the homes of other Plaintiff RORA class members [sic] homes and other building components found in their Pulte homes.

FAC ¶ 53.

    In his moving papers on the class certification motion, Plaintiff mentions five of RORA's specific construction standards that Defendants allegedly violated.[6]  (See Mot. at 11-12.)  These are also the specific statutory violations that Segura raised with Pulte in the prelitigation procedure.  These statutory provisions state:

    1)    "Stucco, exterior siding, exterior walls, including, without limitation, exterior framing, and other exterior wall finishes and fixtures and the systems of those components and fixtures . . . shall be installed in such a way so as not to allow unintended water to pass into the structure or to pass beyond, around, or through the designed or actual moisture barriers of the system, including any internal barriers located within the system itself.  For

---

[6] Plaintiff also mentioned these five building standards in his briefs on the previous motion to certify.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

           purposes of this paragraph, 'systems' include, without limitation, framing, substrate, flashings, trim, wall assemblies, and internal wall cavities, if any." Cal. Civ. Code § 896(a)(10).

2)      "Stucco, exterior siding, and exterior walls shall not allow excessive condensation to enter the structure and cause damage to another component. For purposes of this paragraph, 'systems' include, without limitation, . . . wall assemblies, and internal wall cavities, if any." Cal. Civ. Code § 896(a)(11).

3)      "To the extent not otherwise covered by these standards, manufactured products, including, but not limited to, windows, doors, roofs, plumbing products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops, cabinets, paint, and appliances shall be installed so as not to interfere with the products' useful life, if any." Cal. Civ. Code § 896(g)(3)(A).

4)      "Structures[7] shall be constructed in such a manner so as not to impair the occupants' safety because they contain public health hazards as determined by a duly authorized public health official, health agency, or governmental entity having jurisdiction. This paragraph does not limit recovery for any damages caused by a violation of any other paragraph of this section on the grounds that the damages do not constitute a health hazard." Cal. Civ. Code § 896(g)(15).

The last statutory violation alleged by Segura is RORA's "catch-all" provision, which provides:

5)      "The standards set forth in this chapter are intended to address every function or component of a structure. To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage." Cal. Civ. Code § 897.

---

    [7] "'Structure' means any residential dwelling, other building, or improvement located upon a lot or within a common area." Cal. Civ Code § 895(a).

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

## III.   MOTION TO CERTIFY RORA CLAIMS

While Defendants put forth a number of arguments why the proposed class and claims fail to satisfy the requirements for certification under Rule 23, the main impediment to class certification is that any common issues raised by Segura's RORA claims (of which there are few, if any) do not predominate over individual ones. Thus, the Court will devote the majority of its analysis to the commonality and predominance requirements.

### A.   Legal Standard: Commonality and Predominance.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). In *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998) the Ninth Circuit noted,

> Rule 23(a)(2) has been construed permissively. All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.

Related to Rule 23(a)(2)'s commonality requirement is Rule 23(b)(3), which requires that common issues predominate over individual ones. Rule 23(b)(3)'s predominance requirement is "far more demanding" than the commonality requirement of Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24, 117 S.Ct. 2231, 138 L. Ed. 2d 689 (1997). "Rule 23(b)(3) requires a district court to formulate 'some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'" *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 57, 593 (9th Cir. 2010) (citing *Brown v. Am. Honda (In re New Motor Vehicles Canadian Export Antitrust Litig)*), 522 F.3d 6, 20 (1st Cir. 2008)). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon*, 150 F.3d at 1022.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

**B.      Proving a Claim under RORA in General**.

Section 942, which addresses the "sufficiency of claim for violation of Chapter 2 standards," states:

> In order to make a claim for violation of the standards set forth in Chapter 2 (commencing with Section 896), a homeowner need only demonstrate, in accordance with the applicable evidentiary standard, that the home does not meet the applicable standard, subject to the affirmative defenses set forth in Section 945.5. No further showing of causation or damages is required to meet the burden of proof regarding a violation of a standard set forth in Chapter 2 (commencing with Section 896), provided that the violation arises out of, pertains to, or is related to, the original construction.

Thus, as stated in section 942, in order to prove a violation of RORA, Segura will only need to "demonstrate . . . that [his] home does not meet the applicable standard, subject to [certain affirmative defenses]." *See also* Miller and Starr, 11 Cal. Real Est. § 29:2 (3d ed.) ("To prove actionable violations, homeowners need to demonstrate that the home does not meet the applicable performance standards."). Beyond this statutory directive, cases and commentary provide little guidance on how the "performance standards" enumerated in section 896 are to be interpreted. Below, the Court analyzes each of the specific construction standards that Segura alleges have been violated and explains why class certification is improper under each.

**C.      Plaintiff's Specific RORA Allegations.**

1.      <u>Cal. Civ. Code § 896(a)(10)</u>

*"Stucco, exterior siding, exterior walls, including, without limitation, exterior framing, and other exterior wall finishes and fixtures and the systems of those components and fixtures . . . shall be installed in such a way so as not to allow unintended water to pass into the structure or to pass beyond, around, or through the designed or actual moisture barriers of the system, including any internal barriers located within the system itself. For purposes of this paragraph, 'systems' include, without limitation, framing, substrate,*

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

*flashings, trim, wall assemblies, and internal wall cavities, if any.*"

The plain wording of this subsection states that certain fixtures and "systems" and "components" thereof shall be "installed in such a way so as not to allow unintended water to pass into the structure . . ."   Thus, in order to prevail on a claim under this subsection, Segura will need to show that cocoon web-blown cellulose insulation ("CWBCI") (assuming it is a "fixture" or "system" of one of the components listed in the subsection) was *installed* in such a way that allows unintended water to pass into his home.  The Court is not persuaded that this will be a question common to all class members.

As this Court noted in its March 30, 2009 Order denying Plaintiff's first motion for class certification, Defendants provided "persuasive evidence" that the conditions under which the insulation was installed varies substantially from home to home, including the amount of the insulation used, "the amount of water added to the insulation at the time of installation (which was performed by different subcontractors and workers at different sites)," and "the amount of time the subcontractors allowed the insulation to dry before covering it."  March 30, 2009 Order at 6.

Segura replies that the installation issue will be common to the class because (1) all of the Pulte homes in the proposed class were designed, specified, and built by the same builder (Pulte), and (2) Greenfiber (the manufacturer) provided Pulte with installation specifications and protocol.  These facts, even if true, would not establish that CWBCI was actually installed in the same way in each home.  The evidence provided by Defendants shows that the CWBCI was installed by various subcontractors and that the installation varied from home to home.  This includes:

- Evidence that the manufacturer's "recommendations for installation may not have been followed, resulting in a high amount of water in some of the cellulose insulation." *See*, *e.g.*, Oberg Report at 000013 (Dkt. No. 201-1 at 84).

- Evidence that different subcontractors applied the CWBCI, and used different types of application equipment, which is supplied by several different manufacturers.  *See*, *e.g.*, Oberg Report at 000027 ("Several pieces of

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-00151 AHM (JTLx) | | Date | September 22, 2010 |
|---|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | | |

equipment are needed to install cellulose.  There are several manufacturers supplying the industry, and there are also many operators using used equipment . . .  While one company may be contracted to do work, many crews, each with their own equipment will result in a potential for wide variation.") (Dkt. No. 201-1 at 104).

- Evidence that there were differing scope of work provisions in contracts between Pulte and each CWBCI installation contractors.  *See*, *e.g.*, Williams Decl. ¶ 13 (observing eight different scope-of-work provisions in contractors for six different insulation contractors, which "demonstrate that there are variations and differences in procedures and protocols for the installation of Cocoon which could impact its installed performance, as well as whether and how mold might develop behind cultured marble, mirrors and cabinets . . .") (Dkt. No. 201-2 at 203).

- Evidence of differences in application techniques, practices and equipment settings used by installers of CWBCI.  *See, e.g.*, Bowman Decl. ¶ 13 ("While Greenfiber's instructions provide the installed moisture level and the proper moisture level at cover of the product, the settings of the equipment and the actual application process are entirely within the control of the applicator."); ¶ 14 ("Various factors associated with the equipment and installation at the job site can affect moisture content of the product at application.  For example, the type of equipment used, number of tips on equipment, the tip size on the equipment, the ratio product to moisture, the flow rates of the product, the ratio of the product to recycled material, and the type of the equipment being used will all impact moisture content.") (Dkt. No. at 44).

- Evidence of differences in the amount of time that the CWBCI was allowed to dry before being enclosed by drywall or before other construction phases began.  *See, e.g.*, Williams Decl. ¶ C.4.C (available at Docket No. 201-2 at 194-96).

In sum, there is more than ample evidence—unrefuted by Segura—that the manner in

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al*., v. U.S. GREENFIBER, LLC, *et al.* | | |

which CWBCI was installed varied from home to home.[8]

Segura also argues that his theory of liability does not depend on the manner of installation, because "regardless of how the CWBCI is installed, it will cause a violation of RORA." (FAC ¶ 20; Pl's Supp. Br. at 1:3-4.) This is so, argues Plaintiff, because as Pulte itself supposedly admitted in a lawsuit that it filed, "CWBCI is a defect in wall cavities," and thus "does not meet RORA construction standards." (Pl's Supp. Br. at 1:6-7; 8-9.) Plaintiff fundamentally mis-characterizes Pulte's lawsuit, which it filed in state court against Greenfiber and various subcontractors. As to the subcontractors, Pulte alleged that they "failed to *install* the [CWBCI] at the kitchen and bathroom assemblies free from defects that caused damage to other building components . . ." and that they "failed to use reasonable care in the *construction, building, installing, and providing labor and materials for the installation* of the [CWBCI] at the kitchen and bathroom assemblies . . ." (Parks Decl., Exh. B at ¶¶ 31, 54) (emphasis added). Pulte alleged that Greenfiber breached its "duty to *inspect the installation* of the [CWBCI] performed by [the Defendant Subcontractors] . . . and [to inspect] the adequacy of the *installation specifications* and protocol for the installation of the [CWBCI] at the kitchen and bathroom assemblies." (*Id.* ¶ 58) (emphasis added). Pulte's complaint did include a claim for strict product liability against Greenfiber, but it was based on Greenfiber's alleged failure to "provide PLAINTIFF with proper and adequate *installation specifications and protocol for the installation* of [CWBCI] at the kitchen and bathroom assemblies . . ." (*Id.* ¶ 81) (emphasis added).

In any event, Segura argues, the mere installation of CWBCI into the wall cavities in and of itself leads to the unintended passage of water, and therefore, the insulation will *necessarily* be installed in a way that leads to the unintended passage of water in all homes. However, Segura—who has the burden of proof—has not explained how (or made any showing that) CWBCI leads to the "unintended passage of water" every time it is installed in Pulte homes, regardless of how it is installed. He is required to do so in order to meet his burden. *See* William B. Rubenstein, *et al*., Newberg on Class Actions (June 2010) § 3.1 ("The requirements of numerosity, commonality, and typicality

---

[8] The above-cited evidence is not exhaustive. For additional evidence that installation of CWBCI varied from house to house, see Pulte's Response to the Court's Request for Additional Information at pages 2-8.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | | Date | September 22, 2010 |
|---|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | | |

generally require factual showings by the plaintiff. . . . If the defendant disputes the plaintiff's allegations, the court may have to look beyond the pleadings and examine facts related to the merits in order to adjudicate these Rule 23 factors."); *Wal-Mart*, *supra*, 603 F.3d at 594 ("[W]hen considering class certification under Rule 23, district courts are not only at liberty to, but must, perform a rigorous analysis to ensure that the prerequisites of Rule 23 have been satisfied, and this analysis will often, though not always, require looking behind the pleadings to issues overlapping with the merits of the underlying claims.").

Plaintiff claims that "[t]he legal basis for establishing that CWBCI, itself, is a defect under RORA, is found in the strict liability standards of California law." Mot. at 2. He then claims to have "identified evidence [of this claim] in the form of Pulte's own lawsuit, internal corporate reports, and memoranda and deposition testimony . . ." *Id.*[9]

Segura has provided evidence that "[m]oisture can travel through interior walls of homes installed with the Cocoon insulation." Rizzo Dep. at 76:2-6, attached as Exh. E to Parks Decl. (Dkt. No. 132-3 at 29.) Segura argues that this evidence supports his contention that regardless of how it is installed, CWBCI will "allow unintended water to pass into the structure." The fact that moisture travels through interior walls of homes with CWBCI and that moisture travels to and from CWBCI is not surprising given that CWBCI is installed with upwards of 25% moisture content. But this does not automatically render it an actionable defect.

The evidence in the record (including evidence submitted by Segura himself) indicates that some of the above-described variations in how CWBCI was installed may affect whether it is defective (*i.e.*, whether it allows the unintended passage of water). These variables include (1) the amount of moisture added to the insulation during

---

[9] Elsewhere, Plaintiff argues that "for purposes of evaluating class certification, a . . . RORA cause of action is much closer to the breach of warranty construction defect cause of action . . . than to the common law strict liability and negligence causes of action. . . ." (Pl's Omnibus Reply Br. at 10.)

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

installation[10] and (2) the amount of time the insulation is allowed to dry before other phases of construction begin.[11]  Mark Williams, Greenfiber's building design and diagnostic expert, describes the general process by which CWBCI is installed and how it can create moisture problems:

> After the insulation is blown into the open wall cavity it is necessary, in most instances, for the product to dry to a lower moisture content before the wall is "closed in" with interior drywall, paint, and other interior finished [sic] such as mirrors and cabinets.

> Most construction materials can be and are installed when damp, wet, or with an elevated moisture content. . . . These and other building products should be allowed to "dry out" or harden before moving to the next phase of the construction process.  For example, interior wall paint should be allowed to properly dry before installing mirrors and cabinets over it.  If the paint is not allowed to dry properly, moisture and mold problems can and do arise.  The same principle applies to Cocoon insulation: the product must be allowed to dry properly before it is enclosed, or there will be a risk of moisture and mold problems."

Williams Decl. ¶¶ B.6-7 (Dkt. 201-2).

Segura's own allegations seem to indicate that another factor that affects whether the CWBCI creates a "moisture issue" is the location of the insulation.  Segura argues that the "moisture issue" arises when "water intrusion" from an outside source re-wets the insulation.  (Mot. at 13.).[12]  Moreover, other evidence (including that submitted by

---

[10] *See, e.g.*, Rizzo Dep. at 43:9-45:2, attached as Exh. E to Parks Decl. (Dkt. No. 132-3 at 10-12); Merigold Dep. at 116:7-14 (Dkt. No.  201-2 at 174).

[11] *See, e.g.*, Butolph Dep. at 61:8-15, attached as Exh. P to Parks Decl. (Dkt. No. 133-15 at 20); Cook Dep. at 96:18-97:5, attached as Exh. Q to Parks Decl. (Dkt. No 133-15 at 24); Merigold Dep. at 117:1-7 (Dkt. No.  201-2 at 175).

[12] *See also* Rizzo Decl. at 55:9-57:24, attached to Parks Decl. as Exh. E (Dkt. No. 132-3 at 20) (indicating that the concern with CWBCI was the "possible rate of drying in

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

Segura) indicates that when installed properly, CWBCI actually does *not* cause mold growth. *See* Cook Dep. at 96:18-97:5, attached as Exh. Q to Parks Decl. (Dkt. No 133-15 at 24); Williams Decl. ¶ A.7 (Dkt. 201-2 at 189) ("[W]hen installed properly in accordance with U.S. Greenfiber's instructions, Cocoon insulation performed as intended."). In other words, Plaintiff has not established that the mere inclusion of CWBCI in a Pulte-built home will prove the existence of a violation under this subsection. In addition to the reasons discussed above, because Segura and each homeowner would need to provide evidence relating to how CWBCI was installed in his

home to establish that it was installed in a manner that led to the unintended passage of water, this subsection is not suitable for class treatment.[13]

Finally (with respect to Segura's contention that because of CWBCI's inherent attributes it violates RORA regardless of how it is installed),[14] not only does section 896(a)(10) focus on the installation of an item covered by that subsection, but RORA

---

the event of a post-installation water intrusion event").

[13] *Greystone Homes v. Midtec, Inc.*, 168 Cal. App. 4th 1994 (2008) does not affect the foregoing analysis, nor does it do away with the showing that Plaintiff must make regarding the installation of CWCBI. *Greystone* merely affirmed that once a plaintiff proves the elements of the statute, no further showing of causation or damage is required under RORA. Thus, if Segura established that the insulation was "installed" in a manner that allowed unintended water to pass into the structure, he would not need to show that the structure was damaged as a result of that unintended water, or that any mold present in his home resulted from the insulation.

[14] In the FAC, Plaintiff alleges that "this is a class action claim that addresses solely the incorporation of a defective component into a residence." FAC ¶ 54. This allegation, along with Plaintiff's contention that CWBCI is a manufactured product, raises questions as to the viability of Plaintiff's theory of liability under RORA altogether. However, the Court need not resolve that issue in this Order.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

itself does not apply "in any action seeking recovery solely for a defect in a manufactured product. . . " Civ. Code § 896(g)(3)(E).  Although there is a dispute as to whether Cocoon insulation is a "manufactured product" (meaning that it is completely manufactured offsite) if Plaintiff is correct that it *is* manufactured offsite, then he cannot recover "solely for any defect in" it.

2.    Cal. Civ. Code § 896(a)(11)

"*Stucco, exterior siding, and exterior walls shall not allow excessive condensation to enter the structure and cause damage to another component. For purposes of this paragraph, 'systems' include, without limitation, . . . wall assemblies, and internal wall cavities, if any.*"

This subsection is not suitable for class certification because it has a causation element, *i.e.*, that CWBCI "cause[d] damage."[15]  Thus, assuming the subsection is applicable to CWBCI,[16] Segura would need to show that the insulation installed in his home caused damage to another "component" of the "system."  Plaintiff has not demonstrated that this showing can be made on a classwide basis, and the Court is persuaded that it would require individual proof of causation and damage.  For this reason, Segura's claim(s) under this subsection cannot be handled on a classwide basis.

3.    Cal. Civ. Code § 896(g)(3)(A)

"*To the extent not otherwise covered by these standards, manufactured products, including, but not limited to, windows, doors, roofs, plumbing products and fixtures, fireplaces, electrical fixtures, HVAC units, countertops, cabinets, paint, and appliances shall be installed so as not to interfere with the products' useful life, if any.*"

---

[15] In his motion to certify, Segura does not address the "causation" requirement of this subsection.  Instead, he treats § 896(a)(11) the same as subsection 896(a)(10) (discussed above), which does not have a causation requirement.

[16] The subsection, by its plain language, appears to apply only to "stucco, exterior siding, and exterior walls."

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

In order to prevail on a claim under this subsection, Segura would need to show that the Cocoon insulation was *installed* in a way that interferes with its own useful life. Thus, Segura's claims under this subsection would raise the same individual issues regarding the installation of CWBCI as his claims under 896(a)(10), discussed above.

4.    Cal. Civ. Code § 896(g)(15)

*"Structures shall be constructed in such a manner so as not to impair the occupants' safety because they contain public health hazards as determined by a duly authorized public health official, health agency, or governmental entity having jurisdiction. This paragraph does not limit recovery for any damages caused by a violation of any other paragraph of this section on the grounds that the damages do not constitute a health hazard."[17]*

In order to establish a violation of this subsection, Segura and each putative plaintiff will need to show that the home contains a "public health hazard[] as determined by a duly authorized public health official, health agency, or governmental entity having jurisdiction."[18]   Segura has not explained how he would establish the existence of a public health hazard on a classwide basis, or how that could be done efficiently. For that matter, Segura has not even shown that such a "public health hazard," as defined by the subsection, exists in his home. Segura argues that the California Legislature identified health and safety standards applicable to dwellings in California when it enacted Cal. Health & Safety Code § 17920.3, which provides, in relevant part:

Any building or portion thereof . . . in which there exists any of the following listed conditions to an extent that endangers the life, limb, health, property, safety, or welfare of the public or the occupants thereof shall be deemed and hereby is

---

[17] RORA does not define "public health hazard."

[18] It is unclear whether Segura would also need to show that his home was constructed in a manner that impaired the safety of the occupants of his home, or whether the mere presence of a "public health hazard" is sufficient to establish liability under this subsection. Neither party has addressed this question.

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

declared to be a substandard building: . . .

> (11) [Inadequate sanitation caused by] [d]ampness of habitable rooms.

Cal. Health & Safety Code § 17920.3(a)(11). Segura cannot rely on this language. It merely states that inadequate sanitation that endangers health constitutes a substandard building, which is not necessarily the same thing as a "determin[ation] by a duly authorized public health official, health agency, or governmental entity having jurisdiction" that the mold and dampness which Segura claims is present in his house constitutes a "public health hazard." Moreover, Segura has not addressed how such a vague concept as "inadequate sanitation" caused by dampness could be a public health hazard for thousands of persons whose susceptibility to such a health risk surely would vary enormously.

### 5.        Cal. Civ. Code § 897

> *"The standards set forth in this chapter are intended to address every function or component of a structure. To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage."*

Segura's claims arising under § 897 are not certifiable in a class action. Section 897 is a "catch-all" provision that renders actionable a violation of any other (*i.e.*, non-enumerated) building standard only if the defect "causes damage." Thus, Segura—and each homeowner—would need to show that the installation of CWBCI in his or her own home caused damage. Segura does not even attempt to explain how such a showing could be made on a classwide basis. Rather, he focuses his argument on explaining why the phrase "causes damage" is not limited by the "economic loss rule." Segura seems to imply that RORA's abrogation of the economic loss rule does away with his need to prove the elements of the claim—which, in the case of section 897, includes proof that the RORA violation "cause[d] damage." If that is Segura's point, it is incorrect; a plaintiff suing under section 897 must still show that the violation caused damage. For that reason alone, this subsection is not appropriate for classwide adjudication.

### C.    RORA's Affirmative Defenses and Remedies Raise Individual

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

**Issues.**

Two additional provisions in RORA render Segura's RORA claims unsuitable for class treatment: (1) Civ. Code § 945.5, which provides for affirmative defenses, and (2) Civ. Code § 944, which addresses remedies.

RORA includes a number of affirmative defenses that could affect Defendants' liability and that cannot be raised on a classwide basis. Section 945.5 provides that a defendant "may be excused, in whole or in part, from any obligation, damage, loss, or liability if the [defendant] can" establish one of the affirmative defenses. The affirmative defenses, which would vary from homeowner to homeowner, include:

> (a)   To the extent [the violation] is caused by an unforeseen act of nature which caused the structure not to meet the standard . . .
> (b)   To the extent [the violation] is caused by a homeowner's unreasonable failure to minimize or prevent those damages in a timely manner, including the failure of the homeowner to allow reasonable and timely access for inspections and repairs under this title . . .
>  (c)   To the extent [the violation] is caused by the homeowner or his or her agent, employee, general contractor, subcontractor, independent contractor, or consultant by virtue of their failure to follow the builder's or manufacturer's recommendations, or commonly accepted homeowner maintenance obligations . . .
>  (d)   To the extent [the violation] is caused by the homeowner or his or her agent's or an independent third party's alterations, ordinary wear and tear, misuse, abuse, or neglect, or by the structure's use for something other than its intended purpose.
> ***
> (g)   To the extent that the builder's repair was successful in correcting the particular violation of the applicable standard.

Cal. Civ. Code § 945.5(a)-(d), (g).

Second, the remedies that Plaintiffs may recover are not common to the class. RORA provides that a homeowner is entitled to damages for:

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | | Date | September 22, 2010 |
|---|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | | |

> [T]he reasonable value of repairing any violation of the standards set forth in this title, the reasonable cost of repairing any damages caused by the repair efforts, the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet the standards, the reasonable cost of removing and replacing any improper repair by the builder, reasonable relocation and storage expenses, lost business income if the home was used as a principal place of a business licensed to be operated from the home, [and] reasonable investigative costs for each established violation . . .

Cal. Civ. Code § 944.   Contrary to Segura's unsubstantiated assertion that  there will only be "slight variations in the nature and amount of repairs to homes," a variety of factors will affect the cost of repairs and storage expenses.  These factors include the location of CWBCI, the contents of a room, and variations in wall finishes and fixtures.  (*See* Pond Decl. ¶¶ 4-5 [discussing various factors that will affect the cost of repairs].)  Nor does Segura address how "the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet the standards" can be assessed on a classwide basis. The FAC itself discusses the potential damage caused to individual homes as the result of CWBCI, including moisture damage to the structure and fixtures in a home, mold growth, and "corrosion in building components which can create a danger to structural integrity . . ."  (FAC ¶ 20).  To the extent that CWBCI caused damage to any home, the homeowner would need to individually substantiate his or her claim.  As the California Court of Appeal found in *Evans v. Lasco Bathware, Inc.*, 178 Cal. App. 4th 1417 (2009), the presence of individual questions of damages can defeat class certification even if common questions of liability exist.   The plaintiffs in *Evans* sought certification of their claims that Lasco "manufactured defectively designed shower pans that caused the pans to leak and cause water damage to adjacent shower components."  *Id*. at 1423.   The plaintiffs sought damages covering the cost to replace the shower pans in each class member's home.  *Id*. at 1427.   The court found that the "actual costs of replacement were not amenable to estimation because the costs associated with removing and replacing each individual shower pan could vary widely from one class member to the next."   *Id*. at 1428.   As is the situation here, the *Evans* court observed that there was

> a wide variety of construction materials and methods used to install the shower pans, as well as a wide variety in the type of finish materials that would be used,

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

and therefore it would be necessary to conduct individualized damage determinations for the costs to replace the pans even if no extensive consequential damage to adjacent components was uncovered and needed repair.

*Id.* On these facts, the court held that it was not an abuse of discretion for the district court to conclude that "the sole common issue (whether the shower pan was defectively or negligently designed) did not predominate over individualized questions of damages[.]" *Id.* at 1427.

In sum, Segura's claims under RORA would require individual proof on a number of issues, and thus common issues of fact or law do not predominate over individual ones.[19]

## IV.   UCL CLAIM

Segura also seeks to certify his claims brought under California's Unfair Competition Law, Bus. & Prof. Code § 17200 *et seq.* Plaintiff seeks to certify his UCL claim for restitution and for a judicial declaration for enforcement of a right to repair pursuant to Fed. R. Civ. P. 23(b)(2), which provides that a class action "may be maintained if Rule 23(a)[20] is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or

---

[19] It is unnecessary for the Court to analyze the remaining requirements of Fed. R. Civ. P. 23(a) and (b).  The Court does note, however, that Segura has not shown that a class action is "superior to" RORA's prelitigation procedure. *See* Fed. R. Civ. P. 23(b)(3) ("A class action may be maintained if Rule 23(a) is satisfied and if . . . the court finds that . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.").

[20] Rule 23(a) addresses the requirements of numerosity, commonality, typicality, and representativeness.

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

corresponding declaratory relief is appropriate respecting the class as a whole[.]"  Plaintiff
argues in his class certification motion that to the extent his UCL claim seeks damages, it
could be certified pursuant to Rule 23(b)(3).  However, damages are not available to a
private citizen under the UCL, *see Korea Supply Co. v. Lockheed Martin Corp*. (2003) 29
Cal.4th 1134, 1143, 1150 (2003), and thus any claim under the UCL would be limited to
restitution and equitable relief.

Plaintiff previously sought to certify his UCL claims.  Here is how the Court
described that effort in its September 14, 2009 Order:

> Plaintiffs' UCL claim is based on three allegations. The first is that Pulte violated
> RORA's construction standards.  FAC ¶ 75. The second is that Pulte used false and
> deceptive advertising to conceal the risks and dangers of Cocoon insulation from
> the original purchasers of Pulte homes.  FAC ¶¶ 72-73. The third is that Defendants
> Pulte and U.S. Greenfiber violated express and implied warranties of
> merchantability and useful life.  FAC ¶ 71. Pursuant to these claims, Plaintiffs seek
> injunctive relief, restitution and disgorgement of profits, and a judicial declaration
> "for enforcement of a right to repair under RORA."

The Court first noted that the class definition was inadequate as to the UCL claim
because it included "current owners of Pulte-built homes who did not purchase their
homes from Pulte and thus have no claim to restitutionary relief under the UCL."  9/14/09
Order at 14.  This finding remains applicable to the first subclass described in Plaintiff's
motion papers. [21]

In addition to finding that Plaintiff's UCL class definition was inadequate, the Court
in its September 14, 2009 Order found that (1) Segura's UCL claim based on RORA was
precluded by Cal. Civ. Code § 943, which precludes any "cause of action for a claim
covered by this title;" (2) Segura's UCL claim based on false and deceptive advertising
could not be certified because "Defendants have presented deposition testimony by the

---

[21] As noted above, the Court is bound to consider the class definition provided in
the FAC, notwithstanding Plaintiff's assertion in his Amended and Corrected Motion for
Class Certification that he is seeking to certify a **second** subclass **consisting of** only
original purchasers of Pulte homes.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

named Plaintiff, Mr. Segura that he did not rely on any marketing or advertising concerning Cocoon insulation or guarantees regarding mold resistance;" and (3) "Plaintiffs' summarily alleged [UCL] claim based on express and implied warranties by Greenfiber and Pulte" was not suitable for class treatment because "Plaintiffs' class definition includes homeowners who are not in privity with either Greenfiber or Pulte and thus cannot bring a warranty claim against them."

In the present motion, Segura discusses only his allegations that Pulte falsely advertised CWBCI and concealed information about its negative qualities.   Segura argues that he has properly alleged reliance and therefore satisfied the requirements set forth by the California Supreme Court in *In re Tobacco II*, 46 Cal. 4th 298 (2009).  As this Court explained in its September 14, 2009 Order,

> The California Supreme Court recently held that *only* the named Plaintiff in a class action suit must show *actual reliance* on deceptive advertising.  *In re Tobacco*, 46 Cal. 4th at 306.  "Actual reliance" is evaluated "in accordance with well-settled principles regarding the element of reliance in ordinary fraud actions," but where the "plaintiff alleges exposure to a long-term advertising campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the plaintiff relied on particular advertisements or statements."  *Id.* at 306, 328.  In addition, an inference of reliance arises when there is a showing that a reasonable man would attach importance to a misrepresentation's existence or nonexistence in determining his choice of action.  *Id.* at 327.

9/14/09 Order at 16.  The Court held that Segura failed to meet the threshold requirements of actual reliance set forth in *In re Tobacco II*, because Defendants had presented deposition testimony by Segura that he did not rely on any marketing or advertising concerning Cocoon insulation or guarantees regarding mold evidence.  *Id.*   In the present motion, Segura provides evidence that casts doubt on that finding.   Specifically, Segura provides evidence that prior to closing and while his home was still being built (1) he discovered that wet insulation was being installed in the uncompleted home, (2) he voiced these concerns to Pulte representatives, and (3) Pulte's representatives indicated to him that he should not worry about the insulation.  (*See* Mot. at 18-20 (citing Parks Decl., Exh. C).)  However, these representations are very specific to Segura.  They do not come close to "exposure to a long-term advertising campaign," nor is there any suggestion that

O

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|
| Title | DANIELLE KINGSBURY, *et al.*, v. U.S. GREENFIBER, LLC, *et al.* | | |

anyone other than Segura was exposed to these specific representations (or anything similar to them). Thus, they could not form the basis for certifying a UCL class. *See Kaldenbach v. Mutual of Omaha Life Ins. Co.*, 178 Cal. App. 4th 830, 849-50 (2009) (noting that "*In re Tobacco II* . . . involved identical misrepresentations and/or nondisclosures by the defendant[] made to the entire class," and finding that common issues of liability did not predominate because in this case there was "no such uniformity").

Segura does allege in the FAC that Pulte deceptively advertised CWBCI in a number of unspecified marketing brochures and other advertisements. (FAC ¶ 72.) He further alleges that he (and other class members) relied on these representations. (*Id.* ¶ 73.) However, these conclusory allegations fail to meet the heightened pleading requirements of Rule 9(b), which is applicable to these claims. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (finding that claims of misrepresentation under the UCL are subject to the heightened pleading requirements of Rule 9); William L. Stern, Bus. & Prof.C. § 17200 Practice (Rutter Group 2010) ¶ 7:81 ("[C]laims brought under the "fraudulent" prong of the UCL . . . must be pled with particularity under FRCP 9(b). Furthermore, this is equally true in cases alleging omissions. Moreover, when a claimant relies on a particular advertisement, he must 'articulate the who, what, when, where, and how of the misconduct alleged.' This is equally true for UCL claims alleging 'unfair' conduct."). Given that this defect is at least in theory curable, the Court reluctantly allows Plaintiff one more chance to amend his complaint to (1) allege the existence of a class that would be certifiable under the UCL, and (2) allege with greater specificity the misrepresentations that Defendants made to Segura and the entire class. Any such Second Amended Complaint must be filed by not later than October 14, 2010.

## V.    CONCLUSION

For the foregoing reasons, Segura's Motion to Certify is DENIED. Segura may file a Second Amended Complaint to allege a class definition and facts that would enable him to seek certification of a class for purposes of pursuing his UCL claim.

No hearing is necessary. Fed. R. Civ. P. 78; L. R. 7-15.

O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 08-00151 AHM (JTLx) | Date | September 22, 2010 |
|---|---|---|---|

| Title | DANIELLE KINGSBURY, *et al*., v. U.S. GREENFIBER, LLC, *et al.* |
|---|---|

|  | : |  |
|---|---|---|
| Initials of Preparer | | SMO |