1  Alan I. Schimmel, Esq.  SBN 101328
   Michael W. Parks, Esq.  SBN 154531
2  aischimmel@spattorneys.com
   mwparks@spattorneys.com
3  SCHIMMEL & PARKS
   15303 Ventura Blvd., Suite 650
4  Sherman Oaks, CA 91403
   Telephone: 818.464.5061/Facsimile: 818.464.5091
5
6  Attorneys for PLAINTIFF
   AND CLASS
7
8
9                    UNITED STATES DISTRICT COURT
10
               FOR THE CENTRAL DISTRICT OF CALIFORNIA
11
12
   DANIELLE KINGSBURY, EMILIO         )  Case No. CV 08-00151 AHM(AGRx)
13 SEGURA, PILIEN SEGURA, individually )  [Assigned to Dept. 14, Hon. A. Howard
   and on behalf of all others similarly )  Matz]
14 situated,                          )
                                      )  NOTICE OF CORRECTION OF
15                    Plaintiffs,     )  FILING DEFICIENCY RE: DOCKET
                                      )  NO. 257 AND LODGING OF
16 vs.                                )  CORRECT OPPOSITION
                                      )  DOCUMENT
17 U.S. GREENFIBER, LLC, a North      )
   Carolina business entity; PULTE HOME )
18 CORPORATION, a Michigan corporation; )  Motion Date:        November 7, 2011
   QUALITY INTERIORS, INC., a         )  Time:        10:00 a.m.
19 California Corporation; and DOES 1  )  Courtroom:  14
   through 1000, inclusive,           )
20                    Defendants.     )
                                      )
21
22
23        PLEASE TAKE NOTICE that Plaintiffs' counsel erroneously filed the incorrect
24 document [Docket 257] in opposition to Defendant's motion to compel arbitration
25 [Docket 245].  Plaintiffs herein lodge the correct opposition document to in place of the
26 document filed as Docket 257.  Attached hereto please find the following documents.
27
28

---

**NOTICE OF CORRECTION OF FILING DEFICIENCY RE: DOCKET NO. 257 AND LODGING OF CORRECT OPPOSITION DOCUMENT**

1  DATED: October 18, 2011

SCHIMMEL & PARKS
*A Professional Law Corporation*

Alan I. Schimmel
Michael W. Parks
Attorneys for PLAINTIFF AND CLASS

2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NOTICE OF CORRECTION OF FILING DEFICIENCY RE: DOCKET NO. 257 AND LODGING OF CORRECT OPPOSITION DOCUMENT**

2007-1025
36425.wpd

Alan I. Schimmel, Esq. SBN 101328
 aischimmel@spattorneys.com
Michael W. Parks, Esq. SBN 154531
 mwparks@spattorneys.com
**SCHIMMEL & PARKS**
*A Professional Law Corporation*
15303 Ventura Blvd., Suite 650
Sherman Oaks, CA 91403-3145
Telephone: (818) 464-5061
Facsimile: (818) 464-5091

Attorneys for PLAINTIFF AND
PROPOSED CLASS

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE KINGSBURY, EMILIO SEGURA, PILIEN SEGURA, individually and on behalf of all others similarly situated, | CASE NO. CV08-00151-AHM (JTLx) |
| Plaintiffs, | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO SEGURA UNDER 9 U.S.C.** |
| v. | |
| U.S. GREENFIBER, LLC, a North Carolina business entity; PULTE HOME CORPORATION, a Michigan corporation; QUALITY INTERIORS, INC., a California Corporation; and DOES 1 through 1000, inclusive, | Date:        November 7, 2011<br>Time:        10:00 am<br>Courtroom: No. 14<br>            312 North Spring Street<br>            Los Angeles, CA 90012 |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO SEGURA UNDER 9 U.S.C.**

2007-1025
36307.wpd

# **TABLE OF CONTENTS**

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iv

I.    INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   PULTE'S WAIVER OF ARBITRATION . . . . . . . . . . . . . . . . . . . . . . 2

III.  PULTE HAS COUPLED ITS MOTION TO COMPEL ARBITRATION WITH AN IMPROPER MOTION FOR RECONSIDERATION, WHICH CONFIRMS THE UNTIMELINESS OF THE MOTION TO COMPEL . . . . . . . . . . . . . . . . . 12

IV.  THERE IS NO AGREEMENT BETWEEN PULTE AND SEGURA TO BAR CLASS ACTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

V.   PULTE'S ARBITRATION CONTRACT IS UNCONSCIONABLE AND THE PRODUCT OF FRAUD IN THE INCEPTION . . . . . . . . . . . . . . . . . . . . . . 19

VI.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO SEGURA UNDER 9 U.S.C.**

i

1

## TABLE OF AUTHORITIES

2

**FEDERAL CASES**

3
*Acorn v. Household Int'l, Inc.,*
  211 F. Supp. 2d 1160, 1162 (N.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . 18

4

*Arthur Andersen LLP v. Carlisle,*
5  556 U.S. --, 129 S. Ct. 1896 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

6
*AT&T Mobility LLC v. Concepcion,*
  563 U.S. --, 131 S. Ct. 1740, 1748 (2011) . . . . . . . . . . . 1, 5, 9, 10, 12, 13, 18-20

7

*Bhatnagar v. Surrendra Overseas Ltd.,*
8  52 F.3d 1220, 1231 (3rd Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

9
*Blair v. Equifax Check Services, Inc.,*
  181 F.3d 832 837, 97th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

10

*Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.,*
11  50 F.3d 388,390 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

12
*De Souza v. Pulte Home,*
  2:08-CV-0337-LKK (E.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5, 18

13

*Doctor's Associates, Inc. v. Casarotto,*
14  517 U.S. 681, 687 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

15
*Fisher v. A.G. Becker Paribas Inc.,*
  791 F.2d 691, 694 (9th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

16

*Hoffman v. Constr. Co. v. Active Erectors & Installers, Inc.,*
17  969 F.2d 796, 798 (9th Cir.1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12

18
*Howsam v. Dean Witter Reynolds, Inc.,*
  537 U.S. 79, 83 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

19

*In Re DirecTV Early Cancellation Fee Marketing and Sales Practices Litigation,*
20  Case No. ML 09-2093 AG (Anx), (Dkt. 255, Order, September 6, 2011)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

21

*Kona Enterprises, Inc. v. Estate of Bishop,*
22  229 F.3d 877, 890 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

23
*Samson,*
  352 F.3d at 217 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

24

*Simula, Inc. v. Autoliv, Inc.,*
25  175 F.3d 716, 726 (9th Cir.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

26
*Steelworkers v. Werner & Gulf Nav. Co.,*
  363 U.S. 574, 582 (1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER
COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO
SEGURA UNDER 9 U.S.C.

2007-1025
36307.wpd

*United States v. King Features Entm't, Inc.,*
   843 F.2d 394, 399 (9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Van Ness Townhouses v. Mar Industries Corp.,*
   862 F.2d 754, 759 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*VIA Technologies, Inc. v. SONICBlue Claims, LLC,*
   Case No. C 09-2109 PJH, 2011 WL 1085322, *17 (N.D. Cal. Mar. 23, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Wal–Mart Stores, Inc. v. Dukes,*
   —— U.S. ——, 131 S.Ct. 2541, 180 L.Ed.2d 374 (2011) . . . . . . . . . . . . . . 19

*Will-Drill Res., Inc. v. Samson Res. Co.,*
   352 F.3d 211, 214 (5th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**STATE CASES**

*Broughton v. Cigna Healthplans of California,*
   21 Cal. 4th 1066, 1080 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Cruz v. PacifiCare Health Systems, Inc.,*
   30 Cal. 4th 303, 320 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Engineers & Architects Assn. v. Community Development Dept.,*
   30 Cal.App.4th 644, 653, 35 Cal.Rptr.2d 800(1994) . . . . . . . . . . . . . . . . . 15

*Graham v. Scissor-Tail, Inc.,*
   28 Cal. 3d 807, 819-20 n.16 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Platt Pacific, Inc. v. Andelson,*
   6 Cal.4th 307, 313, 24 Cal.Rptr.2d 597, 862 P.2d 158 (1993) . . . . . . . . . . 15

*St. Agnes Med. Ctr. v. PacifiCare of Cal.,*
   31 Cal.4th 1187, 8 Cal.Rptr.3d 517, 82 P.3d 727, 733 (2003) . . . . . . . . . . 3

*Ultimo v. Harper,*
   113 Cal.App.4th 1402 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**FEDERAL STATUTES**

*Federal Rules of Civil Procedure Rule 16(b)* . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Federal Rules of Civil Procedure Rule 23* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Federal Rules of Civil Procedure Rule 23(a)* . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Federal Rules of Civil Procedure Rule 23(f)* . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Federal Rules of Civil Procedure Rule 34(a)(1)* . . . . . . . . . . . . . . . . . . . . . . . . 5

*Federal Rules of Civil Procedure Rules  34(a)(2)* . . . . . . . . . . . . . . . . . . . . . . . 5

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO SEGURA UNDER 9 U.S.C.**

2007-1025
36307.wpd

1   *Federal Rules of Civil Procedure Rules 19-21* .................................. 17

2   **STATE STATUTES**

3   *California Civil Code §1654* .............................................. 18

4   *California Civil Code §931* .............................................. 13

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO SEGURA UNDER 9 U.S.C.**

2007-1025
36307.wpd

# I.      INTRODUCTION

Pulte's motion and grounds to compel arbitration are subject to clear waiver, laches and untimeliness under generally applicable contract rules.  Pulte has delayed after nearly four years worth of heavy litigation and invocation of the resources of this Court, as well as its admitted interference with any purported speedy arbitration process, to now attempt to shut down the *Kingsbury* case with a demand for arbitration.

The class in this case has already been certified.  At every stage of this case, Pulte repeatedly waived every clear opportunity and any purported right it ever could have had, to raise an issue of arbitration and/or move to compel arbitration. Even after *Concepcion* came down, Pulte continued to not claim arbitration and, instead, push the litigation and class certification process with this Court and the Ninth Circuit to a conclusion.  Only when it did not obtain the desired outcome on class certification after causing more judicial resources to be expended, did Pulte choose to change its course.

The evidence presented will show that it was Pulte's plan to deliberately and consciously lie in wait and choose not to pursue a claim of arbitration.  Pulte's conduct in this litigation, coupled with its one-sided, oppressive and unfair contract provisions, establishes unconscionability under state law..

Pulte could have moved to compel arbitration years ago if it wanted.  Pulte's motion for reconsideration accompanying its other arbitration motions, seek to push on a lie on this Court that Pulte could not move to compel arbitration in this case because *Discover Bank* was purportedly "controlling law" and Pulte could do nothing until *Concepcion* was decided.  The truth is, before it filed this motion and the false claim of discovering "new law", Pulte and its attorneys had been filing motions to compel arbitration in other federal and state court class action cases in California asserting that arbitration should be compelled against homeowner class

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO SEGURA UNDER 9 U.S.C.**

1   action lawsuits.  In those cases, Pulte argued that *Discover Bank* had <u>no</u>

2   application in California class action homeowner suits against Pulte involving the

3   same purchase agreement.  In fact, it obtained orders from another federal court in

4   California while *Kingsbury* was pending, *permitting it to compel arbitration* in a

5   homeowner fraud class action containing the same type of purported arbitration

6   and "joinder" as it is raising in this case.  Pulte's arbitration provisions are

7   unconscionable and waived under generally applicable state law.  Pulte's motion

8   to compel arbitration at this stage in this case is a sham pleading.

9        Accordingly, Plaintiff respectfully requests this Court to deny Pulte's

10  motion to compel arbitration outright.  Plaintiff also believes that there is

11  significant additional evidence raised by the claims and declarations of Pulte and

12  its attorneys which would conclusively establish gateway issues for disposition of

13  this claim for arbitration under state law, including issues of unconscionability and

14  waiver.  Plaintiff would request additional evidence to obtain further information

15  about Pulte's conduct and unfair business practices to support the grounds for

16  denying this motion, as permitted under applicable law.

17  **II.    PULTE'S WAIVER OF ARBITRATION**

18       To prove a waiver of a right to arbitrate, the party asserting the waiver must

19  show that the party seeking to compel arbitration (1) had knowledge of an existing

20  right to compel arbitration, (2) has acted inconsistently with that existing right,

21  and (3) has caused prejudice to the other side in so doing. *Fisher v. A.G. Becker*

22  *Paribas Inc.*, 791 F.2d 691, 694 (9th Cir.1986).  As a general concept of state

23  contract law in determining waiver of a purported contract right such as the right

24  to arbitration, a court can consider "(1) whether the party's actions are inconsistent

25  with the right to arbitrate; (2) whether the litigation machinery has been

26  substantially invoked and the parties were well into preparation of a lawsuit before

27  the party notified the opposing party of an intent to arbitrate; (3) whether a party

28  **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO SEGURA UNDER 9 U.S.C.**

2007-1025
36307.wpd

1  either requested arbitration enforcement close to the trial date or delayed for a long

2  period before seeking a stay; (4) whether a defendant seeking arbitration filed a

3  counterclaim without asking for a stay of the proceedings; (5) whether important

4  intervening steps [e.g., taking advantage of judicial discovery procedures not

5  available in arbitration] had taken place; and (6) whether the delay affected,

6  misled, or prejudiced the opposing party." *St. Agnes Med. Ctr. v. PacifiCare of*

7  *Cal.*, 31 Cal.4th 1187, 8 Cal.Rptr.3d 517, 82 P.3d 727, 733 (2003) (citations and

8  internal quotation marks omitted)

9        Pulte knew of any claimed right to arbitrate immediately from the outset of

10  this action.  The *Kingsbury* class action was initiated when a class action

11  complaint was filed in Los Angeles County Superior Court on November 15, 2007

12  and subsequently served on Pulte. (Parks Decl. Ex. "A".)  At all times from the

13  outset of this case, Mr. Segura's privity as an original purchaser was clearly

14  identifiable to Pulte.  Mr. Segura was expressly identified as a Plaintiff in the

15  complaint and was described as one of the "purchasers and owners of a new

16  home" that was "manufactured by Defendant Pulte."  (Parks Decl., Ex. A, ¶¶9, 12.)

17  Knowledge of a contractual right to arbitrate is imputed to the contract's drafter.

18  See *Hoffman v. Constr. Co. v. Active Erectors & Installers, Inc.*, 969 F.2d 796,

19  798 (9th Cir.1992) ("It cannot be said that Active lacked knowledge of the right to

20  compel arbitration. The contract itself called for arbitration of disputes ....").

21        Pulte's motion to compel arbitration springs from the false representation to

22  this Court in its motion for reconsideration that Pulte's ability to assert a right to

23  compel arbitration in this class action "while the *Discover Bank* Rule was in effect

24  would have been futile". [Dkt 248, p. 7:5-8.]  Pulte's counsel has represented to

25  this Court under oath that "Pulte had a good faith basis to believe that bringing a

26  motion to compel arbitration of plaintiff Segura's claims on an individual, and

27  class, basis was not possible under the *Discover Bank* rule that was the controlling

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER
COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO
SEGURA UNDER 9 U.S.C.**

1     California law on the issue of class action waivers during the class certification

2     process" [Dkt 248-1, p. 3:4-8.]

3         These representations are provably false.  Beginning in June 2008, while the

4     *Kingsbury* action was pending in this Court, Pulte was invoking the same

5     arbitration clause to move to stay the case and compel arbitration in the United

6     States District Court in the Eastern District of California in a homeowner class

7     action called *De Souza v. Pulte Home*, 2:08-CV-0337-LKK (E.D. Cal.) (later re-

8     named to *Dalie v. Pulte*).  This action involved claims of title insurance fraud

9     brought by a California homeowner as a class action against Pulte under the

10    California UCL.  (Parks Decl, Ex. "B".)   In response to the *"Discover Bank "*

11    argument made in *De Souza*, Pulte argued that this putative homeowner class

12    plaintiff "has not brought himself within this case law.  He has failed to come

13    forward with any evidence showing that the arbitration agreement was a consumer

14    contract of adhesion.  <u>Moreover, it cannot be said that any damages claimed by the</u>

15    <u>purchaser of a several hundred thousand dollar home would be predicably small,</u>

16    <u>as required for *Discover Bank* to apply.</u>"  (Parks Decl, Ex. "C", [*De Souza* Dkt 58,

17    p.9:6-9].)

18        Pulte continued to make the arguments in the Eastern District of California

19    to dismiss the homeowner class action based on the arbitration clause and

20    inapplicability of *Discover Bank* as controlling authority to Pulte's arbitration

21    provision.  Pulte flat out argued that "Plaintiffs cannot bring themselves within the

22    narrow exceptions outlined in *Discover Bank*  (Parks Decl, Ex. "D", [*De Souza*

23    Dkt 77, p.11:4].)[1]

24

---

25    [1]Pulte went so far as to suggest to the federal court in this case "if the Court is inclined to
find that the class action waiver is unconscionable, the proper remedy is not to invalidate the
26    entire arbitration provision, but only to sever the offending language because there is no evidence
that the class action waiver renders the arbitration provision 'permeated' by unconscionability."
27    Parks Decl. Ex. "E" [*DeSouza* Dkt. 91, p. 11:24-25, fn.11].

28      **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER
COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO
SEGURA UNDER 9 U.S.C.**

1   Judge Karlton's orders in this case specifically agreed with Pulte that there

2   was no showing that *Discover Bank* even applied to Pulte's homeowner arbitration

3   provision to render it unenforceable in a homeowner class action involving home

4   purchase disputes.   (Parks Decl, Ex. "F", [*De Souza* Dkt 61, p.15:7-23], "G",

5   [*Dalie fka DeSouza* Dkt 100, p. 17:19-18:24].) Yet, in an effort to hoodwink this

6   Court, Pulte's counsel claims in his supporting declaration, "Prior to the [sic]

7   *AT&T Mobility LLC v. Concepcion*, no judicial decision provided PULTE with a

8   basis to believe that the *Discover Bank* rule would not apply to invalidate the anti-

9   joinder provision of a homeowners claim with the claims or [sic] other

10  homeowners for [sic] relating to the purchase, construction and performance of a

11  home." [Dkt. 248-1, p.3:9-13.].  Clearly, the efforts Pulte achieved on

12  *DeSouza/Dalie* confirmed that *Discover Bank* was never "controlling law" whose

13  change mattered.  *Discover Bank* did not frustrate or render futile Pulte's ability to

14  move to compel arbitration.

15      Despite knowledge, means and ability to move to compel arbitration against

16  Segura, Pulte waived bringing any motion to compel arbitration against Segura or

17  the proposed class.  Instead, Pulte chose to proceed forward and commit Segura,

18  other proposed class members, Plaintiffs counsel and this Court to heavy litigation

19  and discovery practice in federal court.  See e.g. *Cabinetree of Wis., Inc. v.*

20  *Kraftmaid Cabinetry, Inc.*, 50 F.3d 388,390 (7th Cir. 1995) ("[I]nvoking judicial

21  process is presumptive waiver."(emphasis omitted)).

22      In contradiction to its own "no joinder" position in this motion, Pulte also

23  specifically undertook discovery under FRCP Rule 34(a)(1) and FRCP 34(a)(2) by

24  joining Segura with other homeowners to demand entry upon their land and

25  property for visual inspections, photographing and measurements of homes.

26  (Parks Decl. Ex. "H", "I".)  Pulte even served subpoenas "issued by the United

27  States District Court" for the purpose of joining these *third party* homeowners in

28  **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO SEGURA UNDER 9 U.S.C.**

2007-1025
36307.wpd

1  discovery to produce their homes in this action.  (Parks Decl. Ex. "J".)  Pulte

2  joined multiple homeowners in discovery proceedings in disregard of its purported

3  "no discovery" and "no joinder" provisions and at significant expense to

4  Plaintiff's counsel and the homeowners.[2]  (Parks Decl. ¶13.)

5       Pulte's claim that it never knew of any claim or demand of an identifiable

6  "original purchaser" class claim or an individual "original purchaser" claim

7  asserted by Segura, until after this Court certified the class on May 23, 2011 is

8  frivolous at best.

9       In its March 30, 2009 order denying class certification, this Court noted that

10  Plaintiff was seeking to certify a sub-class of "all Pulte homeowners who

11  purchased their homes from Pulte on or after January 1, 2003." [Dkt. 112, p. 2].

12  Plaintiff's first amended class action complaint filed on April 6, 2009 alleged a

13  specific class defined as "original purchasers of Pulte homes that incorporate the

14  defective Cocoon insulation" in the UCL cause of action and included a prayer for

15  restitution and restitutionary disgorgement on behalf of a class of "original

16  purchasers of Pulte homes" incorporating Cocoon insulation.  (Parks Decl. "M",

17  ¶69, Prayer, ¶9.)

18       This Court  afforded Pulte an opportunity to raise any question of

19  jurisdiction with this Court or the need for this Court to consider referring this

20  matter away from this Court to arbitration or another forum, when it issued its

21  Order to Show Cause on "why this Court should continue to assert jurisdiction" on

22  July 16, 2009. [Dkt. 147.]  In its collective response with the other defendants in

23  this case, Pulte argued to this Court "the parties have conducted costly discovery,

24

25       [2]Pulte rejected the notion that these inspections were part of any warranty or "right of
    repair" inspection process.  Pulte confirmed its inspections were going forward because "Pulte
26  subpoenaed the inspections of the Kearl, Mamo, Villalobos and Naff homes . . ." and the
    subpoenaed inspections of these third party homeowners' properties proceeded. (Parks Decl. Ex.
27  "K", p. 2; "Ex. "L".)

28  **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
    DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER
    COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO
    SEGURA UNDER 9 U.S.C.**

1    participated in a number of hearings, fully briefed two class certification motions,

2    and the Court issued an Opinion with a thorough analysis denying the first motion.

3    *The Court has been exercising the jurisdiction it still has, and should continue to*

4    *do so.*" [emphasis added] [Dkt. 149, p. 3:21-4:3.] In deciding to maintain this case,

5    this Court noted that "Defendants [including Pulte] contend that this Court *must*

6    *retain jurisdiction.*" [emphasis added] [Dkt. 154.]

7            Pulte's admission back on July 29, 2009 about the costly investment in this

8    case and the prejudice to the parties, including Plaintiff, if jurisdiction was taken

9    away from the Court is even more true today, *after* this Court has granted class

10   certification.  To date, in reliance on the litigation of this case as a class action,

11   Plaintiff's counsel has invested, by its counsel's good faith estimate, more than $2

12   million in attorney/support time and work product, resources, costs and

13   expenditures, to litigate this action for the benefit of the class that has been

14   certified.  (Parks Decl. ¶24.)

15           Pulte continued to be aware and presented with opportunities, if it so chose,

16   to make a motion or argument about arbitration.  Plaintiff's operative Second

17   Amended Complaint filed on October 10, 2010 specifically notified Pulte that

18   Segura was seeking to certify "An 'original purchaser' class of original purchasers

19   of residential structures build by Pulte in the state of California from January 1,

20   2003 to the present with Cocoon insulation."  (Parks Decl. Ex. "N", ¶68.)

21   Plaintiff's notice of motion and motion for class certification of the UCL cause of

22   action expressly identified the "original purchaser" class.  (Dkt. 217, p. 2.)

23           Repeatedly, in all four class certification motion proceedings leading up to

24   the order granting class certification, Pulte could have argued "arbitration" or

25   "joinder" issues in opposition to class certification but chose not to.  Even if

26   Pulte's unbelievable claim held water that Pulte was inhibited in bringing a motion

27   to compel arbitration for all of these years because of *Discover Bank*, it certainly

28   **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER
COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO
SEGURA UNDER 9 U.S.C.**

2007-1025
36307.wpd

1  could have made arguments about these provisions if it felt that these provisions

2  had bearing on manageability of this case as a class action.

3       For instance, Pulte could have argued in any of its prior motions for

4  classwide arbitration.  It also could have argued that while its purchase agreement

5  does not specifically ban "class actions", and the Court was suited to decide

6  liability on a classwide basis, Pulte would prefer to have this Court send part of

7  the to determine each class members' damages or restitution claim to separate

8  prove-up arbitrations after the liability trial for the class.  Indeed, Pulte's

9  agreement states that it will pay, up front, all fees and costs for each homeowners'

10  arbitration.  (See McConnell Decl, Ex. "A", (ESIG 122, ¶"I" ["We (Pulte) will

11  advance the fees and costs necessary to initiate and conduct the arbitration."].)  It

12  could have argued to this Court that once the class was certified and a trial was

13  held to determine Pulte's wrongful conduct under the UCL, each of the class

14  members would be able to present their proof  for recovery and restitution to an

15  arbitrator which Pulte was obligated to pay for.  Pulte made no such arguments in

16  any of its oppositions.  It simply waived them over and over.

17       By the time of the motion papers leading to the class certification, Pulte was

18  absolutely clear that "Segura's first proposed class in the [Second Amended

19  Complaint] is defined as 'an original purchaser' class of original purchasers of

20  residential structures built by Pulte in the state of California from January 1, 2003

21  to the present with Cocoon insulation." [Dkt. 224, p. 3:20-24.]  Pulte always had

22  the information it needed to know that the proposed class (which this Court later

23  certified), was an "original purchaser" class in privity with Pulte and its purchase

24  agreements.  On May 23, 2011, this Court certified an "original purchaser" class

25  under the UCL. [Dkt. 237.]  Pulte learned nothing new about whether or not to

26  move to compel arbitration from the class certification order, other than that now a

27  class was certified.

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO SEGURA UNDER 9 U.S.C.**

8

1    If Pulte wanted to, for the past four years, it could have moved to compel

2  arbitration against Segura or the class.  It acted inconsistent with those rights and

3  affirmatively litigated in this court and engage in heavy discovery and law and

4  motion.  Pulte's insistence on litigation in this Court and the lengths of the

5  litigation before this Court far exceed by many magnitudes and costs to Plaintiff,

6  the certified class, and their counsel who have been severely prejudiced if Pulte

7  thinks it can treat four years of litigation as if it never happened.  The prejudice in

8  this case is profound to the class and to counsel.

9    The picture of a clear waiver and inconsistent conduct to support the waiver

10  of arbitration becomes even more striking after the class has been certified.  As of

11  May 26, 2011, the date that the Court confirms certification [Dkt. 239], the

12  *Concepcion* case has been out for approximately 1 month.  While its preemption

13  of the *Discover Bank* rule really meant nothing to Pulte's motive or opportunity to

14  have moved to compel arbitration all this time, Pulte had choices to make after the

15  class certification order was issued to argue *Concepcion* if that is what it really

16  intended to do.  However, yet again, Pulte continued to litigate this case in federal

17  court and *not pursue arbitration*.  On June 2, 2011, Pulte filed a petition to the

18  Ninth Circuit Court of Appeal to appeal this Court's order granting class

19  certification.  Pulte now chose to invoke *appellate jurisdiction* and use the

20  resources of the Ninth Circuit Court of Appeal to continue to litigate and

21  challenge class certification issues.  (Parks Decl. Ex. "O".)  Pulte also committed

22  Plaintiff class counsel to expend time, money and resources to file a response to

23  Pulte's attack on this Court's order with the Ninth Circuit, which Plaintiff counsel

24  did.  (Parks Decl. Ex. "P".)

25    Pulte's argument that it had no choice but to file its petition in the Ninth

26  Circuit in an attempt to avoid this clear post-*Concepcion* waiver of arbitration is

27  facially frivolous and contrary to the law.  A motion for reconsideration based on

28

MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER
COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO
SEGURA UNDER 9 U.S.C.

9

1   *Concepcion* could have been filed with this Court within 14 days of the order

2   granting class certification and it would have *tolled the 14 day period to seek*

3   *review to the Court of Appeals under Rule 23(f).  Blair v. Equifax Check Services,*

4   *Inc.,* 181 F.3d 832, 837 97th Cir. 1999).  Pulte was not without a choice of whether

5   or not to petition the Ninth Circuit when it did.  It could have promptly asserted

6   arbitration and filed the motion for reconsideration or it could have waived

7   arbitration arguments yet again.  It chose the latter.

8       At this, or any of the late stages in this case particularly after the Second

9   Amended Complaint was filed and the case was certified, Pulte's motion would

10   still have been frivolous for the reasons set forth herein.  Simply put, Pulte's

11   decision to file its Petition with the Ninth Circuit to challenge this Court's order

12   granting class certification, and its decision not to file a motion for reconsideration

13   of the class certification order with this Court within the 14 day period based on

14   *Concepcion,* was the final nail in the coffin on the waiver issue.  After years of

15   litigation activities, the filing of the Petition was a clear and intentional

16   relinquishment of any right to raise *Concepcion* in the context of the class

17   certification order.

18       On August 11, 2011, the Ninth Circuit Court of Appeal denied Pulte's

19   petition.  (Parks Decl. Ex. "Q".)  On August 12, 2011, this Court issued and order

20   setting a further Rule 16(b) conference.  (Dkt. 242.)  On September 29, 2011, Pulte

21   and the other parties participated in their conference pursuant to Rule 26.  (Parks

22   Decl., ¶25.)  Having progressed through all of this litigation after 4 years and an

23   order granting class certification, Pulte has waived its demand for arbitration. *Van*

24   *Ness Townhouses v. Mar Industries Corp.,* 862 F.2d 754, 759 (9th Cir. 1988)

25   (holding that a defendant's delayed demand for arbitration following pleadings,

26   motions and pre-trial conferences indicated a "conscious decision to seek judicial

27   judgment on the merits of [the] arbitrable claims," and stating that "[t]his choice

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER
COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO
SEGURA UNDER 9 U.S.C.**

1   was inconsistent with the agreement to arbitrate such claims.").

2        An improper motive of Pulte has always been to force the litigation of

3   *Kingsbury* and force prejudice onto Plaintiff and his counsel to incur expenses and

4   burdens, even in lieu of arbitration.  This improper motive behind the delay and

5   waiver to pursue arbitration is clearly evident from filings in the *Matalas* state

6   court action.  As this Court will recall, *Matalas* was initially filed as a much

7   smaller and very limited class action case involving a single development without

8   any claims brought under the UCL.  (See Dkt. 147, p. 3.)  The plaintiffs in *Matalas*

9   dismissed all of those limited class allegations without prejudice pursuant to Court

10  order on December 2, 2009.  (Parks Decl. Ex. "R".)  In *Matalas*, Pulte had

11  repeatedly argued that the *Discover Bank* rule did not apply and that Pulte had a

12  right to compel class action arbitration over the Cocoon insulation issues.  (Parks

13  Decl. Ex. "S", "T".)  The same attorneys who claim to this Court that they never

14  believed that they could seek to compel arbitration against Segura in this case,

15  argued in *Matalas* that arbitration of that purported class action should be

16  compelled because "[t]he *Discover Bank* rule does not apply to this case."  (Parks

17  Decl. Ex. "T", p. 8:26-27.)

18       Mr. McConnell explained Pulte's motives and objectives in the *Kingsbury*

19  litigation back on November 12, 2009.  (Parks Decl. Ex. "U".)  According to Mr.

20  McConnell, it was Pulte's plan to keep litigating the *Kingsbury* case in federal

21  court *and hold off arbitration*.  Mr. McConnell stated "In the likely event that the

22  Federal Court denies class certification in the *Kingsbury* case a third time, that

23  case will amount to nothing more than a one home case, the Segura claim, that will

24  also be subject to Arbitration with PULTE" (Parks Decl. Ex. "U", ¶15, lines 5-6.)

25  After Matalas was dismissed, Pulte filed a statement in the *Matalas* arbitration

26  stating that arbitration in *Matalas* "should be stayed pending the outcome of the

27  class certification issue in the *Kingsbury* federal lawsuit."  (Parks Decl. Ex. "V",

28       **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO SEGURA UNDER 9 U.S.C.**

1  ¶2.)  Pulte went on to state "This matter should not proceed with Arbitration until

2  it is known that the *Kingsbury* action will or will not be certified as a class action

3  and that Claimants Chris and Diane Matalas will not be class plaintiffs in the

4  *Kingsbury* case."[3]   (Parks Decl. Ex. "V", ¶2.)

5        Pulte's arbitration provision states "The arbitration shall commence, be

6  conducted and concluded promptly, in accordance with the rules."  (McConnell

7  Decl, Ex. "A" [ESIG 122, ¶"F"].)  Pulte breached this provision and acted in a

8  dilatory manner to slow down and evade seeking arbitration.  Pulte has

9  affirmatively and deliberately chosen federal court class action jurisdiction over

10  arbitral jurisdiction in this case.  Prejudice to Plaintiff, the class and Plaintiff

11  counsel is established in this case.  See *Hoffman Construction Company, supra,*

12  969 F.2d at 799 (finding that the "staleness of the claim, and more importantly, the

13  subjection of [Plaintiff] to the litigation process in State Court, the discovery

14  process, [and] the expense of litigation" resulted in prejudice).  Pulte's motion

15  should be denied.

16  **III.  PULTE HAS COUPLED ITS MOTION TO COMPEL**

17  **ARBITRATION WITH AN IMPROPER MOTION FOR**

18  **RECONSIDERATION, WHICH CONFIRMS THE UNTIMELINESS**

19  **OF THE MOTION TO COMPEL**

20        Reconsideration is an "extraordinary remedy, to be used sparingly.  *Kona*

21  *Enterprises, Inc. v. Estate of Bishop,* 229 F.3d 877, 890 (9th Cir. 2000).  Facts and

22  arguments that *could have been presented* in the original motion will not provide

23  any basis to seek reconsideration.  Reconsideration motions should not be used to

24  _____

25        [3]Pulte's deliberate decision to slow-walk arbitration in cases strongly argues against
    entertaining its demand for arbitration.  "The overarching purpose of the FAA . . . is to ensure the
26  enforcement of arbitration agreements according to their terms so as to facilitate
    streamlined proceedings," *AT&T Mobility LLC v. Concepcion,* 563 U.S. --, 131 S. Ct.
27  1740, 1748 (2011) Pulte's tactics in this case have been the deliberate antithesis of speedy or
    streamlined proceedings if, indeed, it ever intended to seek to compel arbitration in this action.

28        **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**
    **DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER**
    **COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO**
    **SEGURA UNDER 9 U.S.C.**

1   engage in reargument over new facts or issues that inexcusably were not presented

2   to the court in the matter previously decided. *Bhatnagar v. Surrendra Overseas*

3   *Ltd.*, 52 F.3d 1220, 1231 (3rd Cir. 1995).

4        As explained above, Pulte blew the time frame in which to file a motion any

5   motion for reconsideration with this Court after the May 23, 2011 order, to stay its

6   time to file a Petition to the Ninth Circuit.  Instead, it proceeded to litigate in the

7   Ninth Circuit and not bring up *Concepcion*.

8        At this late stage, Pulte has filed an improper motion for reconsideration as

9   an adjunct to the motion to compel "arbitration" issue because it never asked this

10   Court to *consider* arbitration or "joinder" issues in the first place even though it

11   could have.  Pulte chose never to raise these issues in any of Plaintiff's four prior

12   motions for class certification leading up to the May 23, 2011 order granting class

13   certification. Pulte knew all long that it *could have raised* arguments over

14   arbitration or "joinder" at repeated stages in the case when presented with

15   pleadings and court orders regarding: 1) this Court's orders concerning whether it

16   should exercise jurisdiction; 2) Segura's status as an original purchaser in privity

17   with Pulte; 3) any issues or arguments by Pulte over manageability issues; 4) the

18   repeated identification of the "original purchaser" class for years in this case; 5)

19   the enforcement of statutory class action rights Plaintiff made to this Court under

20   RORA and *California Civil Code §931*.

21        Pulte cannot claim that *Concepcion* represents a change in *controlling* law

22   because Pulte repeatedly argued to courts across this state that *Discover Bank* was

23   never controlling law over its arbitration contract.  (Parks Decl. Exs. "B"-"E", "S"-

24   "T".)  Pulte also argued that any arbitration should be *stayed* in favor of this Court

25   exercising jurisdiction to determine class certification.  (Parks Decl. Ex. "V".)

26   Pulte put this litigation ahead of arbitration.  The only "change" in the law that

27   occurred was that Pulte bet wrong and this Court granted class certification, which

28       **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO**
           **DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER**
    **COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO**
               **SEGURA UNDER 9 U.S.C.**

2007-1025
36307.wpd

1  the Ninth Circuit refused to overturn.  These are not the kind of changes that merit

2  reconsideration.

3       Pulte's notice of motion to compel arbitration begs the question over how it

4  could be seeking reconsideration on the issue of arbitration if it is only now

5  moving to compel arbitration for the first time.  Whether or not a class was ever

6  certified, Pulte was always free to individually compel Segura into arbitration and

7  it failed to do so.   Moreover, Pulte's motion to compel arbitration is fatally

8  ambiguous because it is coupled with a motion to the for reconsideration to the

9  Court for an order to "allow[] Pulte *to compel each and every member of the class*

10  to individual arbitration of the claims certified." [emphasis added]. [Dkt 248, p. 6

11  of 27.]

12       Pulte argues that the class needed to be certified for Pulte to be able to

13  compel arbitration. Pulte's notice of motion and motion does not request

14  decertification.  It also only seeks to compel Mr. Segura, individually, into

15  arbitration.  There is no explanation or excuse how Pulte could not have known,

16  back in late 2007, that Mr. Segura was in privity of contract with it when it drafted

17  the contract that Mr. Segura signed.

18       The motion to compel arbitration is unclear over what Pulte is attempting to

19  accomplish regarding the class.  The class members in this certified class are not

20  being sought to be compelled into arbitration.  Yet, it appears that Pulte is

21  requesting this Court to issue some form of class notice to all class members so

22  that all of the approximately 10,000 class members will each have an arbitration

23  and that Pulte will deposit and advance all of the amounts necessary for the fees

24  and costs necessary for the arbitration of each of the 10,000 class members'

25  arbitration. (See McConnell Decl, Ex. "A", (ESIG 122, ¶"I".)

26       It is unclear if Pulte still wants this Court to decide the liability issue

27  regarding Pulte's wrongful conduct under the UCL and limit such arbitration to

28  **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO SEGURA UNDER 9 U.S.C.**

2007-1025
36307.wpd

1 | the referral of the accounting and prove-up process on the remedies and restitution

2 | amounts. All of these matters are beside the point however. If Pulte had wanted

3 | to pay for 10,000 separate arbitrations for each of the class members after this

4 | Court certified the class, Pulte could have argued to do so years ago leading up to

5 | the Court's May 23, 2011 class certification order. Since it failed to request or

6 | include a deposit of sufficient funds to pay for 10,000 arbitrations as part of the

7 | class action procedure, it is barred from doing so now in a belated and untimely

8 | motion for reconsideration.

9 |  If the Court considers entertaining this motion, Plaintiff would respectfully

10 | request discovery to ascertain all facts regarding Pulte's fraud, waiver and

11 | unconscionability in its purchase agreement provision. State law, rather than

12 | federal law, applies to determine if a contract to arbitrate is formed. *Arthur*

13 | *Andersen LLP v. Carlisle*, 556 U.S. --, 129 S. Ct. 1896 (2009). The FAA does not

14 | apply until the existence of an enforceable arbitration agreement is established

15 | under state law principles involving formation, revocation and enforcement of

16 | contracts generally. *Platt Pacific, Inc. v. Andelson*, 6 Cal.4th 307, 313, 24

17 | Cal.Rptr.2d 597, 862 P.2d 158 (1993); *Engineers & Architects Assn. v. Community*

18 | *Development Dept.*, 30 Cal.App.4th 644, 653, 35 Cal.Rptr.2d 800(1994).

19 |  Plaintiff and the class are entitled to discovery from Pulte and a full trial

20 | regarding the agreement to arbitrate if "the making of the arbitration agreement or

21 | the failure, neglect, or refusal to perform the same be in issue. 9 U.S.C. § 4."

22 | *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir.1999); *see also VIA*

23 | *Technologies, Inc. v. SONICBlue Claims, LLC*, Case No. C 09-2109 PJH, 2011

24 | WL 1085322, *17 (N.D. Cal. Mar. 23, 2011) Pulte neglected and refused to

25 | perform under the arbitration agreement and its breach is directly at issue to bar

26 | this demand. Plaintiff would also respectfully request to be able to set forth the

27 | total dollar amount in Plaintiff's attorneys fees and costs to support a showing of

28 | **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO SEGURA UNDER 9 U.S.C.**

2007-1025
36307.wpd

1  Plaintiffs' prejudice in this litigation and to demand full payment of these amounts

2  from Pulte.

3  **IV.    THERE IS NO AGREEMENT BETWEEN PULTE AND SEGURA TO**

4  **BAR CLASS ACTIONS**

5       Pulte's argument to turn its "joinder" provision into an agreement between

6  Pulte and Segura for a class action waiver is unconscionable and not supported by

7  the evidence.  The gateway issue of what the agreement was between Pulte and

8  Segura on this claim has never been litigated before this late date.

9       The policy of the FAA does not override the fundamental determination of

10  whether there is a valid agreement to arbitrate in the first instance. *Will-Drill Res.,*

11  *Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003). "Because the FAA is

12  at bottom a policy guaranteeing the enforcement of private contractual

13  arrangements, we look first to whether the parties agreed to arbitrate a dispute, not

14  to general policy goals, to determine the scope of the agreement." *Id.*  In

15  determining whether an agreement to arbitrate exists, we apply "ordinary contract

16  principles." *Id.* (citations omitted). In *Howsam v. Dean Witter Reynolds, Inc.*, 537

17  U.S. 79, 83 (2002), the Supreme Court reiterated the principal that "arbitration is a

18  matter of contract and a party cannot be required to submit to arbitration any

19  dispute which he has not agreed so to submit." (quoting *Steelworkers v. Werner &*

20  *Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)). This "gateway" inquiry as to whether

21  the parties are bound by a given arbitration clause raises the "question of

22  arbitrability," which is an issue for the court, not the arbitrator, to decide. *Samson*,

23  352 F.3d at 217 (citing *Howsam*, 537 U.S. at 84 (stating that the "question of

24  arbitrability" is an issue for judicial determination unless the parties clearly

25  provide otherwise)). In short, when there is a dispute as to the very existence of an

26  agreement related to an arbitration provision, such as where a party contends an

27  agreement was not signed, or the signature was incepted through fraud, or that an

28  **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO SEGURA UNDER 9 U.S.C.**

2007-1025
36307.wpd

1  agent lacked authority to bind another party, the court must resolve at the outset

2  whether an agreement was reached between the parties by applying state law

3  principles of contract. *Samson*, 352 F.3d at 218-19.

4       Pulte is under the mistaken delusion that its contract contains a class action

5  waiver. It does not. The contract is completely silent of any mention of the term

6  "class action" and makes no mention that class actions are barred, banned or

7  waived. The only concept alluded to in the agreement is "joinder"; and as any first

8  year law student knows from Civil Procedure, the concepts of "joinder" and "class

9  actions" are distinct. Compare Fed. R. Civ. P. 19-21 [joinder] and 23 [class

10 actions].

11      Specifically, Paragraph "F" of Pulte's agreement only uses the term

12 "Joinder" and very ambiguously and cryptically states "**Joinder**. The parties may

13 join other parties as provided in the Rules except that You may not join Your

14 Claims against Us with the Claims of any other homeowners." "Class action" and

15 "joinder" are different concepts. This difference is made absolutely clear in the

16 Federal Rules of Civil Procedure. Rule 23 lays out the four threshold

17 requirements applicable to all class actions, including: (1) the class is so numerous

18 *that joinder of all members is impracticable*; (2) there are questions of fact

19 common to the class; (3) the claims and defenses of the representative party are

20 typical of the claims and defenses of the class; and (4) the representative party will

21 fairly and adequately represent the interests of the class. Fed.R.Civ.P. 23(a). Thus,

22 the concepts of joinder and class actions are distinct and exclusive of each other.

23      The rules involving class actions place the choice and decision of

24 certification a class with the courts. Class actions are ordered because joinder is

25 impracticable–If Pulte claims its contract denies "joinder", then a class action is

26 even more practicable.

27      Here, the class is represented by the class representative, Segura, and the

28

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO SEGURA UNDER 9 U.S.C.**

17

1  individuals are not joined because joinder is impracticable.  This Court already

2  ruled as part of the process in certifying the class that joinder is not practicable.

3  This means that Pulte is in no position to argue to enforce the anti-joinder

4  provision.  No joinder is occurring in this case.

5          Furthermore, the language Pulte is referring to cannot be construed as a

6  "waiver" of class actions.  "Waiver is the intentional relinquishment of a known

7  right with knowledge of its existence and the intent to relinquish it." *United States*

8  *v. King Features Entm't, Inc.*, 843 F.2d 394, 399 (9th Cir.1988).  Pulte did not

9  clearly and specifically draft language requiring Segura to expressly waive any

10  class action rights and such ambiguities must be interpreted against Pulte.

11  *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 819-20 n.16 (1981); see also *Cal.*

12  *Civ. Code § 1654* ("[T]he language of a contract should be interpreted most

13  strongly against the party who caused the uncertainty to exist.").

14          Big, sophisticated corporations who employ attorneys to draft

15  anti-collective action provisions in arbitration agreements understand the concept

16  that provisions which ban "joinder" and provisions which ban "class actions" need

17  to both be <u>clearly and separately</u> stated.  See e.g. *Acorn v. Household Int'l, Inc.*,

18  211 F. Supp. 2d 1160, 1162 (N.D. Cal. 2002) [disputed provision stated "No class

19  actions or joinder or consolidation of any Claim with the claim of any other person

20  are permitted in arbitration without the written consent of you and us."].  Pulte did

21  not impose a class action waiver on Segura and it litigated this case as a class

22  action case all the way through class certification.

23          The *Concepcion* case has no bearing to the case before this Court.  Unlike

24  Pulte's agreement which fails to identify any class action waiver, the arbitration

25  provision in *Concepcion* clearly and expressly stated that Concepcion's claims had

26  to be brought in his "individual capacity, and not as a plaintiff or *class member* in

27  any purported *class* or representative proceeding." [emphasis added]  *AT&T*

28  
**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO
DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER
COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO
SEGURA UNDER 9 U.S.C.**

2007-1025
36307.wpd

1  *Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1744, 179 L. Ed. 2d 742 (2011)

2  Pulte failed to include any such language delineating waiver of "class actions".

3  Accordingly, there is no impediment to this case proceeding as a class action and

4  *Concepcion* has no application whatsoever, because the Pulte provision says

5  nothing about class actions being waived or barred.

6  **V.    PULTE'S ARBITRATION CONTRACT IS UNCONSCIONABLE**

7  **AND THE PRODUCT OF FRAUD IN THE INCEPTION**

8      As *Concepcion* made clear, the savings clause of the FAA still "permits

9  agreements to arbitrate to be invalidated by 'generally applicable contract

10  defenses, such as fraud, duress, or unconscionability,' but not by defenses that

11  apply only to arbitration or that derive their meaning from the fact that an

12  agreement to arbitrate is at issue." *Concepcion*, 131 S.Ct. at 1746 (quoting

13  *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

14      Pulte's arbitration clause in unconscionable on many grounds.  Among the

15  various provisions which Plaintiffs contend make the arbitration clause

16  unconscionable and void under California law: The arbitration clause is one-sided

17  and applies only to Plaintiffs' claims; The arbitration clause requires Plaintiffs to

18  arbitrate claims and controversies that are non-arbitrable (¶A); The arbitration

19  clause references purported "rules" which are not attached to the agreement (¶B,

20  F)  *Ultimo v. Harper*, 113 Cal.App.4th 1402 (2003); The arbitration agreement

21  allows Pulte to join other parties to the action but prohibits Plaintiffs from joinder;

22  (¶E); The arbitration proceedings are required to be secret and confidential.  (¶H);

23  The arbitration provision states at page 9 that "you are giving up your judicial

24  rights to discovery and appeal, unless such rights are specifically included in the

25  "arbitration of disputes" provision."  There is no right to discovery under the Pulte

26  agreement.

27      Since Pulte assumes the obligation to front the costs of arbitration, and it is

28  **MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO SEGURA UNDER 9 U.S.C.**

2007-1025
36307.wpd

1 able to manipulate how "promptly" the arbitration is conducted, Pulte can evade

2 procedures that should have been intended to resolve matters quickly.  The U.S.

3 Supreme Court has declared that "[t]he overarching purpose of the FAA . . . is to

4 ensure the enforcement of arbitration agreements according to their terms so as to

5 facilitate streamlined proceedings," *AT&T Mobility LLC v. Concepcion*, 563 U.S.

6 --, 131 S. Ct. 1740, 1748 (2011).  Pulte has acted anything but expeditiously.

7        Additionally, Pulte's purported attempt to waive "statutory rights" involving

8 private attorney general claims, such as claims under the UCL brought for the

9 benefit of the public (as opposed to specific claims brought between business

10 competitors), must, as a matter of affirmative state law, be prosecuted in a public

11 court.  Such claims are incidental to a public benefit and, post-*Concepcion*, other

12 California federal district courts have recognized the substantive effect of the right

13 to bring injunctive claims under the UCL in denying motions to compel

14 arbitration.  *In Re DirecTV Early Cancellation Fee Marketing and Sales Practices*

15 *Litigation*, Case No. ML 09-2093 AG (Anx), (Dkt. 255, Order, September 6,

16 2011) slip op. at p.15-17, *citing Broughton v. Cigna Healthplans of California*, 21

17 Cal. 4th 1066, 1080 (1999); *Cruz v. PacifiCare Health Systems, Inc.*, 30 Cal. 4th

18 303, 320 (2003).  The determination of arbitration is invalid for all of the grounds

19 set forth herein.

20 **VI.    <u>CONCLUSION</u>**

21        This case appropriately belongs in this Court.  Plaintiff respectfully requests

22 this Court to deny Pulte's motion to compel arbitration in its entirety.

23 DATED: October 17, 2011           SCHIMMEL & PARKS

                                *A Professional Law Corporation*

24

25

              By: _____

26                      Alan I. Schimmel

                     Michael W. Parks

27                      Attorneys for PLAINTIFF SEGURA AND THE CLASS

28        MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANT PULTE HOME CORPORATION'S MOTION FOR ORDER COMPELLING CONTRACTUAL ARBITRATION AGAINST PLAINTIFF EMILIO SEGURA UNDER 9 U.S.C.